# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TRICO MARINE SERVICES, INC., *et al.*,[1] | ) Case No. 10-12653 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) (Relates to Dkt. No. 159) |
| | ) |

## ORDER GRANTING DEBTORS' MOTION TO APPROVE THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES

Upon consideration of the *Debtors' Motion to Approve the Sale of Assets Free and Clear of Liens, Claims, and Encumbrances* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to Sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (i) authorizing and approving the private sale (the "Sale") of the Vessels to Buyer, (ii) approving the form of Agreement attached to the Motion as Exhibit A and authorizing the Debtors to consummate the sale on substantially the terms set forth in the Agreement, (iii) and granting related relief, and the Declaration of John R. Castellano in support of the Motion; and the Court having conducted a sale hearing to consider the approval of the Sale (the "Sale Hearing"), the approval of the Agreement; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Sale, the approval of the Agreement and the transactions contemplated thereby; and the Court having reviewed and considered the Motion and any objections thereto,

---

[1] The Debtors are the following entities (followed by the last four digits of their tax identification numbers): Trico Marine Services, Inc. (2405); Trico Marine Assets, Inc. (2404); Trico Marine Operators, Inc. (6124); Trico Marine International, Inc. (3132); Trico Holdco, LLC (3870); Trico Marine Cayman, L.P. (5842). The mailing address for all of the Debtors for the purpose of these Cases is 10001 Woodloch Forest Drive, Suite 610, The Woodlands, TX 77380.

[2] Capitalized terms used but not defined herein shall have the meaning given to them in the Motion.

and the arguments of counsel and evidence adduced related thereto; and upon the record of the Sale Hearing and the full record of these cases; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their creditors and estates and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. This Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (0). Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C. Good and sufficient notice of the Motion and the relief sought therein has been given to all interested persons and entities and no other or further notice is required.

D. A sound business purpose justifies the Sale of the Vessels outside of the ordinary course of business.

E. The consideration to be provided by Buyer pursuant to the Agreement: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Vessels; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the law of any state or other jurisdiction whose law is applicable to the contemplated transactions.

F. Consummation of the Sale contemplated in the Agreement will provide the highest or otherwise best value for the Vessels and is in the best interests of the Debtors, their creditors, and estates.

G. Entry into the Agreement and consummation of the transactions contemplated thereby constitute the exercise of the Debtors' sound business judgment and fiduciary duties by the Debtors and such acts are in the best interests of the Debtors, their creditors, and estates.

H. The transactions contemplated by the Agreement are undertaken by the Debtors and Buyer at arm's length, without collusion and in good faith within the meaning of Bankruptcy Code § 363(m). Buyer is a good-faith purchaser under Bankruptcy Code § 363(m) and as such, is entitled to all of the protections afforded thereby and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (a) Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Vessels; (b) Buyer made the highest offer for the Vessels; (c) all payments to be made to Buyer and other agreements or arrangements entered into by Buyer in connection with the transactions have been disclosed; and (d) the negotiation and execution of the Agreement and any other agreements or instruments related thereto was in good faith and an arm's-length transaction between Buyer and the Debtors.

I. The Debtors and Buyer have not engaged in any conduct that would permit the Agreement or the Sale to be avoided under Bankruptcy Code § Section 363(n).

J. The Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.

K. The Debtors are the sole and lawful owners of the Vessels, and hold good title thereto, immediately prior to the Closing Date. The consummation of the Sale pursuant to the

Agreement will be a legal, valid and effective Sale of the Vessels and will vest Buyer (and its designees or assignees, as applicable) with all right, title, and interest of the Debtors and their bankruptcy estates in and to the Vessels free and clear of all liens, claims, and encumbrances.

L. With respect to all parties asserting any lien, claim, or encumbrance in, to, or against the Vessels, the Sale complies with all the requirements of Bankruptcy Code § 363(f), and with respect to each any lien, claim, or encumbrance in the Vessels: (a) applicable non-bankruptcy law permits the sale free and clear of such interest; (b) the holder of such interest consents to the Sale; (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the Vessels; (d) such interest is in bona fide dispute; or (e) the holder of such interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

M. All parties with liens, claims, or encumbrances against the Vessels identified to be sold under the Agreement, if any, who did not object to the Motion and the relief requested therein, or who withdrew their objections to the Motion, are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code; and all parties with liens, claims, or encumbrances against the Vessels who objected to the Motion, but who did not withdraw any such objection, can be compelled to accept a monetary satisfaction of their liens, claims, or encumbrances within the meaning of Section 363(f)(5) of the Bankruptcy Code, and in each case, are enjoined from taking any action against Buyer, its affiliates or any agent of the foregoing to recover any claim which such person or entity has solely against the Debtors, or any of their respective affiliates.

N. Notwithstanding the foregoing, pursuant to Section 10.02 of the Senior Secured, Super-Priority Debtor-In-Possession Credit Agreement, dated as of August 24, 2010 (as amended, restated, amended and restated, supplemented or otherwise modified to date, the

"Credit Agreement"), the Borrower or any Subsidiary cannot sell transfer or dispose of any of its material assets without the prior written consent of the Required Lenders (all of the foregoing terms as defined in the Credit Agreement). The Required Lenders are willing to consent to the sale of the Vessels on the terms and conditions set forth in the consent attached to this Order as Exhibit 1 and incorporated herein by reference (the "Consent"). The Debtors cannot sell the Vessels absent the Consent.

O. The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

P. Upon entry of this Order, the Debtors shall have full power and authority to consummate the Sale contemplated by the Agreement. The Agreement and the Sale have been duly and validly authorized by all necessary action of the Debtors.

Q. Cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rule 6004.

R. The entry of this Order is in the best interests of the Debtors, their creditors and estates, and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion, the Agreement, and the transactions contemplated thereby shall be, and hereby are, granted and approved in all respects.

2. The Debtors are authorized and directed to close, consummate, and comply with the Agreement, and all other agreements and documents, if any, related to and contemplated thereby (collectively, the "Sale Documents"), which Sale Documents hereby are authorized and approved in all respects and to execute such other documents and take such other actions as are necessary or appropriate to effectuate the Agreement.

3. All objections and responses to the Motion are hereby resolved in accordance with the terms of this Order and as set forth in the record at the Sale Hearing. To the extent such objections or responses were not otherwise overruled, withdrawn, waived, settled or resolved, they, and all reservations of rights included therein, are hereby overruled and denied.

4. Buyer's offer for the Vessels, as embodied in the Agreement, is the highest and best offer for the Vessels and is hereby approved.

5. Pursuant to Bankruptcy Code §§ 105(a) and 363(b), the Sale by the Debtors to Buyer of the Vessels and the transactions related thereto are authorized and approved in all respects.

6. Subject to the payment by Buyer to the Debtors of the consideration provided for in the Agreement, pursuant to Bankruptcy Code § 363, the Sale of the Vessels by the Debtors to Buyer shall constitute a legal, valid, and effective transfer of the Vessels and shall vest Buyer with all right, title and interest of the Debtors in and to the Vessels free and clear of all liens, claims, and encumbrances pursuant to Bankruptcy Code § 363(f), effective as of the Closing Date.

7. Subject to prior regulatory approval by the United States Maritime Administration, pursuant to Bankruptcy Code § 363(f), the Sale of the Vessels shall be free and clear of all liens, claims, and encumbrances and all liabilities of the Debtors whether known or unknown, including, but not limited to, any liens, claims, or encumbrances asserted by any of the Debtors' creditors, vendors, suppliers, employees, executory contract counterparties, or lessors. Any and all valid and enforceable liens, claims, or encumbrances on, against or in the Vessels, including those asserted by the Debtors' lenders, shall be transferred, affixed, and attached to the

net proceeds of the Sale with the same validity, priority, force and effect such liens, claims, or encumbrances had on the Vessels immediately prior to the Sale.

8. The Debtor shall provide The Bank of New York Mellon Trust Company, N.A., as successor indenture trustee ("BNY Mellon"), with 40 to 60 days notice of the redemption of the MARAD Notes under and in accordance with Section 3.03 of the Trust Indenture dated April 21, 1999 (including Schedule A and Exhibit 1, the "Indenture"). The Debtors shall pay the MARAD Notes to be redeemed through the Redemption Date (as defined in the Indenture) as provided in Section 3.10 of the Indenture on the Redemption Date (as defined in the Indenture).

9. Pursuant to the redemption notice (as described in paragraph 8 above), $2,514,500.00 of the outstanding principal (plus interest and fees) under the MARAD Notes and secured by the first priority liens of the United States Maritime Administration shall be paid from the proceeds of the Sale at the closing. At the Closing of the Sale, the Debtors will deposit into escrow (the "Escrow") a good faith estimate of the make-whole premium asserted by BNY Mellon, and the amount of such estimate shall be based upon what the Debtors, BNY Mellon and MARAD agree or as otherwise ordered by the Court if the parties are unable to agree on such amount. The Debtors, BNY Mellon and MARAD will attempt to resolve the issue (the "Make-Whole Issue") whether the make-whole premium asserted by BNY Mellon is an allowable claim, and, if the parties are able to agree on a resolution of the Make-Whole Issue, the Debtors shall be authorized to pay the asserted make-whole premium or the portion thereof to which the parties agree; provided, however, (i) if the Debtors and BNY Mellon agree upon a resolution but the official committee of unsecured creditors (the "Committee"), the Prepetition First Lien Lenders,

**ORDER GRANTING DEBTORS' MOTION TO APPROVE THE SALE OF ASSETS**
**FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**
US 584388v.2

Page 7 of 14

the DIP Lenders,[3] the Required Lenders, or MARAD does not consent to such resolution, or (ii) if the Debtors, BNY Mellon and MARAD are unable to agree on a resolution of the Make-Whole Issue, the issue will be brought before the Court for resolution on a schedule mutually-agreeable to the parties, and as ordered by the Court. From the proceeds of the Sale of the Spirit River, the Debtors will escrow funds sufficient to make the October 21, 2010 scheduled principal and interest payment on the MARAD Notes. Notwithstanding anything herein to the contrary, all rights of the Committee with respect to (x) any and all liens, claims, encumbrances and other interests asserted by the Debtors' creditors (other than MARAD and the DIP Lenders), vendors, suppliers, employees, executory contract counterparties, lessors and other parties in interest in and to the Vessels and (y) the proceeds of the Truckee River Vessel (the "Truckee Proceeds") are reserved and are not impaired, prejudiced or otherwise affected by this Order or the distribution of the Truckee Proceeds pursuant to the Consent; provided, however, that the Committee's rights with respect to the liens, claims, encumbrances and other interests in and to the Truckee River Vessel and the Truckee Proceeds asserted by the Prepetition First Lien Agent and/or the Prepetition First Lien Lenders (each term as defined in the Interim DIP Order) shall be governed by the Interim DIP Order. Any of the Debtors' residual interest in the Escrow [Collateral for the DIP Loan and as] and/or any portion of the Escrow returned to the Debtors shall be treated as sales proceeds under the DIP Financing Agreement and the Interim DIP Order.

---

[3] As such terms are defined in the *Amended Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503(b) and 507(a), Fed. R. Bankr. P. 2002, 4001 and 9014 and Del. Bankr. L.R. 4001-2 (I) Authorizing Debtors (A) to Obtain Postpetition Secured DIP Financing (B) to Use Cash Collateral (II) Granting Liens and Providing for Superpriority Administrative Expense Status; (III) Granting Adequate Protection to Prepetition Secured Parties; (IV) Modifying Automatic Stay; and (V) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* [D.I. 95] (the "Interim DIP Order").

10. Notwithstanding any other provision of this Order, the Debtors are authorized and directed to execute the Consent and, subject to and conditioned upon payment of the MARAD Notes as described in paragraphs 8-9 above (and the reasonable fees and expenses of BNY Mellon), the proceeds of the Sale shall be distributed and applied as set forth in the Consent; provided, however, that the application of the proceeds of the sale of the Truckee River vessel to the exit fee (the "Truckee Exit Fee") described in paragraph 1(b) of the Consent shall have no precedential value with respect to any future asset sales by the Debtors, and the rights of the Committee, the Prepetition First Lien Lenders, the Prepetition First Lien Agent, the DIP Lenders, and the DIP Agent with respect to the Truckee Exit Fee and any exit fee that may be claimed by the Prepetition First Lien Lenders and/or the Prepetition First Lien Agent (all as defined in the Interim DIP Order) in connection with a future asset sale are fully reserved; provided further that Truckee Exit Fee shall be reallocated to and applied to reduce the Prepetition First Lien Debt (as defined in the Interim DIP Order) as a principal prepayment if it is determined pursuant to a final order of this Court that the Prepetition First Lien Lenders and/or the Prepetition First Lien Agent are not entitled to such exit fee under the Prepetition Loan Documents (as defined in the Interim DIP Order) and/or applicable law.

11. Nothing herein is intended to, or shall be interpreted as extinguishing or waiving any unpaid obligation under the MARAD Notes or the Indenture, nor shall MARAD be deemed to have waived any of its rights, claims, defenses or arguments, all such rights, claims, defenses or arguments being preserved.

12. The time periods for BNY Mellon or any bondholder to issue a demand under Section 6.02 of the Indenture due to an "Indenture Default" shall not run until BNY Mellon has obtained (a) relief from the automatic stay under Bankruptcy Code § 362(a) to issue such

**ORDER GRANTING DEBTORS' MOTION TO APPROVE THE SALE OF ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**
US 584388v.2

Page 9 of 14

demand or (b) an order providing that the stay does not apply to such demand; provided, however, that if the Indenture Trustee decides to file a motion for relief from the automatic stay pursuant to Bankruptcy Code § 362 (or for a determination that the automatic stay does not apply) (the "Motion"), such motion shall be filed no later than 20 days following a Payment Default, and 20 days following counsel for BNY Mellon's receipt of notice of any other Indenture Default. The time period in between the day of an alleged default on the Guarantee and the day BNY Mellon files its Motion shall be counted in the time BNY Mellon has to make a demand on the Guarantee. However, the time period in between the day BNY Mellon files its Motion and the day the bankruptcy court rules on the Motion shall not reduce BNY Mellon's time to make a demand on the Guarantee. Neither BNY Mellon, the Debtors, nor MARAD may consent to an extension of the time period in Bankruptcy Code § 362(e), unless the other parties also consent. The time period after the earlier of (a) BNY Mellon's receipt of actual notice of the bankruptcy court's decision on BNY Mellon's Motion and (b) the third day after the Bankruptcy Court enters an Order resolving the Motion shall be counted towards BNY Mellon's time to make a demand on the Guarantee, unless and until the order is stayed by further court order. The parties acknowledge that there is also a 30-day grace period in Section 6.01(a) of the Indenture following a failure to timely pay the debt service before the Indenture Trustee may make a demand under the Guarantee.

13. The terms of the Trust Indenture and the Authorization Agreement govern the terms of the Guarantee; however, neither this order nor the fact that the bondholders (or BNY Mellon as indenture trustee) may receive partial payment from any vessel sale shall be a basis for MARAD to terminate the Guarantee.

14. Pursuant to Bankruptcy Code §§ 105(a) and 363, all persons and entities, including, without limitation, the Debtors, the Debtors' affiliates, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax, and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any liens, claims, or encumbrances, in or with respect to the Debtors or the Vessels (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non- contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Vessels, the operation of the Debtors' business prior to the closing date under the Agreement or the transfer of the Vessels to Buyer, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such lien, claim, or encumbrance against Buyer or any affiliate, successor or assign thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates and representatives (each of the foregoing in its individual capacity), or the Vessels. To avoid doubt, the foregoing shall not prevent the Debtors, their estates, successors, or permitted assigns from pursuing claims, if any, against Buyer and/or its successors and assigns in accordance with the terms of the Agreement.

15. This Order (a) is and shall be effective as a determination that, as of the Closing Date, all liens, claims, or encumbrances existing as to the Vessels conveyed to Buyer have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated, and (b) is and shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state, and local officials, and all other persons and entities who may

be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Vessels conveyed to Buyer.

16. The provisions of this Order authorizing the sale of the Vessels free and clear of all liens, claims, and encumbrances, shall be self-executing, and neither the Debtors nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order. However, the Debtors and Buyer, and each of their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or Buyer deem necessary or appropriate to implement and effectuate the terms of the Agreement and this Order.

17. The Sale of the Spirit River is subject to prior regulatory approval of the United States Maritime Administration.

18. After the Closing Date of the Agreement, no person or entity, including, without limitation, any federal, state or local taxing authority, may (a) attach or perfect liens or a security interest against any of the Vessels on account of or (b) collect or attempt to collect from Buyer or any of its affiliates, any tax (or other amount alleged to be owing by the Debtors) (i) for any period commencing before and concluding prior to the Closing Date or (ii) assessed prior to and payable after the Closing Date.

19. Buyer is a good faith purchaser entitled to the benefits and protections afforded by Bankruptcy Code § 363(m); accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale of the Vessels shall not affect the validity of the Sale of the Vessels to Buyer.

**ORDER GRANTING DEBTORS' MOTION TO APPROVE THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**
US 584388v.2

Page 12 of 14

20. The consideration provided by Buyer for the Vessels under the Agreement is fair and reasonable, and the Sale may not be avoided under Bankruptcy Code § 363(n)

21. With respect to the transactions consummated pursuant to this Order, this Order shall be sole and sufficient evidence of the transfer of title to Buyer.

22. This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the Agreement, and this Order in all respects and further to hear and determine any and all disputes between the Debtors and/or Buyer, as the case may be; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the Agreement and this Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

23. The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, in accordance with the terms thereof without further order of the Court.

24. From and after the date hereof, the Debtors and Buyer shall act in accordance with the terms of the Agreement and the Debtors, to the extent they already have not done so, shall execute any Sale Document at or prior to the Closing Date.

25. To the extent of any inconsistency between the provisions of this Order and the Agreement, or any documents executed in connection therewith, the provisions contained in this Order shall govern.

26. The provisions of this Order are nonseverable and mutually dependent.

27. This Order shall inure to the benefit of Buyer, the Debtors, and their respective successors and assigns, including but not limited to any chapter 11 or chapter 7 trustee that may

be appointed in the Debtors' Cases and shall be binding upon any trustee, party, entity, or fiduciary that may be appointed in connection with these Cases or any other or further case involving the Debtors, whether under chapter 7 or chapter 11 of the Bankruptcy Code.

28. Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order. The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered confirming any chapter 11 plan of the Debtors, converting the Debtors' Cases to cases under chapter 7 of the Bankruptcy Code, or dismissing the Debtors' Cases.

29. Because time is of the essence, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the stay of orders authorizing the sale, use, or lease of property of the estate, as set forth in Bankruptcy Rule 6004(h) not apply to this Order.

30. Subject to prior regulatory approval by the United States Maritime Administration, the Debtors are authorized to close the Sale immediately upon entry of this Order.

Dated: October 6, 2010
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

3805760.4