# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TRICO MARINE SERVICES, INC., *et al.*,[1] | ) Case No. 10-12653 |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Hearing Date: November 4, 2010 1:30 PM (ET) |
| | ) Objections Due: October 28, 2010 4:00 PM (ET) |

## DEBTORS' MOTION TO APPROVE THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES TO TIDEWATER INC.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), file this *Motion to Approve the Sale of Assets Free and Clear of Liens, Claims, and Encumbrances to Tidewater Inc.* (the "Motion") and respectfully submit the following:

### JURISDICTION AND PROCEDURAL BACKGROUND

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On August 25, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy cases (the "Cases").

4. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

---

[1] The Debtors are the following entities (followed by the last four digits of their tax identification numbers): Trico Marine Services, Inc. (2405); Trico Marine Assets, Inc. (2404); Trico Marine Operators, Inc. (6124); Trico Marine International, Inc. (3132); Trico Holdco, LLC (3870); Trico Marine Cayman, L.P. (5842). The mailing address for all of the Debtors for the purpose of these Cases is 10001 Woodloch Forest Drive, Suite 610, The Woodlands, TX 77380.

## STATEMENT OF FACTS

5. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of the Cases, is set forth in detail in the *Declaration of John R. Castellano in Support of First Day Pleadings and Papers* [Dkt. No. 3], which is fully incorporated herein by reference.

6. By letter of interest dated October 1, 2010 (the "TMA LOI"), Tidewater Inc. ("Buyer") offered to purchase the Trico Moon vessel and the Trico Mystic vessel (together, the "TMA Vessels") *en bloc* for a purchase price of $26,000,000 from Trico Marine Assets, Inc. ("TMA" or the "Seller").[2] Concurrent to such offer and by letter of interest dated October 1, 2010 (the "Trico Subsea LOI"), Buyer also submitted an offer to non-debtor affiliate Trico Subsea Holding AS ("Trico Subsea") to purchase the Trico Sabre vessel and Trico Star vessel (together, the "Trico Subsea Vessels") *en bloc* for a purchase price of $50,000,000.[3] By the terms of both letters of interest, acceptance of either offer was conditioned upon the acceptance of the other offer. Thus, the two offers constituted a single *en bloc* offer to purchase the TMA Vessels and the Trico Subsea Vessels. However, as the Trico Subsea Vessels are property of a non-debtor affiliate and not property of the Debtors' estate, the Debtors are not seeking Court authority to sell the Trico Subsea Vessels.[4]

7. On October 5, 2010, the Debtors and Trico Subsea accepted the TMA LOI and Trico Subsea LOI (collectively, the "Letters of Intent"). As provided by the Letters of Intent, the parties will promptly begin negotiating in good faith on the terms of Memorandums of Agreement on the Norwegian "SALEFORM 1993" for each of the TMA Vessels and the Trico

---

[2] A true and correct copy of the TMA LOI is attached hereto as **Exhibit A**.
[3] A true and correct copy of the Trico Subsea LOI is attached hereto as **Exhibit B**.
[4] The sale of the Trico Subsea Vessels requires certain consents from non-debtor secured creditors. Trico Subsea is working on obtaining such consents.

Subsea Vessels (each an "Agreement," and collectively the "Agreements") with such Agreements to be finalized by October 21, 2010. The Norwegian "SALEFORM 1993" is a form agreement that is typically used in ship sale transactions and used in connection with the Debtors' motion to sell the Truckee River and Spirit River [Dkt. No. 159], granted by this Court on October 7, 2010 [Dkt. No. 260].

8. Though the TMA Vessels and the Trico Subsea Vessels will each be subject to separate Agreements, the terms, notwithstanding the difference in purchase price, will be substantially the same for each Agreement.

9. As of the filing of this Motion, the Debtors and Buyer are working toward finalizing and executing the Agreements. The Debtors expect that the Agreements will be finalized and executed by October 21, 2010. Upon execution of the Agreements, the Debtors will promptly file and serve complete, execution copies of the Agreements.

10. As set forth in the Declaration of John R. Castellano, attached hereto as **Exhibit C**, prior to accepting the Letters of Intent, the Debtors engaged in a thorough and comprehensive marketing process for the vessels. Approximately four months prior to receipt of Buyer's offer, the Debtors distributed a list containing each of its vessels for sale, including the Moon, Mystic, Sabre and Star, to multiple international brokerage houses. Additionally, the Debtors utilized a broker who marketed the Trico Moon beginning in April 2010 by sending out an email to potential purchasers worldwide. The Debtors received various inquiries related to the Trico Moon, but received little interest in the Trico Mystic. One offer for the purchase of both the Trico Moon and Trico Mystic was received, but the purchase price was for much less than that of Buyer. Although various parties expressed an interest in the Trico Subsea Vessels, no offers were received either individually or combined.

11. The material terms of the Letters of Intent are highlighted below:

    a.   **The Sellers:** Trico Marine Assets, Inc. and Trico Subsea Holding AS

    b.   **The Buyer:** Tidewater Inc.

    c.   **The Purchased Assets:** Trico Moon vessel and Trico Mystic vessel owned by TMA, and the Trico Sabre and Trico Star owned by Trico Subsea

    d.   **Purchase Price:** Of the total $26,000,000 purchase price for the TMA Vessels, $13,000,000 is allocated to the Trico Moon vessel, and $13,000,000 is allocated to the Trico Mystic vessel. Of the total $50,000,000 purchase price for the Trico Subsea Vessels, $25,000,000 is allocated to the Trico Sabre vessel, and $25,000,000 is allocated to the Trico Star vessel.

    e.   **Deposit:** Buyer has agreed to pay a deposit of 5% of the purchase price allocated to each vessel, provided the TMA and Trico Subsea can provide adequate security to the Buyers. Otherwise, there is no deposit.

    f.   **Closing Deadlines:** The TMA Vessels and Trico Subsea Vessels must be delivered to Buyer on a date between November 1, 2010 and November 15, 2010 (the "Closing Date").

    g.   **Cancellation Date:** November 30, 2010 (the "Termination Date")

## RELIEF REQUESTED

12. By this Motion, the Debtors seek authority to sell, pursuant to Bankruptcy Code §§ 105 and 363 and Bankruptcy Rule 6004, the TMA Vessels owned by the Seller to Buyer by private sale free and clear of all liens, claims, and encumbrances under the terms of the TMA LOI and Agreements related to the TMA Vessels.

## BASIS FOR RELIEF

13. Bankruptcy Code § 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(1). Pursuant to Bankruptcy Rule 6004, all sales not in the ordinary course of business may be by private sale or by public auction. Fed. R. Bankr. P.

6004(f)(1). Furthermore, Bankruptcy Code § 105(a) provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

14. As this Court has recognized, whether to proceed by public or private asset sale is committed to the sound discretion of the trustee or debtor in possession. *See In re Alisa P'ship*, 15 B.R. 801, 802 (Bankr. D. Del. 1981). Indeed, it has been stated that a "bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)." *In re Ancor Exploration Co.*, 30 B.R. 802, 808 (N.D. Okla. 1983).

### A Valid Business Justification Exists for the Sale of the TMA Vessels

15. Bankruptcy Code § 363 does not set forth a standard for determining when a court should authorize the sale or disposition of a debtor's assets. *See* 11 U.S.C. § 363(b). However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991).

16. The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely: (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business; (b) that adequate and reasonable notice has been provided to interested persons; (c) that

the debtors have obtained a fair and reasonable price; and (d) that the sale was negotiated in good faith. *Abbotts Dairies*, 788 F.2d 143; *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *See Lionel*, 722 F.2d at 1071. This fundamental analysis does not change if the proposed sale is private, rather than public. *See In re Ancor Exploration Co.*, 30 B.R. at 808. In this case, the Debtors submit that the decision to proceed with the sale of the TMA Vessels is based upon their reasonable business judgment and should be approved.

17. <u>Sound Business Purpose</u>. The Debtors submit that more than ample business purpose exists to sell the TMA Vessels to Buyer. The TMA Vessels are not necessary for business operations, and the sale of the TMA Vessels is a part of a long-term business plan. The Debtors have made numerous public disclosures of its intention to exit the Towing and Supply segment. The TMA Vessels are Towing and Supply vessels and this transaction furthers the long term strategic objectives for the Debtors.

18. Furthermore, as discussed above and in the Declaration of John R. Castellano, the TMA Vessels have been extensively marketed, and the purchase price ultimately agreed to by the Buyer was the highest and best offer received for the TMA Vessels. Additionally, the Debtors believe that the sale of the TMA Vessels *en bloc* will realize a higher return for the estate than if the Debtors were forced to procure two separate buyers. Because the Debtors have

yet to receive any material interest in the Trico Mystic individually, the proposed sale to Buyer results not only in the highest and best offer for the TMA Vessels, but an immediate return on the sale of the Trico Mystic. Thus, the proposed sale to Buyer allows results in fewer marketing and administrative costs to sell the TMA Vessels, allowing the estate to realize a higher return than if the Trico Moon were sold to one buyer, while the Debtors continued to bear the expense of marketing the Trico Mystic. As described in more detail below, the proceeds from the sale of the TMA Vessels will be used to substantially pay down the Debtors' DIP Loan.

19. <u>Adequate and Reasonable Notice</u>. The Debtors will provide notice of the Motion to all parties in interest, as required by the applicable procedural rules. *See* Fed. R. Bankr. P. 2002(c)(1) (notice must contain "the terms and conditions of any private sale and the time fixed for filing objections").

20. <u>Fair and Reasonable Price</u>. The proposed sale will provide fair and reasonable value in exchange for the TMA Vessels. The Debtors believe that the sale process was conducted in a commercially-reasonable manner and that the purchase price constitutes the highest and best offer for the TMA Vessels.

21. <u>Buyer's Good Faith</u>. Bankruptcy Code § 363(m) provides that "the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that has purchased or leased such property in good faith." 11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," the Third Circuit in *In re Abbotts Dairies* held that:

> The requirement that a [buyer] act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the

[proposed buyer] and other bidders or the trustee, or an attempt to
take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted). The Debtors and Buyer negotiated the Agreements at arm's length and in good faith. Thus, Buyer should be entitled to the full protections of Bankruptcy Code § 363(m).

### Sale of the TMA Vessels Free and Clear of Liens, Claims and Encumbrances is Appropriate

22. Furthermore, the Debtors request authority to transfer the TMA Vessels free and clear of any and all liens, claims and encumbrances. Bankruptcy Code § 363(f) provides:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

23. Because § 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the TMA Vessels free and clear of liens and interests. *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988). Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by Section 363(f). *See, e.g., In re Trans World Airlines, Inc.,* 2001 WL 1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); *Volvo White*

*Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.),* 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

24. The Debtors believe that at least one of the tests detailed in Bankruptcy Code §363(f) will be satisfied pursuant to the sale of the TMA Vessels.

25. The Debtors' DIP lender, Tennenbaum DIP Opportunity Fund, LLC ("Tennenbaum"), holds first-priority liens in the TMA Vessels. Because Tennenbaum holds a lien in the TMA Vessels, under the interim DIP financing order entered by this Court [Dkt. No. 58], the sales proceeds attributable to the TMA Vessels will be used to pay down the Debtors' DIP loan.[5] Tennenbaum has been provided with notice of this Motion and the terms of the TMA LOI.[6] Furthermore, to the extent that there are any validly perfected liens senior in priority to the liens held by Tennenbaum, such liens will be paid at closing in full satisfaction.

26. The Debtors, therefore, believe that the party holding liens on the TMA Vessels will consent or, absent any objection to this Motion, be deemed to have consented to the sale and transfer free and clear pursuant to Bankruptcy Code § 363(f).

27. Accordingly, Bankruptcy Code § 363(f) authorizes the sale and transfer of the TMA Vessels free and clear of any Liens, claims, encumbrances, and interests.

**Payments from Proceeds**

28. Through this Motion, the Debtors request permission to pay the DIP liens and senior liens described in paragraph 25 above from the sales proceeds. The Debtors also seek authority to pay from the sales proceeds any appropriate closing costs in connection with the

---

[5] *See* DIP Financing Agreement at § 10.02, attached as Exhibit B to the Debtors' Interim DIP Financing Motion [Dkt. No. 13]; *see also* Interim DIP Financing Order at ¶ 18 [Dkt. No. 58].
[6] Assuming Tennenbaum consents, the sale of the TMA Vessels is not an event of default under § 11.28 of the DIP Financing Agreement.

transaction, including any fees related to Class and Flag documentation and transfer matters, which costs are expected to be less than $500.

### Relief From the 14-Day Waiting Period Under Bankruptcy Rules 6004(h) is Appropriate

29. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtors request that the order approving the sale of the TMA Vessels be effective immediately by providing that the 14-day stay under Bankruptcy Rule 6004(h) is waived. As set forth above, given the Closing Date and Termination Date set forth in the TMA LOI, time is of the essence in connection with the proposed sale transaction.

### NO PRIOR REQUEST

30. No prior request for the relief sought in this Motion has been made to this Court in these Cases.

### NOTICE

31. Notice of this Motion has been provided by first-class mail to: (a) the Office of the United States Trustee for the District of Delaware; (b) Tennenbaum, as lender for the U.S. Credit Facility; (c) Obsidian, as administrative agent and collateral agent for the U.S. Credit Facility; (d) Nordea, as lender for the Trico Shipping W/C Facility and as administrative agent and collateral agent for the U.S. Credit Facility; (e) U.S. Bank, as Trustee and collateral agent for the Secured Notes; (f) Wells Fargo Bank, as Trustee for the 3% Notes; (g) Unicredit, as lender for the Trico Shipping W/C Facility; (h) Deutsche Bank National Trust Company, as Trustee for the High Yield Notes; (i) Wilmington Trust FSB, as collateral agent to the intercreditor agreement between the Trico Shipping W/C Facility and the High Yield Notes; (j) those persons who have formally appeared in these Cases and requested service pursuant to Bankruptcy Rule

2002; (k) counsel to the Official Committee of Unsecured Creditors; and (l) all applicable government agencies to the extent required by the Bankruptcy Rules and the Local Rules.

## PRAYER

The Debtors respectfully request that the Court enter an Order approving the sale of the TMA Vessels to Buyer free and clear of all claims, liens, and encumbrances under the terms of the Agreement. The Debtors further request that the Court grant them such other and further relief to which they may be justly entitled.

October 13, 2010
Wilmington, Delaware

Respectfully submitted,

*/s/ Andrew R. Remming*
Robert J. Dehney (No. 3578)
Gregory T. Donilon (No. 4244)
Andrew R. Remming (No. 5120)
L. John Bird (No. 5310)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Tel: 302.658.9200
Fax: 302.658.3989

-and-

Harry A. Perrin
VINSON & ELKINS LLP
First City Tower
1001 Fannin Street, Suite 2500
Houston, TX 77002-6760
Tel: 713.758.2222
Fax: 713.758.2346
hperrin@velaw.com

-and-

John E. Mitchell (admitted *pro hac vice*)
Angela B. Degeyter (admitted *pro hac vice*)
John Paul K. Napier (admitted *pro hac vice*)
VINSON & ELKINS LLP
Trammell Crow Center

2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel: 214.220.7700
Fax: 214.999.7787
jmitchell@velaw.com
adegeyter@velaw.com
jnapier@velaw.com

*Attorneys for the Debtors and Debtors-in-Possession*

3826535.2