# EXHIBIT A

# Heads of Agreement

This Heads of Agreement is executed this __29th__ day of October 2010, by and between:

( i )    Tidewater Inc., on behalf of itself and its wholly-owned subsidiary, Jackson Marine, L.L.C. (the "Buyer")

and

(ii)    Trico Marine Assets, Inc. (the "Seller"), with respect to the sale of the U.S.-flag vessels, M/V TRICO MOON and M/V TRICO MYSTIC (the "Vessels").

The Seller and the Buyer are collectively referred to as the "Parties".

1.  Effective Date

    The effective date of this Heads of Agreement is __29__ October 2010 (the "Effective Date"), and this Heads of Agreement and the related Memorandum of Agreement (defined below) for each of the Vessels shall be executed to be effective as of the Effective Date. The charter assignments referenced in Clause 2(B) below shall be effective as of the date of the closing of the sale of the M/V TRICO MYSTIC.

2.  Overview of Transaction

    This Heads of Agreement contemplates the en bloc sale of two (2) Vessels, as follows:            *Fifteen million two hundred and fifty*

    A) Buyer will acquire from Seller the Vessels pursuant to the terms and conditions of the Memoranda of Agreement attached hereto as Appendices "A" and "B" for a purchase price of ~~thirteen million~~ dollars ($~~13,000,000~~15,250,000), each

    B) The Seller, with the assistance of the Buyer (and/or its nominated affiliates), shall use its best efforts to assign (or cause its applicable affiliates to assign) to the Buyer (and/or its nominated affiliates) contracts 2050 0052505.09-2 and 2050 0052506.09-2 with Petróleo Brasileiro S/A ("Petrobras") relating to the M/V TRICO MYSTIC. Such assignments, which will be effective as of the date of the sale closing of the M/V TRICO MYSTIC, shall be subject to the consent of

Petrobras and shall be governed by mutually-agreed assignment agreements between the assignors and assignees, which assignment agreements shall contain standard representations and warranties regarding the assignor not being in breach of the contracts being assigned and undertaking to indemnify the assignee in case any such pre-assignment breach comes to light or is raised by Petrobras; although the Seller, with assistance of the Buyer (and/or its nominated affiliates) hereby agrees to use its best efforts to cause Petrobras to provide a reconciliation of trailing expenses, such reconciliation to include on-hire fuel inventory, possible late delivery of the M/V TRICO MYSTIC to Petrobras (and any pending liquidated damages relating thereto), accrued downtime (if any), penalties for excessive downtime, and other relevant commercial/operational issues relating to the assigned contracts, so that the Parties may be able to settle all outstanding amounts at the sale closing of the M/V TRICO MYSTIC.

3. Timing of the Transaction

The Parties estimate that the sale of the Vessels and the aforesaid contract assignments shall close/be effective on a mutually-agreed date between 15 and 30 November 2010. In case the Seller is not ready to close the sales of the Vessels and effectuate the assignments within such timeframe (whether due to the failure to secure all necessary approvals or otherwise), such sale closing and assignments shall be delayed to a mutually-agreed date on or before 30 December 2010 (the "Cancelling Date"). However, unless a new Cancelling Date is agreed upon in accordance with the procedures set forth in Clause 5 of Appendices "A" and "B", the Buyer may (i) cancel the entire transaction outlined in Clause 2 above or (ii) cancel the purchase of any Vessel which the Seller is not ready to close on in a timely manner, without prejudice to Buyer's rights to purchase the remaining Vessel. In the event the approval described in Clause 4(B) below has not been given with respect to the M/V TRICO MYSTIC by December 30, 2010, but the Seller is otherwise fully prepared to close the sale of the other Vessel (all other required approvals having been obtained, all required notices having been given, and all other closing requirements having been satisfied or will be satisfied at the closing), then the Buyer hereby undertakes to close the sale of the other Vessel; and the sale closing of the M/V TRICO MYSTIC will

either be delayed until the consent described in Clause 4(B) below has been obtained or Buyer cancels the sale of such Vessel. In case the Buyer cancels the purchase of any of the Vessels for the reasons set forth in this Clause 3, the deposit payments previously made by the Buyer shall be promptly refunded to the Buyer by the Escrow Agent (defined in Clause 6 below).

4. Required Approvals

   A) Prior to the closing of the M/V TRICO MYSTIC and the M/V TRICO MOON, the Seller shall secure from the U.S. Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), in connection with case no. 10-12653, a final non-appealable court order approving the sale of the Vessels to the Buyer on the terms and conditions set forth in Appendices "A" and "B" and as outlined in this Heads of Agreement.

   B) Prior to the closing of the M/V TRICO MYSTIC, the Seller shall secure (or cause to be secured) the necessary approval/consent of Petrobras to assign the contracts relating to the M/V TRICO MYSTIC and described in Clause 2(B) above, to Jackson Marine, L.L.C. or to such of its affiliate(s) as it shall designate to the Seller in writing.

5. Required Notices

   The Seller hereby undertakes to make all required notices to claimants and other interested parties in the bankruptcy matter referred to in Clause 4(A) above of the contemplated sale of the Vessels. In addition, the Seller hereby undertakes to give the following additional advance notices of such contemplated sale:

   i)    by publication notice in the Lloyds List, Fairplay, in a general circulation daily newspaper in Delaware, and in a general circulation daily newspaper in the ports in which the Vessels are located or from which they normally operate; and

   ii)   by mail, fax, or e-mail to the credit manager of all known or possible lien holders in either or both of the Vessels.

6. Securitization of Warranty

   In order to give the Buyer a reasonable level of comfort that the title to the subject Vessels will, indeed, be free and clear from liens and encumbrances as set forth in

Clause 9 of Appendices "A" and "B", the five percent (5%) deposit to be paid by the Buyer pursuant to Clause 2 of Appendixes "A" and "B" to Jones, Walker, Waechter, Poitevent, Carrere & Denegre L.L.P. (the "Escrow Agent"), to be held by them in escrow for the Seller and the Buyer, shall continue to be held by the Escrow Agent after each Vessel's sale closing as a Purchase Price hold-back (the "Hold-back") for the period specified in each of the Appendixes "A" and "B" (the Hold-back Period"). The Hold-back shall serve to securitize the Seller's warranty of no liens and encumbrances. If no pre-closing liens/encumbrances manifest themselves during the Hold-back Period, the Hold-back shall be released to the Seller immediately following the Hold-Back Period. If any pre-closing liens/encumbrances do manifest themselves during the Hold-back Period, the Hold-back shall be used to discharge such liens/encumbrances and shall be paid/released in accordance with the terms and conditions of Appendixes "A" and "B" (including the Escrow Agreement referenced therein) or in accordance with the joint written instructions of the Seller and the Buyer for each of the Vessels.

7. <u>Relationship of Heads of Agreement to Appendices "A" and "B"</u>

This Heads of Agreement and Appendices "A" and "B" are to be read together as the complete agreement between the Parties relating to the sale of the Vessels (save for any additional agreements referred to or contemplated by this Heads of Agreement and/or Appendices "A" and "B"). In case of any inconsistency between Appendices "A" and "B" and this Heads of Agreement, this Heads of Agreement shall prevail.

8. <u>Governing Law and Dispute Resolution</u>

This Heads of Agreement shall be governed by and construed in accordance with Title 9 of the United States Code, the General Maritime Law of the U.S.A. and the Law of the State of New York to the extent not provided for by the General Maritime Law of the U.S.A. The venue for handling any disputes arising out of this Heads of Agreement shall be the Bankruptcy Court; provided, however, that any disputes which the Bankruptcy Court declines to take jurisdiction over shall be referred to arbitration by three (3) arbitrators at New York, New York, one to be appointed by each of the Parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this

Agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of the Society of Marine Arbitrators, Inc. New York. The Parties hereto consent to the personal jurisdiction of the Bankruptcy Court and its venue.

9. Notices

Notices hereunder shall be given in writing to the respective Parties as specified in Clause 17 of each of the Appendices "A" and "B".

10. Breakup Fee

The Seller agrees to request that the Bankruptcy Court enter an order providing that, if a sale of the Vessels to a party other than Jackson Marine, L.L.C. is consummated, then Jackson Marine, L.L.C. shall be paid a breakup fee of seven hundred eighty thousand dollars (USD $780,000) by the Seller upon closing with such other party.

11. No Brokers

The Seller and the Buyer each warrant and represent to the other that they are not obligated to pay a marketing fee, brokerage commission, or similar fee to any other person in connection with the sale of the Vessels; and the Seller and Buyer each hereby agree to indemnify, defend and hold the other harmless with respect to any breach by the warranting/representing party of the warranty and representation given by them in this Clause 11.

In Witness Whereof the Parties have on the date set forth hereinabove executed multiple originals of this Heads of Agreement.

Tidewater Inc. on behalf of itself and
its wholly-owned subsidiary,
Jackson Marine, L.L.C.

Trico Marine Assets, Inc.

By:_____

By:_____
~~Dean E. Taylor~~ Jeffrey M. Platt
~~Chairman, President, and~~ Executive Vice President
~~CEO~~

Appendix "A"

# MEMORANDUM OF AGREEMENT

Dated: **29** October 2010

Norwegian Shipbrokers' Association's Memo-
randum of Agreement for sale and purchase of ships.
Adopted by The Baltic and International Maritime
Council (BIMCO) in 1956
Code-name

**SALEFORM 1993**
Revised 1986, 1983 and 1986/87.

| | |
|---|---|
| **TRICO MARINE ASSETS, INC.**, of 10001 Woodloch Forest Dr., Suite 610, The Woodlands, TX 77380 hereinafter called the Sellers, have agreed to sell, and **JACKSON MARINE, L.L.C.**, having an address at 601 Poydras St., Suite 1900, New Orleans, Louisiana 70130-6040, U.S.A., hereinafter called the Buyers, have agreed to buy | 1 |
| | 2 |
| Name: **TRICO MOON** | 3 |
| Classification Society/Class: **ABS+A1 OFFSHORE SUPPORT VESSEL+AMS+DPS-2 "CIRCLE E", SOLAS, USCG SUBCHAPTER L, FULL OCEAN** | 4 |

| | | |
|---|---|---|
| Built: **2008** | By: **Bender Shipbulding& Repair, Co., Inc.** | 5 |
| Flag: **U.S.A.** | Place of Registration: **U.S.C.G. National Vessel Documentation Center** | 6 |
| Call Sign: _____ | Grt/Nrt: _____ | 7 |
| Register Official NumberNo: _____ IMO No: _____ | | 8 |

hereinafter called the Vessel, on the following terms and conditions:                                9

**Definitions**                                                                                         10

"Banking days" are days on which banks are open both in the country of the currency                    11
stipulated for the Purchase Price in Clause 1 and in the place of closing stipulated in Clause 8.      12

"In writing" or "written" means a letter handed over from the Sellers to the Buyers or vice versa,     13
a registered letter, telex, telefax or other modern form of written communication.                     14

"Classification Society" or "Class" means the Society referred to in line 4.                            15

**1.**    Purchase Price USD ~~13,000,000.00~~ (United States Dollars ~~Thirteen Million~~) cash        16

*(handwritten: 15,250,000)*     *(handwritten: Fifteen)*     *(handwritten: Two Hundred Fifty)*        17

**2.**    **Deposit**

As security for the correct fulfilment of this Agreement the Buyers shall pay a deposit of ~~10~~5
%                                                                                                       18
(~~ten~~ five per cent) of the Purchase Price within three (3) banking days from the date of all        19
Parties having signed the escrow agreement referred to in line 24 below. ~~this~~
~~Agreement.~~ This deposit shall be placed with the law firm of Jones, Walker, Waechter, Poitevent,   20
Carrere & Denegre L.L.P. of Suite 5100, 201 St. Charles Ave., New Orleans, LA 70170 (the
"Escrow Agent")
and held by them in escrow a ~~joint account~~ for the Sellers and the Buyers, and to be released in   21
accordance with this Agreement or
with joint written instructions of the Sellers and the Buyers. ~~Interest, if any, to be credited to the~~ 22
~~Buyers.~~ Any fee charged for holding the said deposit shall be borne equally by the Sellers and the 23
Buyers and the Parties hereto agree to sign an escrow agreement with the Escrow Agent within          24
three (3) banking days of the date of this Agreement.

**3.**    **Payment**                                                                                   25

The said balance of the Purchase Price shall be paid in full free of bank charges to Sellers'          26
nominated bank account as follows: _____
~~on delivery of the Vessel, but not later than 3 banking days after the Vessel is in every respect~~   27
~~physically ready for delivery in accordance with the terms and conditions of this Agreement and~~     28

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

~~Notice of Readiness has been given in accordance with Clause 5.~~ Following delivery of the Vessel, 29
the said deposit shall continue to be held by the Escrow Agent as security against any liens or
encumbrances bearing against the Vessel prior to delivery and which become manifest within
one hundred and twenty (120) days (the "Hold-back Period") of such delivery. In case any such
liens/encumbrances manifest themselves during the Hold-back Period, the Buyers may give
notice to the Sellers and the Escrow Agent of a claim in the amount of such
liens/encumbrances. In such event the Escrow Agent may either: i) use some or all of the said
deposit to discharge such liens/encumbrances or ii) if the Sellers object in writing, attempt to
get a consensus in the form joint written instructions from the Buyers and Sellers on the issue,
failing which, the Escrow Agent may place the amount of the claim (but not exceeding the
amount of the said deposit) into the registry of the court specified in the Escrow Agreement for
a decision. Any undisputed portion of the said deposit remaining in the Escrow Agent hands
following the end of the Hold-back Period shall promptly be paid by the Escrow Agent to the
Sellers.

| | | |
|---|---|---|
| **4.** | **Inspections** | 30 |

a)* ~~The Buyers have inspected and accepted the Vessel's classification records. The Buyers~~ 31
~~have also inspected the Vessel at/in ——— on ———~~ 32
~~and have accepted the Vessel following this inspection and the sale is outright and definite,~~ 33
~~subject only to the terms and conditions of this Agreement.~~ 34

b)* The Buyers shall have the right to inspect the Vessel's classification records and declare 35
whether same are accepted or not within ten (10) banking days of the date of this 36
Agreement.
The Sellers shall provide for inspection of the Vessel at/in mutually agreed place in Mexico. 37
The Buyers shall undertake the inspection without undue delay to the Vessel. Should the 38
Buyers cause undue delay they shall compensate the Sellers for the losses thereby incurred. 39
The Buyers shall inspect the Vessel without opening up and without cost to the Sellers. 40
During the inspection, the Vessel's deck and engine log books shall be made available for 41
examination by the Buyers. If the Vessel is accepted after such inspection, the sale shall 42
become outright and definite, subject only to the terms and conditions of this Agreement, 43
provided the Sellers receive written notice of acceptance from the Buyers within 72 hours 44
after completion of such inspection. 45
Should notice of acceptance of the Vessel's classification records and of the Vessel not be 46
received by the Sellers as aforesaid, the deposit together with interest earned shall be 47
released immediately to the Buyers, whereafter this Agreement shall be null and void. 48

\* *4 a) and 4b) are alternatives; delete whichever is not applicable. In the absence of deletions,* 49
*alternative 4a) to apply.* 50

**5.** **Notices, time and place of delivery** 51

Except as otherwise agreed in this MOA, the Vessel shall be taken over by Buyers on an 52
"as is" basis at time of closing.

a) The Sellers shall keep the Buyers well informed of the Vessel's ~~itinerary~~
~~status/location and~~ shall
provide the Buyers with 30, 10, and 5 days notice of the estimated time of arrival readiness at 53
the
intended place of drydocking/underwater inspection/delivery. When the Vessel is at the place 54
of delivery and in every respect physically ready for delivery in accordance with this 55
Agreement, the Sellers shall give the Buyers a written Notice of Readiness for delivery. 56

b) The Vessel shall be delivered and taken over safely afloat at a safe and accessible berth or 57
anchorage at/in a mutually-agreed location in Mexico. 58
~~in the Sellers' option.~~ 59

Expected time of delivery: Between November 15 and November 30, 2010, exact date to be 60
mutually agreed.
Date of cancelling (see Clauses 5 c), 6 b) (iii) and 14): 30th December 2010 61

c) If the Sellers anticipate that, notwithstanding the exercise of due diligence by them, the 62
Vessel will not be ready for delivery by the cancelling date they may notify the Buyers in 63
writing stating the date when they anticipate that the Vessel will be ready for delivery and 64
propose a new cancelling date. Upon receipt of such notification the Buyers shall have the 65
option of either cancelling this Agreement in accordance with Clause 14 within 7 running 66

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

days of receipt of the notice or of accepting the new date as the new cancelling date. If the 67
Buyers have not declared their option within 7 running days of receipt of the Sellers' 68
notification or if the Buyers accept the new date, the date proposed in the Sellers' notification 69
shall be deemed to be the new cancelling date and shall be substituted for the cancelling 70
date stipulated in line 61. 71

If this Agreement is maintained with the new cancelling date all other terms and conditions 72
hereof including those contained in Clauses 5 a) and 5 c) shall remain unaltered and in full 73
force and effect. Cancellation or failure to cancel shall be entirely without prejudice to any 74
claim for damages the Buyers may have under Clause 14 for the Vessel not being ready 75
by
the original cancelling date. 76

d) Should the Vessel become an actual, constructive or compromised total loss before delivery 77
the deposit together with interest earned shall be released immediately to the Buyers 78
whereafter this Agreement shall be null and void. 79

## 6. Drydocking/Divers Inspection 80

a)** ~~The Sellers shall place the Vessel in drydock at the port of delivery for inspection by the~~ 81
~~Classification Society of the Vessel's underwater parts below the deepest load line, the~~ 82
~~extent of the inspection being in accordance with the Classification Society's rules. If the~~ 83
~~rudder, propeller, bottom or other underwater parts below the deepest load line are found~~ 84
~~broken, damaged or defective so as to affect the Vessel's class, such defects shall be made~~ 85
~~good at the Sellers' expense to the satisfaction of the Classification Society without~~ 86
~~condition/recommendation".~~ 87

b)** (i) The Vessel is to be delivered without drydocking. However, the Buyers shall 88
have the right at their expense to arrange for an underwater inspection by a diver approved 89
by the Classification Society prior to the delivery of the Vessel. The Sellers shall at their 90
cost make the Vessel available for such inspection. The extent of the inspection and the 91
conditions under which it is performed shall be to the satisfaction of the Classification 92
Society. If the conditions at the port of delivery are unsuitable for such inspection, the 93
Sellers shall make the Vessel available at a suitable alternative place near to the delivery 94
port. 95

(ii) If the rudder, propeller, bottom or other underwater parts below the deepest load line 96
are found broken, damaged or defective so as to affect the Vessel's class, then unless 97
repairs can be carried out afloat to the satisfaction of the Classification Society, the Sellers 98
shall arrange for the Vessel to be drydocked at their expense for inspection by the 99
Classification Society of the Vessel's underwater parts below the deepest load line, the 100
extent of the inspection being in accordance with the Classification Society's rules. If the 101
rudder, propeller, bottom or other underwater parts below the deepest load line are found 102
broken, damaged or defective so as to affect the Vessel's class, such defects shall be made 103
good by the Sellers at their expense to the satisfaction of the Classification Society 104
without condition/recommendation*. In such event the Sellers are to pay also for the cost of 105
the underwater inspection and the Classification Society's attendance. 106

(iii) If the Vessel is to be drydocked pursuant to Clause 6 b) (ii) and no suitable dry- 107
docking facilities are available at the port of delivery, the Sellers shall take the Vessel 108
to a port where suitable drydocking facilities are available, whether within or outside the 109
delivery range as per Clause 5 b). Once drydocking has taken place the Sellers shall deliver 110
the Vessel at a port within the delivery range as per Clause 5 b) which shall, for the 111
purpose of this Clause, become the new port of delivery. In such event the cancelling date 112
provided for in Clause 5 b)) shall be extended by the additional time required for the 113
drydocking and extra steaming, but limited to a maximum of 14 running days. 114

c) If the Vessel is drydocked pursuant to Clause 6 a) or 6 b) above 115

(i) the Classification Society may require survey of the tailshaft system, the extent of 116
the survey being to the satisfaction of the Classification surveyor. If such survey is not 117
required by the Classification Society, the Buyers shall have the right to require the tailshaft 118
to be drawn and surveyed by the Classification Society, the extent of the survey being in 119
accordance with the Classification Society's rules for tailshaft survey and consistent with 120
the current stage of the Vessel's survey cycle. The Buyers shall declare whether they 121
require the tailshaft to be drawn and surveyed not later than by the completion of the 122
inspection by the Classification Society. The drawing and refitting of the tailshaft shall be 123
arranged by the Sellers. Should any parts of the tailshaft system be condemned or found 124
defective so as to affect the Vessel's class, those parts shall be renewed or made good at 125
the Sellers' expense to the satisfaction of the Classification Society without 126

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

condition/recommendation*. 127

(ii) the expenses relating to the survey of the tailshaft system shall be borne 128
by the Buyers unless the Classification Society requires such survey to be carried out, in 129
which case the Sellers shall pay these expenses. The Sellers shall also pay the expenses 130
if the Buyers require the survey and parts of the system are condemned or found defective 131
or broken so as to affect the Vessel's class*. 132

(iii) the expenses in connection with putting the Vessel in and taking her out of 133
drydock, including the drydock dues and the Classification Society's fees shall be paid by 134
the Sellers if the Classification Society issues any condition/recommendation* as a result 135
of the survey or if it requires survey of the tailshaft system. In all other cases the Buyers 136
shall pay the aforesaid expenses, dues and fees. 137

(iv) the Buyers' representative shall have the right to be present in the drydock, but 138
without interfering with the work or decisions of the Classification surveyor. 139

(v) the Buyers shall have the right to have the underwater parts of the Vessel 140
cleaned and painted at their risk and expense without interfering with the Sellers' or the 141
Classification surveyor's work, if any, and without affecting the Vessel's timely delivery. If, 142
however, the Buyers' work in drydock is still in progress when the Sellers have 143
completed the work which the Sellers are required to do, the additional docking time 144
needed to complete the Buyers' work shall be for the Buyers' risk and expense. In the event 145
that the Buyers' work requires such additional time, the Sellers may upon completion of the 146
Sellers' work tender Notice of Readiness for delivery whilst the Vessel is still in drydock 147
and the Buyers shall be obliged to take delivery in accordance with Clause 3, whether 148
the Vessel is in drydock or not and irrespective of Clause 5 b). 149

\* Notes, if any, in the surveyor's report which are accepted by the Classification Society 150
without condition/recommendation are not to be taken into account. 151

\*\* 6 a) and 6 b) are alternatives; delete whichever is not applicable. In the absence of deletions, 152
alternative 6 a) to apply. 153

**7.    Spares/bunkers, etc.** 154

The Sellers shall deliver the Vessel to the Buyers with everything belonging to her on board and on 155
shore. All all spare parts and spare equipment unique to the Vessel that is stored ashore in 156
the region or area where the Vessel is to be delivered, including spare tail-end shaft(s) and/or
spare
propeller(s)/propeller blade(s), if any, belonging to the Vessel at the time of inspection used or 157
unused, whether on board or not shall become the Buyers' property, but spares on order are to
be 158
excluded. Forwarding charges, if any, shall be for the Buyers' account. The Sellers are not required to 159
replace spare parts including spare tail - end shaft(s) and spare propeller(s)/propeller blade(s) which 160
are taken out of spare and used as replacement prior to delivery, but the replaced items shall be the 161
property of the Buyers. The radio installation and navigational equipment shall be included in the sale 162
without extra payment if they are the property of the Sellers. Unused stores and provisions that are 163
on board the Vessel shall be
included in the sale and be taken over by the Buyers without extra payment. 164

The Sellers have the right to take ashore crockery, plates, cutlery, linen and other articles bearing the 165
Sellers' flag or name, provided they replace same with similar unmarked items. Library, forms, etc., 166
exclusively for use in the Sellers' vessel(s), shall be excluded without compensation. Captain's, 167
Officers' and Crew's personal belongings including the slop chest are to be excluded from the sale, 168
as well as the following additional items (including items on hire): leased VSAT system 169

The Buyers shall take over the remaining bunkers and unused lubricating oils in storage tanks and 170
sealed drums and pay the current net market price (excluding barging expenses) at the port and date 171
of delivery of the Vessel. 172
Payment under this Clause shall be made at the same time and place and in the same currency as 173
the Purchase Price. 174

**8.    Documentation** 175

The place of closing: Houston, Texas 176

In exchange for payment of the Purchase Price the Sellers shall furnish the Buyers with delivery 177
documents, namely: 178

a)    Legal Bill of Sale in triplicate original and on in a form U.S. Coast Guard Form 1340, 179
recordable in ———(the country in which the Buyers are

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

~~to register the Vessel),~~ warranting that the Vessel is free from all encumbrances, mortgages 180
and maritime liens ~~or any other debts or claims whatsoever, duly notarially attested. and~~ 181
~~legalized by the consul of such country or other competent authority.~~ 182

b) Current Certificate of Ownership ~~or an original extract of Transcript of Register~~ issued by 183
the competent authorities of the flag state of
the Vessel, dated no more than three (3) business days prior to the sale closing of the 184
Vessel, evidencing the Vessel to be owned by Sellers free from registered liens and
encumbrances.

c) Confirmation of Class issued within ~~72 hours~~ five (5) business days prior to delivery. 185

d) ~~Current Certificate issued by the competent authorities stating that the Vessel is free from~~ 186
~~registered encumbrances.~~ 187

e) ~~Certificate of Deletion of the Vessel from the Vessel's registry or other official evidence of~~ 188
~~deletion appropriate to the Vessel's registry at the time of delivery, or, in the event that the~~ 189
~~registry does not as a matter of practice issue such documentation immediately, a written~~ 190
~~undertaking by the Sellers to effect deletion from the Vessel's registry forthwith and furnish a~~ 191
~~Certificate or other official evidence of deletion to the Buyers promptly and latest within 4~~ 192
~~(four) weeks after the Purchase Price has been paid and the Vessel has been delivered.~~ 193

f) Any such additional documents as may reasonably be required by the competent authorities 194
for the purpose of registering the Vessel, provided the Buyers notify the Sellers of any such 195
documents as soon as possible after the date of this Agreement. 196

The Sellers shall at the time of closing furnish the Buyers with the following additional 197
documents:
- An Invoice for the Purchase Price
- Certified extract of the resolution of the Sellers' Board of Directors and Powers of Attorney:
      i) Approving the sale/contract;
      ii) Appointing person(s) to sign the Bill of Sale;
      iii) Appointing person(s) to sign the Protocol of Delivery; and
      iv) Appointing person(s) to deal with funds.

g) The Sellers shall provide the Buyers with fax or electronic draft copies of all the closing
documents listed in this Clause 8. save for the Vessel's classification certificates as required
under Clause 8.c) above, at least 48 hours prior to closing.

~~At the time of d~~Delivery of the Vessel shall be acknowledged by the Buyers and Sellers ~~shall~~
signing and delivering to each other a Protocol of
Delivery and Acceptance form confirming the date and time of delivery of the Vessel from the Sellers 198
to the
Buyers. 199

At the time of delivery the Sellers shall hand to the Buyers the classification certificate(s) as well as all 200
plans etc., which are on board the Vessel. Other certificates which are on board the Vessel shall also 201
be handed over to the Buyers unless the Sellers are required to retain which case the 202
Buyers to have the right to take copies. Other technical documentation which may 203
be in the Sellers' possession shall be promptly forwarded to the Buyers at their expense, ~~if they so~~ 204
~~Request~~in hard copy (and in electronic format where so available). The Sellers may keep the 205
Vessel's log books but the Buyers to have the right to take
copies of same. 206

9. Encumbrances 207

The Sellers warrant that the Vessel, at the time of delivery, is exclusively owned by them and is 208
~~shall be~~ free from all charters, encumbrances,
mortgages and maritime liens or any other debts whatsoever. The Sellers hereby undertake 209
to indemnify the Buyers against all consequences of claims made against the Vessel which have 210
been incurred prior to the time of delivery. 211

10. Taxes, etc. 212

Any taxes, fees and expenses in connection with the purchase and registration under the Buyers' flag 213
shall be for the Buyers' account, whereas similar charges in connection with the closing of the Sellers' 214

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

register shall be for the Sellers' account. The Sellers shall bear and pay for all taxes and duties 215
imposed by the government of any nation or any political subdivision thereof in connection
with the execution and/or performance of this Agreement, up to and including delivery of the
Vessel to the Buyers.

## 11. Condition on delivery 216

The Vessel with everything belonging to her shall be at the Sellers' risk and expense until she is 217
delivered to the Buyers, but subject to the terms and conditions of this Agreement she shall be 218
delivered and taken over as she was at the time of inspection, fair wear and tear excepted. 219
However, the Vessel shall be delivered with her class maintained without condition/recommendation*, 220
free of average damage affecting the Vessel's class, and with her classification certificates and 221
national certificates, as well as all other certificates the Vessel had at the time of inspection, valid and 222
unextended without condition/recommendation* by Class or the relevant authorities at the time of 223
delivery. 224
"Inspection" in this Clause 11, shall mean the Buyers' inspection according to Clause 4 a) or 4 b), if 225
applicable, or the Buyers' inspection prior to the signing of this Agreement. If the Vessel is taken over 226
without inspection, the date of this Agreement shall be the relevant date. 227

* Notes, if any, in the surveyor's report which are accepted by the Classification Society 228
without condition/recommendation are not to be taken into account. 229

## 12. Name/markings 230

~~Upon~~Within a reasonable period after delivery, the Buyers undertake to ~~change~~remove "Trico" 231
from the name of the Vessel and alter funnel markings.

## 13. Buyers' default 232

Should the deposit not be paid in accordance with Clause 2, the Sellers have the right to cancel this 233
Agreement, and, ~~they~~if such failure to pay the deposit is due to Buyers' proven negligence or 234
wrongful acts or omissions, the Sellers shall be entitled to claim compensation for their losses
and for all expenses
incurred, subject to an aggregate limit equal to five percent (5%) of the Purchase Price. ~~together~~ 235
~~with interest.~~
Should the Purchase Price not be paid in accordance with Clause 3, and if such failure is due 236
to Buyers' negligence or wrongful acts or omissions, the Sellers have the right to
cancel the Agreement, in which case the deposit ~~together with interest earned shall~~be released to the 237
Sellers as full and final liquidated damages.~~ If the deposit does not cover their loss, the~~ 238
~~Sellers shall be entitled to claim further~~
~~compensation for their losses and for all expenses incurred together with interest.~~ 239

## 14. Sellers' default 240

Should the Sellers fail to give Notice of Readiness in accordance with Clause 5 a) or fail to be ready 241
to validly complete a legal transfer by the date stipulated in line 61 the Buyers shall have 242
the option of cancelling this Agreement provided always that the Sellers shall be granted a 243
maximum of 3 banking days after Notice of Readiness has been given to make arrangements 244
for the documentation set out in Clause 8. If, after Notice of Readiness has been given but before 245
the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not 246
made physically ready again in every respect by the date stipulated in line 61 and new Notice of 247
Readiness given, the Buyers shall retain their option to cancel. In the event that the Buyers elect 248
to cancel this Agreement the deposit ~~together with interest earned~~ shall be released to them 249
immediately and the Buyers shall not be entitled to any damages unless such failure is due to 250
Sellers' proven negligence or wrongful acts or omissions.
However, ~~S~~should the Sellers, due to their proven negligence or wrongful acts or omissions, 251
fail to give Notice of Readiness by the date stipulated in line 61 or fail to be ready
to validly complete a legal transfer as aforesaid, they shall make due compensation to the Buyers for 252
their loss and for all expenses, ~~together with interest~~ subject to an aggregate limit equal 253
to five percent (5%) of the Purchase Price, as full and final liquidated damages. ~~if their failure~~
~~is due to proven~~
~~negligence and whether or not the Buyers cancel this Agreement.~~ 254

## 15. Buyers' representatives 255

After this Agreement has been signed by both parties and the deposit has been lodged, the Buyers 256

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

have the right to place ~~two~~ up to five (5) representatives on board the Vessel at their sole risk and    257
expense for familiarization purposes, subject to any limitations imposed by the Vessel's flag
state as to the maximum number of such representatives being allowed on board. ~~upon~~
~~arrival at       on or about       .~~                                                                      258
These representatives are on board for the purpose of familiarisation and in the capacity of              259
observers only, and they shall not interfere in any respect with the operation of the Vessel.              260
This familiarization will not include a sea trial. The
Buyers' representatives shall sign the Sellers' letter of indemnity prior to their embarkation.           261

**16.    Arbitration**                                                                                       262

a)* ~~This Agreement shall be governed by and construed in accordance with English law and~~            263
~~any dispute arising out of this Agreement shall be referred to arbitration in London in~~              264
~~accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or~~                 265
~~re-enactment thereof for the time being in force, one arbitrator being appointed by each~~             266
~~party. On the receipt by one party of the nomination in writing of the other party's arbitrator,~~    267
~~that party shall appoint their arbitrator within fourteen days, failing which the decision of the~~    268
~~single arbitrator appointed shall apply. If two arbitrators properly appointed shall not agree~~      269
~~they shall appoint an umpire whose decision shall be final.~~                                          270

b)* This Agreement shall be governed by and construed in accordance with Title 9 of the                 271
United States Code, the General Maritime Law of the U.S.A. and the Law of the State of                  272
New York, to the extent not provided for the General Maritime Law of the U.S.A. The
venue for handling disputes arising out of this Agreement shall be the United States
Bankruptcy Court for the District of Delaware ("Bankruptcy Court"): provided, however,
that any disputes which the Bankruptcy Court declines to take jurisdiction over shall be
referred to arbitration by three (3) arbitrators and should any dispute arise out of
~~this Agreement, the matter in dispute shall be referred to three persons~~ at New York, one to      273
be appointed by each of the parties hereto, and the third by the two so chosen; their                 274
decision or that of any two of them shall be final, and for purpose of enforcing any award, this      275
Agreement may be made a rule of the Court.                                                            276
The proceedings shall be conducted in accordance with the rules of the Society of Maritime            277
Arbitrators, Inc. New York. The Parties hereto consent to the personal jurisdiction of the            278
Bankruptcy Court and its venue.

c)* ~~Any dispute arising out of this Agreement shall be referred to arbitration at~~                    279
~~, subject to the procedures applicable there.~~                                                        280
~~The laws of       shall govern this Agreement.~~                                                        281

*      *16 a), 16 b) and 16 c) are alternatives; delete whichever is not applicable. In the absence of*   282
*deletions, alternative 16 a) to apply.*                                                                  283

**17.    Notices**

Notices hereunder are to be sent by fax or e-mail, with hard copies following by airmail or courier.

All notices to the Sellers are to be sent to:

Trico Marine Assets, Inc.
10001 Woodloch Forest Dr.
Suite # 610
The Woodlands, TX 77380
Attn: Brett Cenkus
E-mail: bcenkus@tricomarine.com
Tel: 713.780.9926
Fax: 281.203.5701

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

All Notices to Buyers are to be sent to:

Jackson Marine, L.L.C.
2000 W. Sam Houston Pkwy. S.
Suite # 1280
Houston, TX 77042
Attn: Stephen W. Dick
E-mail: sdick@tdw.com
Tel: 713.479.5303
Fax: 713.470.0078

With a copy to:

Jackson Marine, L.L.C.
601 Poydras Street
Suite # 1900
New Orleans, LA 70130
Attn: Marinus Quist
E-mail: mquist@tdw.com
Tel: 504.566.4578
Fax: 504.566.4559

18. Nominee

The Buyers may at any time, up to five (5) working days prior to the sale closing, notify the Sellers in writing of the Buyers' nominee (which must be an affiliate of the Buyers) to take title to the Vessel at delivery and to be the beneficiary of any and all rights of the Buyers under this Agreement, but the original Buyers shall always remain fully responsible to the Sellers for the due fulfillment of all of the Buyers' obligations to the Sellers under this Agreement.

For and on behalf of
Trico Marine Assets, Inc.

Name: _____
Title: _____

For and on behalf of
Jackson Marine, L.L.C.

Name: Jeffrey M. Platt
Title: Authorized Signatory

This document is a computer-generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expenses as a result of discrepancies between the original approved document and this computer-generated document.

Appendix "B"

# MEMORANDUM OF AGREEMENT

Dated: **29** October 2010

Norwegian Shipbrokers' Association's Memorandum of Agreement for sale and purchase of ships. Adopted by The Baltic and International Maritime Council (BIMCO) in 1956. Code-name
**SALEFORM 1993**
Revised 1966, 1983 and 1986/87.

| | |
|---|---|
| TRICO MARINE ASSETS, INC., of 10001 Woodloch Forest Dr., Suite 610, The Woodlands, TX 77380 hereinafter called the Sellers, have agreed to sell, and JACKSON MARINE, L.L.C., having an address at 601 Poydras St., Suite 1900, New Orleans, Louisiana 70130-6040, U.S.A., | 1 |
| hereinafter called the Buyers, have agreed to buy | 2 |
| Name: TRICO MYSTIC | 3 |
| Classification Society/Class: ABS+A1 OFFSHORE SUPPORT VESSEL+AMS+DPS-2 "CIRCLE E", SOLAS, USCG SUBCHAPTER L, FULL OCEAN | 4 |
| Built: 2008                By: Bender Shipbuilding & Repair, Co., Inc. | 5 |
| Flag: U.S.A.            Place of Registration: U.S.C.G. National Vessel Documentation Center | 6 |
| Call Sign: _____        Grt/Nrt: _____ | 7 |
| Register Official Number No: _____  IMO No: _____ | 8 |
| hereinafter called the Vessel, on the following terms and conditions: | 9 |

**Definitions**     10

| | |
|---|---|
| "Banking days" are days on which banks are open both in the country of the currency stipulated for the Purchase Price in Clause 1 and in the place of closing stipulated in Clause 8. | 11 12 |
| "In writing" or "written" means a letter handed over from the Sellers to the Buyers or vice versa, a registered letter, telex, telefax or other modern form of written communication. | 13 14 |
| "Classification Society" or "Class" means the Society referred to in line 4. | 15 |

*Two Hundred Fifty*

1.     Purchase Price USD ~~13,000,000.00~~ (United States Dollars ~~Thirteen Million~~) cash     16
        *(15,250,000)*     *Fifteen*

2.     **Deposit**     17

As security for the correct fulfilment of this Agreement the Buyers shall pay a deposit of ~~10~~ 5 %     18
(~~ten~~ five per cent) of the Purchase Price within **three (3)** banking days from the date of all     19
Parties having signed the escrow agreement referred to in line 24 below. ~~this Agreement.~~ This deposit shall be placed with the law firm of Jones, Walker, Waechter, Poitevent,     20
Carrere & Denegre L.L.P. of Suite 5100, 201 St. Charles Ave., New Orleans, LA 70170 (the "Escrow Agent")
and held by them in escrow ~~a joint account~~ for the Sellers and the Buyers, and to be released in     21
accordance with this Agreement or
with joint written instructions of the Sellers and the Buyers. ~~Interest, if any, to be credited to the~~     22
~~Buyers.~~ Any fee charged for holding the said deposit shall be borne equally by the Sellers and the     23
Buyers and the Parties hereto agree to sign an escrow agreement with the Escrow Agent within     24
three (3) banking days of the date of this Agreement.

3.     **Payment**     25

~~The said balance~~ of the Purchase Price shall be paid in full free of bank charges to Sellers'     26
nominated bank account as follows:
~~on delivery of the Vessel, but not later than 3 banking days after the Vessel is in every respect~~     27
~~physically ready for delivery in accordance with the terms and conditions of this Agreement and~~     28

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

~~Notice of Readiness has been given in accordance with Clause 5.~~ Following delivery of the Vessel, 29
the said deposit shall continue to be held by the Escrow Agent as security against any liens or
encumbrances bearing against the Vessel prior to delivery and which become manifest within
one hundred twenty (120) days (the "Hold-back Period") of such delivery. In case any such
liens/encumbrances manifest themselves during the Hold-back Period, the Buyers may give
notice to the Sellers and the Escrow Agent of a claim in the amount of such
liens/encumbrances. In such event the Escrow Agent may either: i) use some or all of the said
deposit to discharge such liens/encumbrances or ii) if the Sellers object in writing, attempt to
get a consensus in the form joint written instructions from the Buyers and Sellers on the issue,
failing which, the Escrow Agent may place the amount of the claim (but not exceeding the
amount of the said deposit) into the registry of the court specified in the Escrow Agreement for
a decision. Any undisputed portion of the said deposit remaining in the Escrow Agent hands
following the end of the Hold-back Period shall promptly be paid by the Escrow Agent to the
Sellers.

4.    **Inspections**                                                                                30

~~a)*   The Buyers have inspected and accepted the Vessel's classification records. The Buyers~~ 31
~~have also inspected the Vessel at/in ——— on ———~~ 32
~~and have accepted the Vessel following this inspection and the sale is outright and definite,~~ 33
~~subject only to the terms and conditions of this Agreement.~~ 34

b)*   The Buyers shall have the right to inspect the Vessel's classification records and declare 35
whether same are accepted or not within ten (10) banking days of the date of this 36
Agreement.
The Sellers shall provide for inspection of the Vessel at/in mutually agreed place in ~~Mexico.~~ 37 *Brazil*
The Buyers shall undertake the inspection without undue delay to the Vessel. Should the 38
Buyers cause undue delay they shall compensate the Sellers for the losses thereby incurred. 39
The Buyers shall inspect the Vessel without opening up and without cost to the Sellers. 40
During the inspection, the Vessel's deck and engine log books shall be made available for 41
examination by the Buyers. If the Vessel is accepted after such inspection, the sale shall 42
become outright and definite, subject only to the terms and conditions of this Agreement, 43
provided the Sellers receive written notice of acceptance from the Buyers within 72 hours 44
after completion of such inspection. 45
Should notice of acceptance of the Vessel's classification records and of the Vessel not be 46
received by the Sellers as aforesaid, the deposit together with interest earned shall be 47
released immediately to the Buyers, whereafter this Agreement shall be null and void. 48

*     4 a) and 4b) are alternatives; delete whichever is not applicable. In the absence of deletions, 49
alternative 4a) to apply. 50

5.    **Notices, time and place of delivery**                                                        51

Except as otherwise agreed in this MOA, the Vessel shall be taken over by Buyers on an 52
"as is" basis at time of closing.

a)    The Sellers shall keep the Buyers well informed of the Vessel's ~~itinerary~~
~~status/location~~ and shall
provide the Buyers with 30, 10, and 5 days notice of the estimated time of arrival ~~readiness~~ at 53
the
intended place of ~~drydocking/underwater inspection/~~delivery. When the Vessel is at the place 54
of delivery and in every respect physically ready for delivery in accordance with this 55
Agreement, the Sellers shall give the Buyers a written Notice of Readiness for delivery. 56

b)    The Vessel shall be delivered and taken over safely afloat at a safe and accessible berth or 57
anchorage at/in a mutually-agreed location in ~~Mexico,~~ 58  *Brazil*
~~in the Sellers' option.~~ 59

Expected time of delivery: Between November 15 and November 30, 2010, exact date to be 60
mutually agreed.
Date of cancelling (see Clauses 5 c), 6 b) (iii) and 14): 30th December 2010. If the only 61
outstanding approval is the Petrobras assignment approval/consent described in
Clause 4(B) of the Heads of Agreement of even date herewith to which this Agreement is
an Appendix, such Cancelling Date shall automatically be extended for an additional
thirty (30) days.

c)    If the Sellers anticipate that, notwithstanding the exercise of due diligence by them, the 62

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

Vessel will not be ready for delivery by the cancelling date they may notify the Buyers in 63
writing stating the date when they anticipate that the Vessel will be ready for delivery and 64
propose a new cancelling date. Upon receipt of such notification the Buyers shall have the 65
option of either cancelling this Agreement in accordance with Clause 14 within 7 running 66
days of receipt of the notice or of accepting the new date as the new cancelling date. If the 67
Buyers have not declared their option within 7 running days of receipt of the Sellers' 68
notification or if the Buyers accept the new date, the date proposed in the Sellers' notification 69
shall be deemed to be the new cancelling date and shall be substituted for the cancelling 70
date stipulated in line 61. 71

If this Agreement is maintained with the new cancelling date all other terms and conditions 72
hereof including those contained in Clauses 5 a) and 5 c) shall remain unaltered and in full 73
force and effect. Cancellation or failure to cancel shall be entirely without prejudice to any 74
claim for damages the Buyers may have under Clause 14 for the Vessel not being ready 75
by
the original cancelling date. 76

d)   Should the Vessel become an actual, constructive or compromised total loss before delivery 77
the deposit together with interest earned shall be released immediately to the Buyers 78
whereafter this Agreement shall be null and void. 79

**6.   Drydocking/Divers Inspection**                                                                 80

a)**   ~~The Sellers shall place the Vessel in drydock at the port of delivery for inspection by the~~   81
~~Classification Society of the Vessel's underwater parts below the deepest load line, the~~   82
~~extent of the inspection being in accordance with the Classification Society's rules. If the~~   83
~~rudder, propeller, bottom or other underwater parts below the deepest load line are found~~   84
~~broken, damaged or defective so as to affect the Vessel's class, such defects shall be made~~   85
~~good at the Sellers' expense to the satisfaction of the Classification Society without~~   86
~~condition/recommendation\*.~~   87

b)**   (i)   The Vessel is to be delivered without drydocking. However, the Buyers shall   88
have the right at their expense to arrange for an underwater inspection by a diver approved   89
by the Classification Society prior to the delivery of the Vessel. The Sellers shall at their   90
cost make the Vessel available for such inspection. The extent of the inspection and the   91
conditions under which it is performed shall be to the satisfaction of the Classification   92
Society. If the conditions at the port of delivery are unsuitable for such inspection, the   93
Sellers shall make the Vessel available at a suitable alternative place near to the delivery   94
port.   95

(ii)   If the rudder, propeller, bottom or other underwater parts below the deepest load line   96
are found broken, damaged or defective so as to affect the Vessel's class, then unless   97
repairs can be carried out afloat to the satisfaction of the Classification Society, the Sellers   98
shall arrange for the Vessel to be drydocked at their expense for inspection by the   99
Classification Society of the Vessel's underwater parts below the deepest load line, the   100
extent of the inspection being in accordance with the Classification Society's rules. If the   101
rudder, propeller, bottom or other underwater parts below the deepest load line are found   102
broken, damaged or defective so as to affect the Vessel's class, such defects shall be made   103
good by the Sellers at their expense to the satisfaction of the Classification Society   104
without condition/recommendation\*. In such event the Sellers are to pay also for the cost of   105
the underwater inspection and the Classification Society's attendance.   106

(iii)   If the Vessel is to be drydocked pursuant to Clause 6 b) (ii) and no suitable dry-   107
docking facilities are available at the port of delivery, the Sellers shall take the Vessel   108
to a port where suitable drydocking facilities are available, whether within or outside the   109
delivery range as per Clause 5 b). Once drydocking has taken place the Sellers shall deliver   110
the Vessel at a port within the delivery range as per Clause 5 b) which shall, for the   111
purpose of this Clause, become the new port of delivery. In such event the cancelling date   112
provided for in Clause 5 b)) shall be extended by the additional time required for the   113
drydocking and extra steaming, but limited to a maximum of 14 running days.   114

c)   If the Vessel is drydocked pursuant to Clause 6 a) or 6 b) above   115

(i)   the Classification Society may require survey of the tailshaft system, the extent of   116
the survey being to the satisfaction of the Classification surveyor. If such survey is not   117
required by the Classification Society, the Buyers shall have the right to require the tailshaft   118
to be drawn and surveyed by the Classification Society, the extent of the survey being in   119
accordance with the Classification Society's rules for tailshaft survey and consistent with   120
the current stage of the Vessel's survey cycle. The Buyers shall declare whether they   121
require the tailshaft to be drawn and surveyed not later than by the completion of the   122

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

inspection by the Classification Society. The drawing and refitting of the tailshaft shall be    123
arranged by the Sellers. Should any parts of the tailshaft system be condemned or found    124
defective so as to affect the Vessel's class, those parts shall be renewed or made good at    125
the Sellers' expense to the satisfaction of the Classification Society without    126
condition/recommendation*.    127

(ii) the expenses relating to the survey of the tailshaft system shall be borne    128
by the Buyers unless the Classification Society requires such survey to be carried out, in    129
which case the Sellers shall pay these expenses. The Sellers shall also pay the expenses    130
if the Buyers require the survey and parts of the system are condemned or found defective    131
or broken so as to affect the Vessel's class*.    132

(iii) the expenses in connection with putting the Vessel in and taking her out of    133
drydock, including the drydock dues and the Classification Society's fees shall be paid by    134
the Sellers if the Classification Society issues any condition/recommendation* as a result    135
of the survey or if it requires survey of the tailshaft system. In all other cases the Buyers    136
shall pay the aforesaid expenses, dues and fees.    137

(iv) the Buyers' representative shall have the right to be present in the drydock, but    138
without interfering with the work or decisions of the Classification surveyor.    139

(v) the Buyers shall have the right to have the underwater parts of the Vessel    140
cleaned and painted at their risk and expense without interfering with the Sellers' or the    141
Classification surveyor's work, if any, and without affecting the Vessel's timely delivery. If,    142
however, the Buyers' work in drydock is still in progress when the Sellers have    143
completed the work which the Sellers are required to do, the additional docking time    144
needed to complete the Buyers' work shall be for the Buyers' risk and expense. In the event    145
that the Buyers' work requires such additional time, the Sellers may upon completion of the    146
Sellers' work tender Notice of Readiness for delivery whilst the Vessel is still in drydock    147
and the Buyers shall be obliged to take delivery in accordance with Clause 3, whether    148
the Vessel is in drydock or not and irrespective of Clause 5 b).    149

\*    Notes, if any, in the surveyor's report which are accepted by the Classification Society    150
without condition/recommendation are not to be taken into account.    151

\*\*    *6 a) and 6 b) are alternatives; delete whichever is not applicable. In the absence of deletions,*    152
*alternative 6 a) to apply.*    153

## 7.    Spares/bunkers, etc.    154

The Sellers shall deliver the Vessel to the Buyers with everything belonging to her on board and ~~on~~    155
~~shore. All~~ all spare parts and spare equipment unique to the Vessel that is stored ashore in    156
the region or area where the Vessel is to be delivered, including spare tail-end shaft(s) and/or
spare
propeller(s)/propeller blade(s), if any, belonging to the Vessel at the time of inspection used or    157
unused, whether on board or not shall become the Buyers' property, but spares on order are to    158
be
excluded. Forwarding charges, if any, shall be for the Buyers' account. The Sellers are not required to    159
replace spare parts including spare tail-end shaft(s) and spare propeller(s)/propeller blade(s) which    160
are taken out of spare and used as replacement prior to delivery, but the replaced items shall be the    161
property of the Buyers. The radio installation and navigational equipment shall be included in the sale    162
without extra payment if they are the property of the Sellers. Unused stores and provisions that are    163
on board the Vessel shall be
included in the sale and be taken over by the Buyers without extra payment.    164

The Sellers have the right to take ashore crockery, plates, cutlery, linen and other articles bearing the    165
Sellers' flag or name, provided they replace same with similar unmarked items. Library, forms, etc.,    166
exclusively for use in the Sellers' vessel(s), shall be excluded without compensation. Captain's,    167
Officers' and Crew's personal belongings including the slop chest are to be excluded from the sale,    168
as well as the following additional items (including items on hire): leased VSAT system    169

The Buyers shall take over the remaining bunkers and unused lubricating oils in storage tanks and    170
sealed drums and pay the current net market price (excluding barging expenses) at the port and date    171
of delivery of the Vessel.    172
Payment under this Clause shall be made at the same time and place and in the same currency as    173
the Purchase Price.    174

## 8.    Documentation    175

The place of closing: Houston, Texas    176

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of this original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

In exchange for payment of the Purchase Price the Sellers shall furnish the Buyers with delivery documents, namely: 177
178

a) Legal Bill of Sale in triplicate original and on in a formU.S. Coast Guard Form 1340, recordable in (the country in which the Buyers are to register the Vessel), warranting that the Vessel is free from all encumbrances, mortgages and maritime liens or any other debts or claims whatsoever, duly notarially attested and legalized by the consul of such country or other competent authority. 179 180 181 182

b) Current Certificate of Ownership or an original extract of Transcript of Register issued by the competent authorities of the flag state of the Vessel, dated no more than three (3) business days prior to the sale closing of the Vessel, evidencing the Vessel to be owned by Sellers free from registered liens and encumbrances. 183 184

c) Confirmation of Class issued within 72 hoursfive (5) business days prior to delivery. 185

d) Current Certificate issued by the competent authorities stating that the Vessel is free from registered encumbrances. 186 187

e) Certificate of Deletion of the Vessel from the Vessel's registry or other official evidence of deletion appropriate to the Vessel's registry at the time of delivery, or, in the event that the registry does not as a matter of practice issue such documentation immediately, a written undertaking by the Sellers to effect deletion from the Vessel's registry forthwith and furnish a Certificate or other official evidence of deletion to the Buyers promptly and latest within 4 (four) weeks after the Purchase Price has been paid and the Vessel has been delivered. 188 189 190 191 192 193

f) Any such additional documents as may reasonably be required by the competent authorities for the purpose of registering the Vessel, provided the Buyers notify the Sellers of any such documents as soon as possible after the date of this Agreement. 194 195 196

The Sellers shall at the time of closing furnish the Buyers with the following additional documents: 197
- An invoice for the Purchase Price
- Certified extract of the resolution of the Sellers' Board of Directors and Powers of Attorney:
    i) Approving the sale/contract;
    ii) Appointing person(s) to sign the Bill of Sale;
    iii) Appointing person(s) to sign the Protocol of Delivery; and
    iv) Appointing person(s) to deal with funds.

g) The Sellers shall provide the Buyers with fax or electronic draft copies of all the closing documents listed in this Clause 8, save for the Vessel's classification certificates as required under Clause 8 c) above, at least 48 hours prior to closing.

At the time of dDelivery of the Vessel shall be acknowledged by the Buyers and Sellers shall signing and delivering to each other a Protocol of Delivery and Acceptance form confirming the date and time of delivery of the Vessel from the Sellers to the Buyers. 198
199

At the time of delivery the Sellers shall hand to the Buyers the classification certificate(s) as well as all plans etc., which are on board the Vessel. Other certificates which are on board the Vessel shall also be handed over to the Buyers unless the Sellers are required to retain same, in which case the Buyers to have the right to take copies. Other technical documentation which may be in the Sellers' possession shall be promptly forwarded to the Buyers at their expense, if they so Requestin hard copy (and in electronic format where so available). The Sellers may keep the Vessel's log books but the Buyers to have the right to take copies of same. 200 201 202 203 204 205

206

9. Encumbrances 207

The Sellers warrant that the Vessel, at the time of delivery, is exclusively owned by them and is shall be free from all charters, encumbrances, mortgages and maritime liens or any other debts whatsoever. The Sellers hereby undertake to indemnify the Buyers against all consequences of claims made against the Vessel which have 208 209 210



This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

been incurred prior to the time of delivery. 211

## 10.    Taxes, etc. 212

Any taxes, fees and expenses in connection with the purchase and registration under the Buyers' flag 213
shall be for the Buyers' account, whereas similar charges in connection with the closing of the Sellers' 214
register shall be for the Sellers' account. The Sellers shall bear and pay for all taxes and duties 215
imposed by the government of any nation or any political subdivision thereof in connection
with the execution and/or performance of this Agreement, up to and including delivery of the
Vessel to the Buyers.

## 11.    Condition on delivery 216

The Vessel with everything belonging to her shall be at the Sellers' risk and expense until she is 217
delivered to the Buyers, but subject to the terms and conditions of this Agreement she shall be 218
delivered and taken over as she was at the time of inspection, fair wear and tear excepted. 219
However, the Vessel shall be delivered with her class maintained without condition/recommendation*, 220
free of average damage affecting the Vessel's class, and with her classification certificates and 221
national certificates, as well as all other certificates the Vessel had at the time of inspection, valid and 222
unextended without condition/recommendation* by Class or the relevant authorities at the time of 223
delivery. 224
"Inspection" in this Clause 11, shall mean the Buyers' inspection according to Clause 4 a) or 4 b), if 225
applicable, or the Buyers' inspection prior to the signing of this Agreement. If the Vessel is taken over 226
without inspection, the date of this Agreement shall be the relevant date. 227

Notes, if any, in the surveyor's report which are accepted by the Classification Society 228
without condition/recommendation are not to be taken into account. 229

## 12.    Name/markings 230

UponWithin a reasonable period after delivery, the Buyers undertake to change remove "Trico" 231
from the name of the Vessel and alter funnel markings.

## 13.    Buyers' default 232

Should the deposit not be paid in accordance with Clause 2, the Sellers have the right to cancel this 233
Agreement, and, they if such failure is due to Buyers' proven negligence or 234
wrongful acts or omissions, the Sellers shall be entitled to claim compensation for their losses
and for all expenses
incurred, subject to an aggregate limit equal to five percent (5%) of the Purchase Price. together 235
with interest.
Should the Purchase Price not be paid in accordance with Clause 3, and if such failure is due 236
to Buyers' negligence or wrongful acts or omissions, the Sellers have the right to
cancel the Agreement, in which case the deposit together with interest earned shall be released to the 237
Sellers as full and final liquidated damages., If the deposit does not cover their loss, the 238
Sellers shall be entitled to claim further
compensation for their losses and for all expenses incurred together with interest. 239

## 14.    Sellers' default 240

Should the Sellers fail to give Notice of Readiness in accordance with Clause 5 a) or fail to be ready 241
to validly complete a legal transfer by the date stipulated in line 61 the Buyers shall have 242
the option of cancelling this Agreement provided always that the Sellers shall be granted a 243
maximum of 3 banking days after Notice of Readiness has been given to make arrangements 244
for the documentation set out in Clause 8. If after Notice of Readiness has been given but before 245
the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not 246
made physically ready again in every respect by the date stipulated in line 61 and new Notice of 247
Readiness given, the Buyers shall retain their option to cancel. In the event that the Buyers elect 248
to cancel this Agreement the deposit together with interest earned shall be released to them 249
immediately and the Buyers shall not be entitled to any damages unless such failure is due to 250
Sellers' proven negligence or wrongful acts or omissions.
However, Sshould the Sellers, due to their proven negligence or wrongful acts or omissions, 251
fail to give Notice of Readiness by the date stipulated in line 61 or fail to be ready
to validly complete a legal transfer as aforesaid, they shall make due compensation to the Buyers for 252
their loss and for all expenses. together with interest subject to an aggregate limit equal 253
to five percent (5%) of the Purchase Price, as full and final liquidated damages. If their failure

This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

is due to proven
negligence and whether or not the Buyers cancel this Agreement.                                            254

**15.    Buyers' representatives**                                                                          255

After this Agreement has been signed by both parties and the deposit has been lodged, the Buyers     256
have the right to place two up to five (5) representatives on board the Vessel at their sole risk and   257
expense for familiarization purposes, subject to any limitations imposed by the Vessel's flag
state as to the maximum number of such representatives being allowed on board, upon
arrival at ———— on or about ————                                                                        258
These representatives are on board for the purpose of familiarisation and in the capacity of         259
observers only, and they shall not interfere in any respect with the operation of the Vessel.        260
This familiarization will not include a sea trial. The
Buyers' representatives shall sign the Sellers' letter of indemnity prior to their embarkation.        261

**16.    Arbitration**                                                                                      262

a)*    This Agreement shall be governed by and construed in accordance with English law and          263
and any dispute arising out of this Agreement shall be referred to arbitration in London in          264
accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or                  265
re-enactment thereof for the time being in force, one arbitrator being appointed by each             266
party. On the receipt by one party of the nomination in writing of the other party's arbitrator,     267
that party shall appoint their arbitrator within fourteen days, failing which the decision of the    268
single arbitrator appointed shall apply. If two arbitrators properly appointed shall not agree       269
they shall appoint an umpire whose decision shall be final.                                            270

b)*    This Agreement shall be governed by and construed in accordance with Title 9 of the            271
United States Code, the General Maritime Law of the U.S.A. and the Law of the State of               272
New York, to the extent not provided for the General Maritime Law of the U.S.A. The
venue for handling disputes arising out of this Agreement shall be the United States
Bankruptcy Court for the District of Delaware ("Bankruptcy Court"); provided, however,
that any disputes which the Bankruptcy Court declines to take jurisdiction over shall be
referred to arbitration by three (3) arbitrators and should any dispute arise out of
this Agreement, the matter in dispute shall be referred to three persons at New York, one to       273
be appointed by each of the parties hereto, and the third by the two so chosen; their              274
decision or that of any two of them shall be final, and for purpose of enforcing any award, this   275
Agreement may be made a rule of the Court.                                                           276
The proceedings shall be conducted in accordance with the rules of the Society of Maritime          277
Arbitrators, Inc. New York. The Parties hereto consent to the personal jurisdiction of the         278
Bankruptcy Court and its venue.

c)*    Any dispute arising out of this Agreement shall be referred to arbitration at                 279
———, subject to the procedures applicable there.                                                     280
The laws of ———— shall govern this Agreement.                                                        281

*        16 a), 16 b) and 16 c) are alternatives; delete whichever is not applicable. In the absence of   282
deletions, alternative 16 a) to apply.                                                               283

17.    Notices

Notices hereunder are to be sent by fax or e-mail, with hard copies following by airmail or courier.

All notices to the Sellers are to be sent to:

Trico Marine Assets, Inc.
10001 Woodloch Forest Dr.
Suite # 610
The Woodlands, TX 77380
Attn: Brett Cenkus
E-mail: bcenkus@tricomarine.com
Tel: 713.780.9926
Fax: 281.203.5701



This document is a computer generated SALEFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

All Notices to Buyers are to be sent to:

Jackson Marine, L.L.C.
2000 W. Sam Houston Pkwy. S.
Suite # 1280
Houston, TX 77042
Attn: Stephen W. Dick
E-mail: sdick@tdw.com
Tel: 713.479.5303
Fax: 713.470.0078

With a copy to:

Jackson Marine, L.L.C.
601 Poydras Street
Suite # 1900
New Orleans, LA 70130
Attn: Marinus Quist
E-mail: mquist@tdw.com
Tel: 504.566.4578
Fax: 504.566.4559

## 18. Nominee

The Buyers may at any time, up to five (5) working days prior to the sale closing, notify the Sellers in writing of the Buyers' nominee (which must be an affiliate of the Buyers) to take title to the Vessel at delivery and to be the beneficiary of any and all rights of the Buyers under this Agreement, but the original Buyers shall always remain fully responsible to the Sellers for the due fulfillment of all of the Buyers' obligations to the Sellers under this Agreement.

## 19. Vessel's Crew

In order to avoid the risk of any members of the Vessel's crew making labor claims against the Buyers and/or the Vessel after delivery, the Sellers agree to cause the removal of all such crew members from the Vessel at the time of delivery and to discharge such crew members and pay them for any and all salaries and benefits earned up to delivery, including end-of-service benefits which may be applicable under Brasilian labor law.

For and on behalf of
Trico Marine Assets, Inc.

Name:
Title:

For and on behalf of
Jackson Marine, L.L.C.

Name: Jeffrey M. Platt
Title: Authorized Signatory

This document is a computer-generated SALESFORM 1993 form printed by authority of the Norwegian Shipbrokers' Association. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original approved document shall apply. BIMCO and the Norwegian Shipbrokers' Association assume no responsibility for any loss, damage or expense as a result of discrepancies between the original approved document and this computer generated document.

# Tidewater

November 1, 2010

<u>Via E-mail</u>

Trico Marine Assets, Inc.
Suite 610
10001 Woodloch Forest Drive
The Woodlands, TX 77380

Attn: Mr. Rick Bachmann

Re: M/V TRICO MOON and M/V TRICO MYSTIC

Gentlemen:

Reference is made to that certain Heads of Agreement dated 29 October 2010 (the "HOA"), entered into by and between Tidewater Inc. and Jackson Marine, L.L.C. (as "Buyers") and Trico Marine Assets, Inc. (as "Sellers") with respect to the captioned vessels (the "Vessels"). Further reference is made to Annexures "A" and "B" to the HOA, which consist of Memoranda of Agreement (the "MOAs") between the Buyers and the Sellers relating to each of the Vessels, respectively.

The purpose of this letter is to give the Sellers the written notice specified in Clause 4(b) of the MOAs; namely, that the Buyers have inspected the Vessels and accept their condition, subject to the remaining terms and conditions of the MOAs and the HOA.

Please note your records accordingly. We look forward to a smooth pleasant transaction.

Very truly yours,
Tidewater Inc. on behalf of itself and
Jackson Marine, L.L.C.

Bruce D. Lundstrom
Executive Vice President and General Counsel

cc: Brett Genkus (Trico)
    Jeff Platt
    Steve Dick
    Quinn Fanning
    Marty Quist
    Tonya Ramsey (Vinson & Elkins)
    Amy Scafidel (Jones Walker)



**TIDEWATER INC.**
Pan-American Life Center
601 Poydras Street, Suite 1900
New Orleans, Louisiana 70130-6040
Telephone: (504) 568-1010