**EXHIBIT A**
[Agreement]

# HEADS OF AGREEMENT

This Heads of Agreement is executed this 30th day of November 2010, by and between:

(i)     PACC Offshore Services Holdings Pte Ltd (the "Buyer")

and

(ii)    Trico Marine Assets, Inc. (the "Seller"), with respect to the sale of the U.S.-flag vessels, M/V TRICO MOON and M/V TRICO MYSTIC (the "Vessels").

The Seller and the Buyer are collectively referred to as the "Parties".

1. Effective Date

The effective date of this Heads of Agreement is 30th day of November 2010 (the "Effective Date"), and this Heads of Agreement and the related Memorandum of Agreement (defined below) for each of the Vessels shall be executed to be effective as of the Effective Date. The charter assignments referenced in Clause 2(B) below shall be effective as of the date of the closing of the sale of the M/V TRICO MYSTIC.

2. Overview of Transaction

This Heads of Agreement contemplates the en bloc sale of two (2) Vessels, as follows:

A) Buyer's designated nominee will acquire from Seller the Vessels pursuant to the terms and conditions of the Memoranda of Agreement attached hereto as Appendices "A" and "B" for a purchase price of fifteen million six hundred and forty thousand dollars and fifty cents ($15,640,000.50), each.

B) The Seller, with the assistance of the Buyer (and/or its nominees), shall use its best efforts to assign (or cause its applicable affiliates to assign) to the Buyer (and/or its nominated affiliates) contracts 2050 0052505.09-2 and 2050 0052506.09-2 (the "Contracts") with Petróleo Brasileiro S/A ("Petrobras") relating to the M/V TRICO MYSTIC. Such assignments shall be subject to the consent of Petrobras and shall be governed by mutually-agreed assignment agreements between the assignors and assignees, which assignment agreements shall contain standard representations and warranties regarding the assignor not

being in breach of the contracts being assigned and undertaking to indemnify the assignee in case any such pre-assignment breach comes to light or is raised by Petrobras; although the Seller, with assistance of the Buyer (and/or its nominees) hereby agrees to use its best efforts to cause Petrobras to provide a reconciliation of trailing expenses, such reconciliation to include on-hire fuel inventory, possible late delivery of the M/V TRICO MYSTIC to Petrobras (and any pending liquidated damages relating thereto), accrued downtime (if any), penalties for excessive downtime, and other relevant commercial/operational issues relating to the assigned contracts, so that the Parties may be able to settle all outstanding amounts at the sale closing of the M/V TRICO MYSTIC.

C) Pending assignment of the Contracts, the Seller and Buyer will enter into a back-to-back agreement (the "Back-to-Back Agreement") providing for Buyer to (a) assume all obligations owed to Petrobras by Seller and Trico Servicos Maritimos, Ltd. ("Trico Servicos"), as applicable, under the Contracts, and (b) indemnify Buyer and Trico Servicos for any damages and other obligations resulting from the implementation and of and operations under the Back-to-Back Agreement.

3. Timing of the Transaction

The Parties agree that the sale of the Vessels shall close on a mutually-agreed date between 1 and 15 December 2010. In case the Seller is not ready to close the sale of one or more of the Vessels within such timeframe, such sale closing shall be delayed to a date determined by the Seller on or before 30 December 2010 (the "Cancelling Date").

4. Required Approvals

A) Prior to the closing of the M/V TRICO MYSTIC and the M/V TRICO MOON, the Seller shall secure from the U.S. Bankruptcy Court for the District of Delaware ("Bankruptcy Court"), in connection with case no. 10-12653, a court order approving the sale of the Vessels to the Buyer on the terms and conditions set forth in Appendices "A" and "B" and as outlined in this Heads of Agreement.

5. Required Notices

The Seller has made all required notices to claimants and other interested parties in the bankruptcy matter referred to in Clause 4(A) above of the contemplated sale of

the Vessels. In addition, the Seller has provided the following additional advance notices of such contemplated sale:

i)      by publication notice in the Lloyds List, Fairplay, in a general circulation daily newspaper in Delaware, and in a general circulation daily newspaper in the ports in which the Vessels are located or from which they normally operate; and

ii)      by mail, fax, or e-mail to the credit manager of all known or possible lien holders in either or both of the Vessels.

6.   Securitization of Warranty

In order to give the Buyer a reasonable level of comfort that the title to the subject Vessels will, indeed, be free and clear from liens and encumbrances as set forth in Clause 9 of Appendices "A" and "B", the five percent (5%) deposit to be paid by the Buyer pursuant to Clause 2 of Appendixes "A" and "B" to an agreed upon escrow agent (the "Escrow Agent"), to be held by them in escrow for the Seller and the Buyer, shall continue to be held by the Escrow Agent after each Vessel's sale closing as a Purchase Price hold-back (the "Hold-back") for the period specified in each of the Appendixes "A" and "B" (the Hold-back Period"). The Hold-back shall serve to securitize the Seller's warranty of no liens and encumbrances. If no pre-closing liens/encumbrances manifest themselves during the Hold-back Period, the Hold-back shall be released to the Seller immediately following the Hold-Back Period. If any pre-closing liens/encumbrances do manifest themselves during the Hold-back Period, the Hold-back shall be used to discharge such liens/encumbrances and shall be paid/released in accordance with the terms and conditions of Appendices "A" and "B" (including the Escrow Agreement referenced therein) or in accordance with the joint written instructions of the Seller and the Buyer for each of the Vessels.

7.   Relationship of Heads of Agreement to Appendices "A" and "B"

This Heads of Agreement and Appendices "A" and "B" are to be read together as the complete agreement between the Parties relating to the sale of the Vessels (save for any additional agreements referred to or contemplated by this Heads of Agreement and/or Appendices "A" and "B"). In case of any inconsistency between Appendices "A" and "B" and this Heads of Agreement, this Heads of Agreement shall prevail.

8. Governing Law and Dispute Resolution

This Heads of Agreement shall be governed by and construed in accordance with Title 9 of the United States Code, the General Maritime Law of the U.S.A. and the Law of the State of Texas to the extent not provided for by the General Maritime Law of the U.S.A. The venue for handling any disputes arising out of this Heads of Agreement shall be the Bankruptcy Court; provided, however, that any disputes which the Bankruptcy Court declines to take jurisdiction over shall be referred to arbitration by three (3) arbitrators at Houston, Texas, one to be appointed by each of the Parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this Agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of Houston Maritime Arbitration Association. The Parties hereto consent to the personal jurisdiction of the Bankruptcy Court and its venue.

9. Notices

Notices hereunder shall be given in writing to the respective Parties as specified in Clause 17 of each of the Appendices "A" and "B".

10 No Brokers

The Seller and the Buyer each warrant and represent to the other that they are not obligated to pay a marketing fee, brokerage commission, or similar fee to any other person in connection with the sale of the Vessels; and the Seller and Buyer each hereby agree to indemnify, defend and hold the other harmless with respect to any breach by the warranting/representing party of the warranty and representation given by them in this Clause 10.

In Witness Whereof the Parties have on the date set forth hereinabove executed multiple originals of this Heads of Agreement.

PACC Offshore Services Holdings Pte Ltd        Trico Marine Assets, Inc.

p
By: *Peter A. McLaughlan*
    *attorney-in-fact*

By:_____

# MEMORANDUM OF AGREEMENT

Dated: November 23, 2010.



Norwegian Shipbrokers' Association's Memorandum of Agreement for sale and purchase of ships. Adopted by The Baltic and International Maritime Council (BIMCO) in 1956.
Code-name
**SALEFORM 1993**
Revised 1966, 1983 and 1986/87.

TRICO MARINE ASSETS, INC., of 10001 Woodloch Forest Dr., Suite 610, The Woodlands, TX 77380, hereinafter called the Sellers, have agreed to sell, and

PACC OFFSHORE SERVICES HOLDING PTE LTD of No. 1 Kim Seng Promenade, #07-02 Great World City, Singapore 237994 or nominee, hereinafter called the Buyers, have agreed to buy     2

Name: TRICO MYSTIC     3

Classification Society/Class: ABS + A1 OFFSHORE SUPPORT VESSEL + AMS + DPS-2 "CIRCLE E" SOLAS, USCG, SUBCHAPTER L, FULL OCEAN     4

| | | |
|---|---|---|
| Built: 2008 | By: Bender Shipbuilding & Repair, Co., Inc. | 5 |
| Flag: USA | Place of Registration: U.S.C.G. National Vessel Documentation Center | 6 |
| Call Sign: | Grt/Nrt: | 7 |
| Official Number: | IMO No.: | 8 |

hereinafter called the Vessel, on the following terms and conditions:     9

**Definitions**     10

"Banking days" are days on which banks are open both in the USA and in Singapore.     12

"In writing" or "written" means a letter handed over from the Sellers to the Buyers or vice versa,     13
a registered letter, telex, telefax or other modern form of written communication.     14

"Classification Society" or "Class" means the Society referred to in line 4.     15

1     Purchase Price USD ~~13,875,000.00~~ 15,640,000.50 (United States Dollars ~~Thirteen Million Eight Hundred~~ Fifteen Million Six Hundred     16
~~Seventy Five Thousand~~ Forty ) cash Dollars and Fifty Cents

2 .     **Deposit**

As security for the correct fulfillment of this Agreement the Buyers shall pay a deposit of 5 %     18
(five per cent) of the Purchase Price within (3) three banking days from the date of all     19
parties signature of the Escrow Agreement referred to in line 24 below. This deposit shall be placed with
~~Vinson & Elkins L.L.P., 2001 Ross Ave., Suite 3700, Dallas TX, 75204~~ ("Escrow Agent")     20
[ Agreed upon Escrow Agent ]

and held by them in escrow for the Sellers and the Buyers, to be released in accordance     21
with joint written instructions of the Sellers and the Buyers. Interest, if any, to be credited to the     22
Buyers. No fee is charged for holding the said deposit by the Escrow Agent pursuant to the terms of the
Escrow Agreement.     24

3 .     **Payment**     25

The said Purchase Price shall be paid in full free of bank charges to Sellers     26

on delivery of the Vessel, but not later than 3 banking days after the Vessel is in every respect     27
physically ready for delivery in accordance with the terms and conditions of this Agreement and     28
Notice of Readiness has been given in accordance with Clause 5. Following delivery of the Vessel, the said
29 deposit shall continue to be held by the Escrow Agent as security against the Vessel prior to delivery and
which become manifest within 120 days (the "Hold-back Period") of such delivery. In case any such

liens/encumbrances manifest themselves during the Hold-back Period, the Buyers may give notice to the
Sellers and the Escrow Agent of a claim in the amount of such lien/encumbrances. In such event the Escrow
Agent may either: i) use some or all of the said deposit to discharge such liens/encumbrances or ii) if the
Sellers object in writing, attempt to get a consensus in the form of joint written instructions from the Buyers and
Sellers on the issue. Failing which, the Escrow Agent may place the amount of the claim (but not exceeding
the amount of the said deposit) into the registry of the court specified in the Escrow Agreement for a decision.
Any undisputed portion of the said deposit remaining in the Escrow Agent hands following the end of the Hold-
back Period shall promptly be paid by the Escrow Agent to the Sellers.  29

30

4.  Inspections  31

a)  The Buyers have inspected and accepted the Vessel's classification records. The Buyers  32
have also inspected the Vessel at Macae, Rio de Janeiro, Brazil on November 17, 2010  33
and have accepted the Vessel following this inspection and the sale is outright and definite,  34
subject only to the terms and conditions of this Agreement.

51

5.  Notices, time and place of delivery  52

a)  The Sellers shall keep the Buyers well informed of the Vessel's status and location  53
and shall provide the Buyers with 30, 10 and 5 days notice of the estimated time of arrival at the  54
intended place of drydocking/underwater inspection/delivery. When the Vessel is at the place  55
of delivery and in every respect physically ready for delivery in accordance with this  56
Agreement, the Sellers shall give the Buyers a written Notice of Readiness for delivery.

b)  The Vessel shall be delivered and taken over safely afloat at a safe and accessible berth or  57
anchorage at/in a mutually-agreed location in Brazil.  58
59

Expected time of delivery: To be ordered by the Bankruptcy Court at the Sale Hearing on November 29,  60
2010.

Date of cancelling (see Clauses 5 c), 6 b) (iii) and 14); December 30, 2010.  ~~If the only outstanding~~
~~approval is the Petrobras approval/consent, referenced in Clause 4(B) of the Heads of Agreement to~~
~~which this Agreement in an Appendix, such Cancelling Date shall automatically be extended for an~~  61
~~additional 30 days.~~

c)  If the Sellers anticipate that, notwithstanding the exercise of due diligence by them, the  62
Vessel will not be ready for delivery by the cancelling date they may notify the Buyers in  63
writing stating the date when they anticipate that the Vessel will be ready for delivery and  64
propose a new cancelling date. Upon receipt of such notification the Buyers shall have the  65
option of either cancelling this Agreement in accordance with Clause 14 within 7 running  66
days of receipt of the notice or of accepting the new date as the new cancelling date. If the  67
Buyers have not declared their option within 7 running days of receipt of the Sellers'  68
notification or if the Buyers accept the new date, the date proposed in the Sellers' notification  69
shall be deemed to be the new cancelling date and shall be substituted for the cancelling  70
date stipulated in line 61.  71

If this Agreement is maintained with the new cancelling date, all other terms and conditions  72
hereof including those contained in Clauses 5 a) and 5 c) shall remain unaltered and in full  73
force and effect. Cancellation or failure to cancel shall be entirely without prejudice to any  74
claim for damages the Buyers may have under Clause 14 for the Vessel not being ready by  75
the original cancelling date.  76

d)  Should the Vessel become an actual, constructive or compromised total loss before delivery  77
the deposit together with interest earned shall be released immediately to the Buyers  78
whereafter this Agreement shall be null and void.  79

80

6.  Drydocking/Divers Inspection

(b)(i)  The Vessel is to be delivered without drydocking. However, the Buyers shall  88

have the right at their expense to arrange for an underwater inspection by a diver approved by the Classification Society prior to the delivery of the Vessel. The Sellers shall at their cost make the Vessel available for such inspection. The extent of the inspection and the conditions under which it is performed shall be to the satisfaction of the Classification Society. If the conditions at the port of delivery are unsuitable for such inspection, the Sellers shall make the Vessel available at a suitable alternative place near to the delivery port. 

    (ii)    If the rudder, propeller, bottom or other underwater parts below the deepest load line are found broken, damaged or defective so as to affect the Vessel's class, then unless repairs can be carried out afloat to the satisfaction of the Classification Society, the Sellers shall arrange for the Vessel to be drydocked at their expense for inspection by the Classification Society of the Vessel's underwater parts below the deepest load line, the extent of the inspection being in accordance with the Classification Society's rules. If the rudder, propeller, bottom or other underwater parts below the deepest load line are found broken, damaged or defective so as to affect the Vessel's class, such defects shall be made good by the Sellers at their expense to the satisfaction of the Classification Society without condition/recommendation*. In such event the Sellers are to pay also for the cost of the underwater inspection and the Classification Society's attendance.

    (iii)    If the Vessel is to be drydocked pursuant to Clause 6 b) (ii) and no suitable drydocking facilities are available at the port of delivery, the Sellers shall take the Vessel to a port where suitable drydocking facilities are available, whether within or outside the delivery range as per Clause 5 b). Once drydocking has taken place the Sellers shall deliver the Vessel at a port within the delivery range as per Clause 5 b) which shall, for the purpose of this Clause, become the new port of delivery. In such event the cancelling date provided for in Clause 5 b) shall be extended by the additional time required for the drydocking and extra steaming, but limited to a maximum of 14 running days.

c)    If the Vessel is drydocked pursuant to Clause 6 b) above

    (i)    the Classification Society may require survey of the tailshaft system, the extent of the survey being to the satisfaction of the Classification surveyor. If such survey is not required by the Classification Society, the Buyers shall have the right to require the tailshaft to be drawn and surveyed by the Classification Society, the extent of the survey being in accordance with the Classification Society's rules for tailshaft survey and consistent with the current stage of the Vessel's survey cycle. The Buyers shall declare whether they require the tailshaft to be drawn and surveyed not later than by the completion of the inspection by the Classification Society. The drawing and refitting of the tailshaft shall be arranged by the Sellers. Should any parts of the tailshaft system be condemned or found defective so as to affect the Vessel's class, those parts shall be renewed or made good at the Sellers' expense to the satisfaction of the Classification Society without condition/recommendation*.

    (ii)    the expenses relating to the survey of the tailshaft system shall be borne by the Buyers unless the Classification Society requires such survey to be carried out, in which case the Sellers shall pay these expenses. The Sellers shall also pay the expenses if the Buyers require the survey and parts of the system are condemned or found defective or broken so as to affect the Vessel's class*.

    (iii)    the expenses in connection with putting the Vessel in and taking her out of drydock, including the drydock dues and the Classification Society's fees shall be paid by the Sellers if the Classification Society issues any condition/recommendation* as a result of the survey or if it requires survey of the tailshaft system. In all other cases the Buyers shall pay the aforesaid expenses, dues and fees.

    (iv)    the Buyers' representative shall have the right to be present in the drydock, but without interfering with the work or decisions of the Classification surveyor.

    (v)    the Buyers shall have the right to have the underwater parts of the Vessel cleaned and painted at their risk and expense without interfering with the Sellers' or the Classification surveyor's work, if any, and without affecting the Vessel's timely delivery. If,

89
90
91
92
93
94
95

96
97
98
99
100
101
102
103
104
105
106

107
108
109
110
111
112
113
114

115

116
117
118
119
120
121
122
123
124
125
126
127

128
129
130
131
132

133
134
135
136
137

138
139

140
141
142

however, the Buyers' work in drydock is still in progress when the Sellers have
completed the work which the Sellers are required to do, the additional docking time
needed to complete the Buyers' work shall be for the Buyers' risk and expense. In the event
that the Buyers' work requires such additional time, the Sellers may upon completion of the
Sellers' work tender Notice of Readiness for delivery whilst the Vessel is still in drydock
and the Buyers shall be obliged to take delivery in accordance with Clause 3, whether
the Vessel is in drydock or not and irrespective of Clause 5 b).

Notes, if any, in the surveyor's report which are accepted by the Classification Society without
condition/recommendation are not to be taken into account.

7       Spares/bunkers, etc.

The Sellers shall deliver the Vessel to the Buyers with everything belonging to her on board and on
shore. All spare parts and spare equipment including spare tail-end shaft(s) and/or spare
propeller(s)/propeller blade(s), if any, belonging to the Vessel at the time of inspection used or
unused, whether on board or not shall become the Buyers' property, but spares on order are to be
excluded. Forwarding charges, if any, shall be for the Buyers' account. The Sellers are not required to
replace spare parts including spare tail-end shaft(s) and spare propeller(s)/propeller blade(s) which
are taken out of spare and used as replacement prior to delivery, but the replaced items shall be the
property of the Buyers. The radio installation and navigational equipment shall be included in the sale
without extra payment if they are the property of the Sellers. Unused stores and provisions shall be
included in the sale and be taken over by the Buyers without extra payment.

The Sellers have the right to take ashore crockery, plates, cutlery, linen and other articles bearing the
Sellers' flag or name, provided they replace same with similar unmarked items. Library, forms, etc.,
exclusively for use in the Sellers' vessel(s), shall be excluded without compensation. Captain's,
Officers' and Crew's personal belongings including the slop chest are to be excluded from the sale,
as well as the following additional items (including items on hire):

The Buyers shall take over the remaining bunkers and unused lubricating oils in storage tanks and
sealed drums and pay the current net market price (excluding barging expenses) at the port and date
of delivery of the Vessel.
Payment under this Clause shall be made at the same time and place and in the same currency as
the Purchase Price.

8      Documentation

The place of closing: Houston, Texas

In exchange for payment of the Purchase Price the Sellers shall furnish the Buyers with delivery
documents, namely:

a)      Legal Bill of Sale in a form recordable in Singapore
warranting that the Vessel is free from all encumbrances, mortgages
and maritime liens or any other debts or claims whatsoever, duly notarially attested and
legalized by the consul of such country or other competent authority.

b)      Current Certificate of Ownership issued by the competent authorities of the flag state of
the Vessel.

c)      Confirmation of Class issued within 72 hours prior to delivery

d)      Current Certificate issued by the competent authorities stating that the Vessel is free
from registered encumbrances.

e)      Certificate of Deletion of the Vessel from the Vessel's registry or other official evidence

~~of deletion appropriate to the Vessel's registry at the time of delivery, or, in the event that the~~
~~registry does not as a matter of practice issue such documentation immediately, a written~~
~~undertaking by the Sellers to effect deletion from the Vessel's registry forthwith and furnish a~~
~~Certificate or other official evidence of deletion to the Buyers promptly and latest within 4 (four)~~
~~weeks after the Purchase Price has been paid and the Vessel has been delivered.~~ 185

f)   Any such additional documents as may reasonably be required by the competent authorities   194
for the purpose of registering the Vessel, provided the Buyers notify the Sellers of any such   195
documents as soon as possible after the date of this Agreement.   196

At the time of delivery the Buyers and Sellers shall sign and deliver to each other a Protocol of   197
Delivery and Acceptance confirming the date and time of delivery of the Vessel from the Sellers to the   198
Buyers.   199

At the time of delivery the Sellers shall hand to the Buyers the classification certificate(s) as well as all   200
plans etc., which are on board the Vessel. Other certificates which are on board the Vessel shall also   201
be handed over to the Buyers unless the Sellers are required to retain same, in which case the   202
Buyers to have the right to take copies. Other technical documentation which may   203
be in the Sellers' possession shall be promptly forwarded to the Buyers at their expense, if they so   204
request. The Sellers may keep the Vessel's log books but the Buyers to have the right to take   205
copies of same.   206

**9.   Encumbrances**   207

The Sellers warrant that the Vessel, at the time of delivery, is free from all charters, encumbrances,   208
mortgages and maritime liens or any other debts whatsoever. The Sellers hereby undertake   209
to indemnify the Buyers against all consequences of claims made against the Vessel which have   210
been incurred prior to the time of delivery.   211

**10.   Taxes.**   212

Any taxes, fees and expenses in connection with the purchase and registration under the Buyers' flag   213
shall be for the Buyers' account, whereas similar charges in connection with the closing of the Sellers'   214
register shall be for the Sellers' account.  The Sellers shall bear and pay for all taxes and duties imposed   215
by the government of any nation or any political subdivision thereof in connection with the execution
and/or performance of this Agreement, up to and including delivery of the vessel to the Buyers.

**11.   Condition on delivery**   216

The Vessel with everything belonging to her shall be at the Sellers' risk and expense until she is   217
delivered to the Buyers, but subject to the terms and conditions of this Agreement she shall be   218
delivered and taken over as she was at the time of inspection, fair wear and tear excepted.   -219
However, the Vessel shall be delivered with her class maintained without condition/recommendation*,   220
free of average damage affecting the Vessel's class, and with her classification certificates and   221
national certificates, as well as all other certificates the Vessel had at the time of inspection, valid and   222
unextended without condition/recommendation' by Class or the relevant authorities at the time of   223
delivery.   224

"Inspection" in this Clause 11, shall mean the Buyers' inspection according to Clause 4 a), if   225
applicable, or the Buyers' inspection prior to the signing of this Agreement. If the Vessel is taken over   226
without inspection, the date of this Agreement shall be the relevant date.   227

Notes, if any, in the surveyor's report which are accepted by the Classification Society   228
without condition/recommendation are not to be taken into account.   229

**12.   Name/markings**   230

Within a reasonable period after delivery, the Buyers undertake to remove Trico from the name of the
Vessel and alter funnel markings.   231

## 13. Buyers' default.

Should the deposit not be paid in accordance with Clause 2, the Sellers have the right to cancel this Agreement, and they shall be entitled to claim compensation for their losses and for all expenses incurred together with interest.

Should the Purchase Price not be paid in accordance with Clause 3, the Sellers have the right to cancel the Agreement, in which case the deposit together with interest earned shall be released to the Sellers. If the deposit does not cover their loss, the Sellers shall be entitled to claim further compensation for their losses and/or for all expenses incurred together with interest.

## 14. Sellers' default

Should the Sellers fail to give Notice of Readiness in accordance with Clause 5 a) or fail to be ready to validly complete a legal transfer by the date stipulated in line 61 the Buyers shall have the option of cancelling this Agreement provided always that the Sellers shall be granted a maximum of 3 banking days after Notice of Readiness has been given to make arrangements for the documentation set out in Clause 8. If after Notice of Readiness has been given but before the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not made physically ready again in every respect by the date stipulated in line 61 and new Notice of Readiness given, the Buyers shall retain their option to cancel. In the event that the Buyers elect to cancel this Agreement the deposit together with interest earned shall be released to them immediately.

Should the Sellers fail to give Notice of Readiness by the date stipulated in line 61 or fail to be ready to validly complete a legal transfer as aforesaid they shall make due compensation to the Buyers for their loss and for all expenses together with interest if their failure is due to proven negligence and whether or not the Buyers cancel this Agreement.

## 15. Buyers' representatives

After this Agreement has been signed by both parties and the deposit has been lodged, the Buyers have the right to place up to 5 representatives on board the Vessel at their sole risk and expense.

These representatives are on board for the purpose of familiarisation and in the capacity of observers only, and they shall not interfere in any respect with the operation of the Vessel. The Buyers' representatives shall sign the Sellers' letter of indemnity prior to their embarkation.

## 16. Arbitration

b)  This Agreement shall be governed by and construed in accordance with Title 9 of the United States Code and the Law of the Texas and should any dispute arise out of this Agreement, the matter in dispute shall be referred to three persons at Texas,      one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this Agreement may be made a rule of the Court.
The proceedings shall be conducted in accordance with the rules of Houston Maritime Arbitration Association.

## 17. Notices

Notices hereunder are to be sent by fax or e-mail, with hard copies following by airmail or courier.

All Notices to the Sellers are to be sent to:

Trico Marine Assets, Inc.
10001 Woodloch Forest Dr.
Suite #610
The Woodlands, TX 77380
Attn: Brett Cenkus

E-mail: bcenkus@tricomarine.com
Tel: 713.780-9926
Fax: 281.203.5701

All Notices to the Buyer are to be sent to:

Peter A. McLauchlan
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, TX 77002
713.276.5730 direct
713.276.6730 fax
pmclauhlan@gardere.com

18.    **Nominee**

The Buyers may at any time, up top five (5) working days prior to the sale closing, notify the Sellers in writing of the Buyers' nominee (which must be an affiliate of the Buyers) to take title to the Vessel at delivery and to be the beneficiary of any and all rights of the Buyers under this Agreement, but the original Buyers shall always remain fully responsible to the Sellers for the due fulfillment of all of the Buyers' obligations to the Sellers under this Agreement.

19.    **Vessel's Crew**

In order to avoid the risk of any members of the Vessel's crew making labor claims against the Buyers and/or the Vessel after delivery, the Sellers agree if requested by the Buyers to cause the removal of all such crew members from the Vessel at the time of delivery and top discharge such crew members and pay them for any and all salaries and benefits earned up to delivery, including end-of-service benefits which may be applicable under Brazilian and U.S. labor law.

20.  **Approval of US Maritime Administration**

The closing of the MV TRICO MOON is subject to the obtaining of any necessary approvals from the US Maritime Administration in form and substance satisfactory to the parties.


For and behalf of
Trico Marine Assets, Inc.


Name:
Title:


For and on behalf of Pacc Offshore Services Holding Pte Ltd

Name:
Title: *Attorney-in-Fact*

# MEMORANDUM OF AGREEMENT



Norwegian Shipbrokers' Association's Memorandum of Agreement for the sale and purchase of ships. Adopted by The Baltic and International Maritime Council (BIMCO) in 1956. Code-name: SALEFORM 1993 Revised 1966, 1983 and 1986/87.

Dated: November 23, 2010

TRICO MARINE ASSETS, INC., of 10001 Woodloch Forest Dr., Suite 610, The Woodlands, TX 77380 hereinafter called the Sellers, have agreed to sell, and

PACC OFFSHORE SERVICES HOLDINGS PTE LTD of No. 1 Kim Seng Promenade, #07-02 Great World City, Singapore 237994 or nominee hereinafter called the Buyers, have agreed to buy:    2.

Name: TRICO MOON    3.

Classification Society/Class: ABS + A1 OFFSHORE SUPPORT VESSEL + AMS + DPS-2 "CIRCLE E" SOLAS, USCG, SUBCHAPTER:L, FULL OCEAN    4.

Built: 2008    By: Bender Shipbuilding & Repair, Co., Inc.    5.

Flag: USA    Place of Registration: U.S.C.G. National Vessel Documentation Center    6.

Call Sign:    Grt/Nrt:    

Official Number:    IMO No.:    7.

    8.

hereinafter called the Vessel, on the following terms and conditions: .    9.

## Definitions
    10.

"Banking days" are days on which banks are open both in the USA and in Singapore.    12.

"In writing" or "written" means a letter handed over from the Sellers to the Buyers or vice versa, a registered letter, telex, telefax or other modern form of written communication.    13.
    14.

"Classification Society" or "Class" means the Society referred to in line 4.    15.

1    Purchase Price USD ~~3,676,845.00~~ (15,640,000.50) (United States Dollars ~~Three~~ Fifteen Million, ~~Eight Hundred~~ Six Hundred ~~Seventy-Five Thousand,~~) cash  Forty Dollars and Fifty Cents    16.

2 .    Deposit

As security for the correct fulfillment of this Agreement the Buyers shall pay a deposit of 5 %    18.
(five per cent) of the Purchase Price within (3) three banking days from the date of all    19.
parties signature of the Escrow Agreement referred to in line 24 below. This deposit shall be placed with ~~Vinson & Elkins L.L.P., 2001 Ross Ave., Suite 3700, Dallas TX, 75204~~ ("Escrow Agent")  Agreed Upon Escrow Agent    20.

and held by them in escrow for the Sellers and the Buyers, to be released in accordance .    21.
with joint written instructions of the Sellers and the Buyers. Interest, if any, to be credited to the    22.
Buyers. No fee is charged for holding the said deposit by the Escrow Agent pursuant to the terms of the Escrow Agreement.
    24.

3 .    Payment
    25.

The said Purchase Price shall be paid in full free of bank charges to Sellers
    26.

on delivery of the Vessel, but not later than 3 banking days after the Vessel is in every respect    27.
physically ready for delivery in accordance with the terms and conditions of this Agreement and    28.
Notice of Readiness has been given in accordance with Clause 5.  Following delivery of the Vessel, the said    28.
deposit shall continue to be held by the Escrow Agent as security against the Vessel prior to delivery and    29.
which become manifest within 120 days (the "Hold-back Period") of such delivery.  In case any such liens/encumbrances manifest themselves during the Hold-back Period, the Buyers may give notice to the Sellers and the Escrow Agent of a claim in the amount of such lien/encumbrances. In such event the Escrow

Agent may either i) use some or all of the said deposit to discharge such liens/encumbrances or ii) if the Sellers object in writing, attempt to get a consensus in the form of joint written instructions from the Buyers and Sellers on the issue. Failing which, the Escrow Agent may place the amount of the claim (but not exceeding the amount of the said deposit) into the registry of the court specified in the Escrow Agreement for a decision. Any undisputed portion of the said deposit remaining in the Escrow Agent hands following the end of the Hold-back Period shall promptly be paid by the Escrow Agent to the Sellers.                                                                29

4.  Inspections                                                                                                       30

b)    The Buyers shall have the right to inspect the Vessel's classification records and declare          35
       whether same are accepted or not within ten banking days of the date of this Agreement.             36

       The Sellers shall provide for inspection of the Vessel at a mutually agreed place in Mexico.        37

       The Buyers shall undertake the inspection without undue delay to the Vessel. Should the             38
       Buyers cause undue delay they shall compensate the Sellers for the losses thereby incurred.         39
       The Buyers shall inspect the Vessel without opening up and without cost to the Sellers.             40
       During the inspection, the Vessel's deck and engine log books shall be made available for           41
       examination by the Buyers. If the Vessel is accepted after such inspection, the sale shall          42
       become outright and definite, subject only to the terms and conditions of this Agreement,           43
       provided the Sellers receive written notice of acceptance from the Buyers within 72 hours           44
       after completion of such inspection.                                                                45
       Should notice of acceptance of the Vessel's classification records and of the Vessel not be         46
       received by the Sellers as aforesaid, the deposit together with interest earned shall be            47

released immediately to the Buyers, whereafter this Agreement shall be null and void.                       48


5.     Notices, time and place of delivery                                                                 51

a)     The Sellers shall keep the Buyers well informed of the Vessel's status and location                 52
       and shall provide the Buyers with 30, 10 and 5 days notice of the estimated time of arrival at the  53
       intended place of drydocking underwater inspection/delivery. When the Vessel is at the place        54
       of delivery and in every respect physically ready for delivery in accordance with this             55
       Agreement, the Sellers shall give the Buyers a written Notice of Readiness for delivery.            56

b)     The Vessel shall be delivered and taken over safely afloat at a safe and accessible berth or        57
       anchorage at/in a mutually-agreed location in Mexico.                                               58

       Expected time of delivery: To be ordered by the Bankruptcy Court at the Sale Hearing on November 29,
       2010.                                                                                               60

       Date of cancelling (see Clauses 5 c), 6 b) (iii) and 14): December 30, 2010.                        61

c)     If the Sellers anticipate that, notwithstanding the exercise of due diligence by them, the          62
       Vessel will not be ready for delivery by the cancelling date they may notify the Buyers in          63
       writing stating the date when they anticipate that the Vessel will be ready for delivery and        64
       propose a new cancelling date. Upon receipt of such notification the Buyers shall have the          65
       option of either cancelling this Agreement in accordance with Clause 14 within 7 running            66
       days of receipt of the notice or of accepting the new date as the new cancelling date. If the       67
       Buyers have not declared their option within 7 running days of receipt of the Sellers'              68
       notification or if the Buyers accept the new date, the date proposed in the Sellers' notification   69
       shall be deemed to be the new cancelling date and shall be substituted for the cancelling           70
       date stipulated in line 61.                                                                         71

       If this Agreement is maintained with the new cancelling date, all other terms and conditions        72
       hereof including those contained in Clauses 5 a) and 5 c) shall remain unaltered and in full        73
       force and effect. Cancellation or failure to cancel shall be entirely without prejudice to any      74
       claim for damages the Buyers may have under Clause 14 for the Vessel not being ready by             75
       the original cancelling date.                                                                       76

d)     Should the Vessel become an actual, constructive or compromised total loss before delivery          77
       the deposit together with interest earned shall be released immediately to the Buyers               78
       whereafter this Agreement shall be null and void.                                                   79

6.     Drydocking/Divers Inspection                                                                        80

(b)(i) The Vessel is to be delivered without drydocking. However, the Buyers shall 88
have the right at their expense to arrange for an underwater inspection by a diver approved 89
by the Classification Society prior to the delivery of the Vessel. The Sellers shall at their 90
cost make the Vessel available for such inspection. The extent of the inspection and the 91
conditions under which it is performed shall be to the satisfaction of the Classification 92
Society. If the conditions at the port of delivery are unsuitable for such inspection, the 93
Sellers shall make the Vessel available at a suitable alternative place near to the delivery 94
port. 95

(ii) If the rudder, propeller, bottom or other underwater parts below the deepest load line 96
are found broken, damaged or defective so as to affect the Vessel's class, then unless 97
repairs can be carried out afloat to the satisfaction of the Classification Society, the Sellers 98
shall arrange for the Vessel to be drydocked at their expense for inspection by the 99
Classification Society of the Vessel's underwater parts below the deepest load line, the 100
extent of the inspection being in accordance with the Classification Society's rules. If the 101
rudder, propeller, bottom or other underwater parts below the deepest load line are found 102
broken, damaged or defective so as to affect the Vessel's class, such defects shall be made 103
good by the Sellers at their expense to the satisfaction of the Classification Society 104
without condition/recommendation*. In such event the Sellers are to pay also for the cost of 105
the underwater inspection and the Classification Society's attendance. 106

(iii) If the Vessel is to be drydocked pursuant to Clause 6 b) (ii) and no suitable dry- 107
docking facilities are available at the port of delivery, the Sellers shall take the Vessel 108
to a port where suitable drydocking facilities are available, whether within or outside the 109
delivery range as per Clause 5 b). Once drydocking has taken place the Sellers shall deliver 110
the Vessel at a port within the delivery range as per Clause 5 b) which shall, for the 111
purpose of this Clause, become the new port of delivery. In such event the cancelling date 112
provided for in Clause 5 b) shall be extended by the additional time required for the 113
drydocking and extra steaming, but limited to a maximum of 14 running days. 114

c) If the Vessel is drydocked pursuant to Clause 6 b) above 115

(i) the Classification Society may require survey of the tailshaft system, the extent of 116
the survey being to the satisfaction of the Classification surveyor. If such survey is not 117
required by the Classification Society, the Buyers shall have the right to require the tailshaft 118
to be drawn and surveyed by the Classification Society, the extent of the survey being in 119
accordance with the Classification Society's rules for tailshaft survey and consistent with 120
the current stage of the Vessel's survey cycle. The Buyers shall declare whether they 121
require the tailshaft to be drawn and surveyed not later than by the completion of the 122
inspection by the Classification Society. The drawing and refitting of the tailshaft shall be 123
arranged by the Sellers. Should any parts of the tailshaft system be condemned or found 124
defective so as to affect the Vessel's class, those parts shall be renewed or made good at 125
the Sellers' expense to the satisfaction of the Classification Society without 126
condition/recommendation*. 127

(ii) the expenses relating to the survey of the tailshaft system shall be borne 128
by the Buyers unless the Classification Society requires such survey to be carried out, in 129
which case the Sellers shall pay these expenses. The Sellers shall also pay the expenses 130
if the Buyers require the survey and parts of the system are condemned or found defective 131
or broken so as to affect the Vessel's class*. 132

(iii) the expenses in connection with putting the Vessel in and taking her out of 133
drydock, including the drydock dues and the Classification Society's fees shall be paid by 134
the Sellers if the Classification Society issues any condition/recommendation* as a result 135
of the survey or if it requires survey of the tailshaft system. In all other cases the Buyers 136
shall pay the aforesaid expenses, dues and fees. 137

(iv) the Buyers' representative shall have the right to be present in the drydock, but 138
without interfering with the work or decisions of the Classification surveyor. 139

(v) the Buyers shall have the right to have the underwater parts of the Vessel 140
cleaned and painted at their risk and expense without interfering with the Sellers' or the 141
Classification surveyor's work, if any, and without affecting the Vessel's timely delivery. If, 142
however, the Buyers' work in drydock is still in progress when the Sellers have 143
completed the work which the Sellers are required to do, the additional docking time 144

needed to complete the Buyers' work shall be for the Buyers' risk and expense. In the event     145
that the Buyers' work requires such additional time, the Sellers may upon completion of the     146
Sellers' work tender Notice of Readiness for delivery whilst the Vessel is still in drydock     147
and the Buyers shall be obliged to take delivery in accordance with Clause 3, whether     148
the Vessel is in drydock or not and irrespective of Clause 5 b).     149

Notes, if any, in the surveyor's report which are accepted by the Classification Society without     150
condition/recommendation are not to be taken into account.     151

                                                                                        154

7.      Spares/bunkers, etc.

The Sellers shall deliver the Vessel to the Buyers with everything belonging to her on board and on     155
shore. All spare parts and spare equipment including spare tail-end shaft(s) and/or spare     156
propeller(s)/propeller blade(s), if any, belonging to the Vessel at the time of inspection used or     157
unused, whether on board or not shall become the Buyers' property, but spares on order are to be     158
excluded. Forwarding charges, if any, shall be for the Buyers' account. The Sellers are not required to     159
replace spare parts including spare tail-end shaft(s) and spare propeller(s)/propeller blade(s) which     160
are taken out of spare and used as replacement prior to delivery, but the replaced items shall be the     161
property of the Buyers. The radio installation and navigational equipment shall be included in the sale     162
without extra payment if they are the property of the Sellers. Unused stores and provisions shall be     163
included in the sale and be taken over by the Buyers without extra payment.     164

The Sellers have the right to take ashore crockery, plates, cutlery, linen and other articles bearing the     165
Sellers' flag or name, provided they replace same with similar unmarked items. Library, forms, etc.,     166
exclusively for use in the Sellers' vessel(s), shall be excluded without compensation. Captain's,     167
Officers' and Crew's personal belongings including the slop chest are to be excluded from the sale,     168
as well as the following additional items (including items on hire):     169

The Buyers shall take over the remaining bunkers and unused lubricating oils in storage tanks and     170
sealed drums and pay the current net market price (excluding barging expenses) at the port and date     171
of delivery of the Vessel.     172
Payment under this Clause shall be made at the same time and place and in the same currency as     173
the Purchase Price.

8.   Documentation.                                                    176

The place of closing: Houston, Texas                                   177

In exchange for payment of the Purchase Price the Sellers shall furnish the Buyers with delivery   178
documents, namely;

a)     Legal Bill of Sale in a form recordable in Singapore,          180
       warranting that the Vessel is free from all encumbrances, mortgages'   181
       and maritime liens or any other debts or claims whatsoever, duly notarially attested and   182
       legalized by the consul of such country or other competent authority.

b)     Current Certificate of Ownership issued by the competent authorities of the flag state of   183
       the Vessel.                                                     184

c)     Confirmation of Class issued within 72 hours prior to delivery.

d)     Current Certificate issued by the competent authorities stating that the Vessel is free
       from registered encumbrances.

e) ~~Certificate of Deletion of the Vessel from the Vessel's registry or other official evidence~~
~~of deletion appropriate to the Vessel's registry at the time of delivery, or, in the event that the~~
~~registry does not as a matter of practice issue such documentation immediately, a written~~
~~undertaking by the Sellers to effect deletion from the Vessel's registry forthwith and furnish a~~
~~Certificate or other official evidence of deletion to the Buyers promptly and latest within 4 (four)~~
~~weeks after the Purchase Price has been paid and the Vessel has been delivered.~~
                                                                       185

f)

g)     Any such additional documents as may reasonably be required by the competent authorities   194
       for the purpose of registering the Vessel, provided the Buyers notify the Sellers of any such   195
       documents as soon as possible after the date of this Agreement.   196

At the time of delivery the Buyers and Sellers shall sign and deliver to each other a Protocol of   197
Delivery and Acceptance confirming the date and time of delivery of the Vessel from the Sellers to the   198
Buyers.                                                                199

At the time of delivery the Sellers shall hand to the Buyers the classification certificate(s) as well as all   200
plans etc., which are on board the Vessel. Other certificates which are on board the Vessel shall also   201
be handed over to the Buyers unless the Sellers are required to retain same, in which case the   202
Buyers to have the right to take copies. Other technical documentation which may   203
be in the Sellers' possession shall be promptly forwarded to the Buyers at their expense, if they so   204
request. The Sellers may keep the Vessel's log books but the Buyers to have the right to take   205
copies of same.                                                       206


                                                                       207

9.     Encumbrances                                                    208

The Sellers warrant that the Vessel, at the time of delivery, is free from all charters, encumbrances,   208
mortgages and maritime liens or any other debts whatsoever. The Sellers hereby undertake   209
to indemnify the Buyers against all consequences of claims made against the Vessel which have   210
been incurred prior to the time of delivery.                          211


                                                                       212

10.   Taxes.

Any taxes, fees and expenses in connection with the purchase and registration under the Buyers' flag   213

shall be for the Buyers' account, whereas similar charges in connection with the closing of the Sellers' 214
register shall be for the Sellers' account. The Sellers shall bear and pay for all taxes and duties imposed 215
by the government of any nation or any political subdivision thereof in connection with the execution
and/or performance of this Agreement, up to and including delivery of the vessel to the Buyers.

## 11. Condition on delivery 216

The Vessel with everything belonging to her shall be at the Sellers' risk and expense until she is 217
delivered to the Buyers, but subject to the terms and conditions of this Agreement she shall be 218
delivered and taken over as she was at the time of inspection, fair wear and tear excepted. -219

However, the Vessel shall be delivered with her class maintained without condition/recommendation*, 220
free of average damage affecting the Vessel's class, and with her classification certificates and 221
national certificates, as well as all other certificates the Vessel had at the time of inspection, valid and 222
unextended without condition/recommendation* by Class or the relevant authorities at the time of 223
delivery. 224

"Inspection" in this Clause 11, shall mean the Buyers' Inspection according to Clause 4 b), if 225
applicable, or the Buyers' inspection prior to the signing of this Agreement. If the Vessel is taken over 226
without inspection, the date of this Agreement shall be the relevant date. 227

Notes, if any, in the surveyor's report which are accepted by the Classification Society 228
without condition/recommendation are not to be taken into account. 229

## 12. Name/markings 230

Within a reasonable period after delivery, the Buyers undertake to remove Trico from the name of 231
the Vessel and alter funnel markings.

## 13. Buyers' default 232

Should the deposit not be paid in accordance with Clause 2, the Sellers have the right to cancel this 233
Agreement, and they shall be entitled to claim compensation for their losses and for all expenses 234
incurred together with interest. 235
Should the Purchase Price not be paid in accordance with Clause 3, the Sellers have the right to 236
cancel the Agreement, in which case the deposit together with interest earned shall be released to the 237
Sellers. If the deposit does not cover their loss, the Sellers shall be entitled to claim further 238
compensation for their losses and for all expenses incurred together with interest. 239

## 14. Sellers' default 240

Should the Sellers fail to give Notice of Readiness in accordance with Clause 5 a) or fail to be ready 241
to validly complete a legal transfer by the date stipulated in line 61 the Buyers shall have 242
the option of cancelling this Agreement provided always that the Sellers shall be granted a 243
maximum of 3 banking days after Notice of Readiness has been given to make arrangements 244
for the documentation set out in Clause 8. If after Notice of Readiness has been given but before 245
the Buyers have taken delivery, the Vessel ceases to be physically ready for delivery and is not 246
made physically ready again in every respect by the date stipulated in line 61 and new Notice of 247
Readiness given, the Buyers shall retain their option to cancel. In the event that the Buyers elect 248
to cancel this Agreement the deposit together with interest earned shall be released to them 249
immediately . 250
Should the Sellers fail to give Notice of Readiness by the date stipulated in line 61 or fail to be ready 251
to validly complete a legal transfer as aforesaid they shall make due compensation to the Buyers for 252
their loss and for all expenses together with interest if their failure is due to proven 253
negligence and whether or not the Buyers cancel this Agreement. 254

15. **Buyers' representatives**

After this Agreement has been signed by both parties and the deposit has been lodged, the Buyers have the right to place up to 5 representatives on board the Vessel at their sole risk and expense.

These representatives are on board for the purpose of familiarisation and in the capacity of observers only, and they shall not interfere in any respect with the operation of the Vessel. The Buyers' representatives shall sign the Sellers' letter of indemnity prior to their embarkation.

256
257
258
259
260
261

262

16. **Arbitration**

b) This Agreement shall be governed by and construed in accordance with Title 9 of the United States Code and the Law of the State of Texas and should any dispute arise out of this Agreement, the matter in dispute shall be referred to three persons at Texas, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this Agreement may be made a rule of the Court.
The proceedings shall be conducted in accordance with the rules of the Houston Maritime Arbitration Association.

271
272
273
274
275
276
277
278

17. **Notices**

Notices hereunder are to be sent by fax or e-mail, with hard copies following by airmail or courier.

All Notices to the Sellers are to be sent to:

Trico Marine Assets, Inc.
10001 Woodloch Forest Dr.
Suite #610
The Woodlands, TX 77380
Attn: Brett Cenkus
E-mail: bcenkus@tricomarine.com
Tel: 713.780-9926
Fax: 281.203.5701

All Notices to the Buyer are to be sent to:

Peter A. McLauchlan
Gardere Wynne Sewell LLP
1000 Louisiana, Suite 3400
Houston, TX 77002
713.276.5730 direct
713.276.6730 fax
pmclauhlan@gardere.com

18. **Nominee**

The Buyers may at any time, up top five (5) working days prior to the sale closing, notify the Sellers in writing of the Buyers' nominee (which must be an affiliate of the Buyers) to take title to the Vessel at delivery and to be the beneficiary of any and all rights of the Buyers under this Agreement, but the original Buyers shall always remain fully responsible to the Sellers for the due fulfillment of all of the Buyers' obligations to the Sellers under this Agreement.

19. **Vessel's Crew**

In order to avoid the risk of any members of the Vessel's crew making labor claims against the Buyers and/or
the Vessel after delivery, the Sellers agree if requested by the Buyers to cause the removal of all such crew members from the Vessel
at the time of delivery and top discharge such crew members and pay them for any and all salaries and
benefits earned up to delivery, including end-of-service benefits which may be applicable under Brazilian

and U.S. labor law.

20. Approval of US Maritime Administration

The closing of the MV TRICO MOON is subject to the obtaining of any necessary approvals from the US Maritime Administration in form and substance satisfactory to the parties.

For and behalf of
Trico Marine Assets, Inc.

_____
Name:
Title:

For and on behalf of Pacc Offshore Services Holding Pte Ltd

_____
Name:
Title: Attorney-in-fact

Direct: 713-276-5730
Direct Fax: 713-276-6730
Email: pmclauchlan@gardere.com

November 23, 2010

VIA E-MAIL

Mr. Rich Bachmann
Trico Marine Assets, Inc.
10001 Woodloch Forest Drive
Suite 610
The Woodlands, TX 77380

Re: <u>M/V TRICO MOON and M/V TRICO MYSTIC</u>

Dear Mr. Bachmann:

Reference is made to that certain Heads of Agreement dated the 23rd of November, 2010 (the "HOA"), entered into by and between PACC Offshore Services Holdings Pte Ltd. (as "Buyers") and Trico Marine Assets, Inc. (as "Sellers") with respect to the captioned vessels (the "Vessels"). Further reference is made to Annexes "A" and "B" to the HOA, which consist of Memoranda of Agreement (the "MOAs") between the Buyers and the Sellers relating to each of the Vessels, respectively.

The purpose of this letter is to give the Sellers the written notice specified in Clause 4(b) of the MOA; namely, that the Buyers have inspected the Vessels and accept their condition, subject to the remaining terms and conditions of the MOAs and the HOA.

Please note your records accordingly. We look forward to a smooth pleasant transaction.

Very truly yours,

GARDERE WYNNE SEWELL LLP

Peter A. McLauchlan, Partner

cc: Brett Cenkus [Trico]
    Tonya Ramsey [Vinson & Elkins]

GARDERE WYNNE SEWELL LLP
1000 Louisiana, Suite 3400, Houston, Texas 77002-5011 ▪ 713.276.5500 Phone ▪ 713.276.5555 Fax
Austin ▪ Dallas ▪ Houston ▪ Mexico City