UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| TRICO MARINE SERVICES, INC., *et al.*, ) | |
| ) | Case No. 10-12653 |
| Debtors. ) | |
| ) | Jointly Administered |
| ) | |
| ) | Hearing Date: December 14, 2010 at 1:30 pm (ET) |

**(A) SUPPLEMENT TO MOTION OF ARROWGRASS MASTER FUND LTD. AND ARROWGRASS DISTRESSED OPPORTUNITIES FUND LIMITED FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE AND (B) LIMITED OBJECTION TO MOTION OF CREDITORS' COMMITTEE FOR AUTHORITY TO PROSECUTE CAUSES OF ACTION**

Arrowgrass Master Fund Ltd. and Arrowgrass Distressed Opportunities Fund Limited (collectively, "Arrowgrass"), each a holder of Trico Marine Services, Inc.'s 3.00% Senior Convertible Debentures due 2027, for their supplement ("Supplement") to their motion ("Motion")[1] for an Order (i) directing Trico Marine Services, Inc. ("Parent") to place subsidiaries in Chapter 11 cases or, alternatively, (ii) appointing a Chapter 11 trustee pursuant to 11 U.S.C. §§ 1104(a)(1) and (a)(2), and their limited objection to the motion of the Official Committee of Unsecured Creditors (the "Creditors' Committee") for entry of an order authorizing the Creditors' Committee to prosecute certain claims and causes of action on behalf of the above-captioned Debtors' estates, respectfully represent:

**A.     Supplement To Motion For Appointment Of Trustee**

1.     On October 26, 2010, Arrowgrass filed its Motion to protect and preserve the value of Parent's interests in its subsidiaries comprising the Trico Supply Group by requesting, *inter alia*, the appointment of a trustee. The Motion stated that Parent's management has

---

[1] Capitalized terms used by not defined herein shall have the meanings ascribed to them in the Motion.

1

breached its duties of care and loyalty to the Parent's creditors, *inter alia*, by failing to maximize the value of the Debtors' estates. Central to the breach by the Parent's management are clear conflicts that disable management from fulfilling its duties to Parent's creditors.

2. In connection with the Motion, Arrowgrass served notices of deposition on Per Staehr, D. Michael Wallace, Myles Scoggins, and Richard Bachmann. These people are current members of the Board, the Chief Executive Officer, and the Chief Operating Officer of the Parent, who have personal knowledge of the facts and circumstances surrounding the transactions in question. These notices were served on November 2, 2010, with the depositions to occur November 15th - 18th. Yet, after more than a month of discussions, Debtors have still not made these four individuals available for depositions. During the last month, however, the Debtors' public announcements have made such depositions virtually unnecessary. Arrowgrass files this Supplement because the facts highlighting the Debtors' conflicts of interest are now so apparent that they exist as a matter of law and discovery may not be necessary. The Parent's management has clearly breached its duties of care and loyalty and its fiduciary duty to Parent's creditors.

3. Recently, the Creditors' Committee filed its motion requesting leave, standing, and authority to prosecute causes of action on behalf of the Debtors' estates. The motion correctly states, "a debtor-in-possession serving as trustee in a chapter 11 case 'gives rise to the proverbial problem of the fox guarding the henhouse. If no trustee is appointed, the debtor - really, the debtor's management - bears a fiduciary duty to avoid fraudulent transfers that *it itself made*,' and is sure to jump at 'any opportunity to avoid bringing a claim that would amount to reputational self-immolation.'…Thus, it is often not 'realistic' to 'order[] the debtor itself to

2

pursue' an avoidance claim 'given management's…conflicts of interest.'"[2] The motion goes on to list undisputed facts which establish the Debtors' "conflict of interest in pursuing an estate claim so that it is effectively disqualified from pursuing an action which is otherwise a colorable claim." *Official Comm. of Unsecured Creditors v. Cablevision Sys. Corp. (In re Valley Media, Inc.)*, No. 01-11353 (PJW), Adv. Proc. No. 02-04553, 2003 Bankr. LEXIS 940, at *6-7 (Bankr.D.Del. Aug. 14, 2003). Specifically, the Creditors' Committee highlights the following conflicts of interest:

- Debtors will refuse to bring Subject Claims if demand is made, as evident from the settlement Non-Debtor OpCos and a steering committee of High Yield Notes are currently negotiating, which includes a settlement on potential claims against the holders of High Yield Notes.[3]

- The Board of Directors of the Debtors and the Non-Debtor OpCos have overlapping board members, even though these entities have vastly different interests in connection with the October 2009 transactions.

- Debtors and the Non-Debtor OpCos are represented by the same professionals, who are unable to advise the Debtors and the Non-Debtor OpCos with both parties' divergent interests in mind.

4. On December 3, 2010, the Debtors announced a consent solicitation to permit the sale of Trico Sabre and Trico Star. The Debtors intend to use the sale proceeds to prepay the High Yield Notes and the Working Capital Facility pursuant to certain conditions set forth in the Consent Solicitation Statement. *See* Trico Marine Services, Inc., Current Report (Form 8-K) (Dec. 3, 2010). If, however, these loans were fraudulent conveyances, then all proposed asset sales at non-debtor subsidiaries must be postponed or, at a minimum, all proceeds from such

---

[2] The Creditors' Committee's motion, ¶65 (emphasis added) (quoting *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573, 575, and 578 (3d Cir. 2003).

[3] This settlement was reported in the press release dated October 29, 2010, and the corresponding 8-K statement, whereby the Debtors state that they have "reached an agreement in principle with the steering committee…of holders of approximately 83% of its 11 7/8% Senior Secured Notes to implement a comprehensive financial restructuring of Trico Supply." *See* Trico Marine Services, Inc., Current Report (Form 8-K) (Oct. 29, 2010); *see also* Trico Marine Services, Inc., Current Report (Form 8-K) (Dec. 3, 2010) (announcing a consent solicitation for pre-payment of the High Yield Notes).

3

sales must be held by the court until a trustee has had an opportunity to examine and prosecute such fraudulent conveyance actions.

5.  All of these publicly available facts support Arrowgrass' contention that Parent's management has breached its duties of care and loyalty to Parent's creditors by failing to maximize value of the Debtors' estates. "Cause" exists: (i) to require the immediate appointment of a Chapter 11 trustee under section 1104(a)(1) of the Bankruptcy Code, and (ii) for the Court to compel to have the Non-Debtor OpCos placed into Chapter 11. The Debtors failure to properly disclose the fact, that there is little to no value in the holding companies other than the causes of action, is the most telling evidence of the Debtors' conflicts. The value of the Debtors' estates lies in these actions, yet the Debtors' and their professionals remain steadfast against pursuing them.

6.  These causes of action must be dealt with prior to the formulation of any plan of reorganization. Because resolution of such causes of action will drive the Debtors' plan of reorganization - - it is impossible to draft a meaningful plan until such time. The Debtors' press releases indicate they are close to a deal with the High Yield Notes which will result in a Rule 9019 motion for approval of the settlement. Approval of any such settlement will be, in effect, a *sub rosa* plan. In light of the inextricably intertwined nature of the Debtors and the Non-Debtor OpCos and the myriad suspect intercompany transactions, the Court must protect the Parent's estate and its creditors.

**B.   Limited Objection To Creditor's Committee Motion For Authority to Sue**

7.  Arrowgrass files this limited objection to the Creditors' Committee's motion only in so far as the Creditors' Committee proposes that it be permitted to prosecute the causes of action. A trustee should pursue such causes of action rather than the Creditors' Committee concurrently with his or her investigation into the Debtors' apparent deal with the High Yield

Notes and other conflicted transactions which have been highlighted herein. A trustee's prosecution of such causes will be more efficient - -the Creditors' Committee has a number of other roles that it must satisfy in these cases, and as such, a trustee is best able to pursue these causes of action with a singular focus and without any other conflicting interests or motives.

WHEREFORE, Arrowgrass respectfully renews its request that this Court (i) appoint a Chapter 11 trustee for the Debtors pursuant to sections 1104(a)(1) and (2) of the Bankruptcy Code, and/or (ii) compel Debtors to place Non-Debtor OpCos into Chapter 11 cases, and (iii) grant such other and further relief as this Court may deem just and proper.

Dated: Wilmington, Delaware
December 6, 2010

ANDREWS KURTH LLP

By: /s/ Paul N. Silverstein
Paul N. Silverstein (NYS Bar No. PS 5098)
Robin Russell (TX Bar No. 17424001)
Jonathan I. Levine (NYS Bar No. JL 9674)
Abhishek Mathur (NYS Bar No. AM 1269)
450 Lexington Avenue
New York, New York 10017
Telephone Number: (212) 850-2800
Facsimile Number: (212) 850-2929

*Counsel to Arrowgrass Master Fund Ltd. and Arrowgrass Distressed Opportunities Fund Limited*

NYC:221645.5