## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-----------------------------------------------------------x
: 
In re: : Chapter 11 Case No. 10-12653 (BLS)
:
TRICO MARINE SERVICES, INC., *et. al.* :
: Objections Due: December 13, 2010
: Hearing Date: December 14, 2010
Debtors. : Hearing Time: 1:30 p.m. (ET)
:
: Related Docket No.: 594
-----------------------------------------------------------x

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO DEBTORS' MOTION TO APPROVE THE SALE OF ASSETS FREE AND CLEAR
OF LIENS, CLAIMS, AND ENCUMBRANCES TO RIVERMAN NIGERIA LIMITED**

The Official Committee of Unsecured Creditors of Trico Marine Services, Inc., *et al.* (the "Committee"), by its undersigned counsel, objects to the Debtors' motion (the "Riverman Motion") to approve the sale of the Truckee River Vessel (the "Vessel") to Riverman Nigeria Limited ("Buyer") [Docket No. 594], and in support thereof, the Committee represents as follows:

### THE INSTANT RIVERMAN MOTION

1. On December 8, 2010, the Debtors filed the Riverman Motion by which they seek authority to sell the Vessel to Buyer for a purchase price of $950,000 in a private sale without the opportunity for another interested party to submit a higher or better offer. Moreover, because the Debtors obtained an order shortening time, the Debtors had the Motion scheduled on December 14, 2010, a mere six days after filing it, leaving little to no chance that an independent purchaser could discover the pending sale for itself.

2. The Debtors self-created an artificial deadline by setting or agreeing to an accelerated December 15, 2010 closing deadline. The Buyer already has extended the closing

deadline on at least two occasions and could do so again to give the estates the chance to maximize the Vessel's value. The Debtors should not enter into agreements that provide for quick sales of its principal assets without providing the Committee the opportunity to scour the market, particularly in light of the Debtors' dismal record.

## THE DEBTORS' DISMAL SHIP SALE RECORD

3. **The Moon/Mystic Successful Auction.** As the Court is aware, this is not the first time that the Debtors have filed a fire-sale motion seeking to sell vessels in a private sale with insufficient notice. In each such case, the Committee went to market and found that the Debtors essentially agreed to sell to the first offeror not the best offeror. In the instance of the Trico Mystic and Trico Moon Vessels, the Committee's efforts resulted in four bidders and a two-day auction that netted over $4,500,000 to the estate (after deduction of a break-up fee (that the Committee opposed as well)). That was a 17.3% increase over the Debtors' private sale amount; 20.3% before application of the break-up fee.

4. The auction there was necessary. An auction here is necessary.

5. **The Vessel's Failed Sale**. The Debtors previously "sold" the Vessel to NigerDelta Shipping Agency Limited (the "Failed Buyer"). There, the Debtors had gotten this Court (and the Committee) to go along with a private sale to a Failed Buyer that was fatally distracted by its principal's run for President of Nigeria and lack of United States currency (both facts apparently a mystery to the Debtors when they signed). Of course, the Debtors never closed that sale notwithstanding the Debtors' representations of the quality of the Failed Buyer, which simply disappeared, and moreover that failure led to defaults under the DIP financing agreement upon the failure to receive the proceeds.

6. Now the Debtors justify the private sale because it is the same price of the failed sale. However, the fact that at least two putative buyers have agreed to pay $950,000 for the Vessel reflects multiple-party interest in the Vessel and compels the occurrence of an auction. In fact, it is likely that the Debtors' acceptance of $950,000 the last time caused the potential Buyer to limit its offer to that amount even if it would otherwise bid more. Again, only an auction will determine the highest or best offer for the Vessel.

## COURTS DISCOURAGE PRIVATE SALES

7. Section 363(b) of the United States Bankruptcy Code (the "Bankruptcy Code") provides that "the trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999). "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'" *Id.*

8. Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") governs procedures as to the use, sale or lease of estate property outside the ordinary course of business, and implements section 363(b) of the Bankruptcy Code. Although Bankruptcy Rule 6004(f)(1) permits the private sale of estate property, courts generally favor a public sale of property of the estate as opposed to a private sale. *See, e.g., In re Planned Systems, Inc.*, 82 B.R. 919, 923 (Bankr. S.D. Ohio 1988).

3

DOCS_DE:166108.1

6. Now the Debtors justify the private sale because it is the same price of the failed sale. However, the fact that at least two putative buyers have agreed to pay $950,000 for the Vessel reflects multiple-party interest in the Vessel and compels the occurrence of an auction. In fact, it is likely that the Debtors' acceptance of $950,000 the last time caused the potential Buyer to limit its offer to that amount even if it would otherwise bid more. Again, only an auction will determine the highest or best offer for the Vessel.

## COURTS DISCOURAGE PRIVATE SALES

7. Section 363(b) of the United States Bankruptcy Code (the "Bankruptcy Code") provides that "the trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999). "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'" *Id.*

8. Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") governs procedures as to the use, sale or lease of estate property outside the ordinary course of business, and implements section 363(b) of the Bankruptcy Code. Although Bankruptcy Rule 6004(f)(1) permits the private sale of estate property, courts generally favor a public sale of property of the estate as opposed to a private sale. *See, e.g., In re Planned Systems, Inc.*, 82 B.R. 919, 923 (Bankr. S.D. Ohio 1988).

9. Here it is essential that the Debtors sell the Vessel for the highest amount to a qualitatively superior buyer that will close the sale. Prior performance and applicable law mandate that these estates' use the preferred auction process to find this highest or best offer.

## CONCLUSION

10. For the foregoing reasons, the Committee respectfully requests that the Court deny the Riverman Motion, direct an auction of the Vessel on such conditions as acceptable to the Committee, and award the Committee such and further relief deemed just and proper.

Dated: December 13, 2010
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

_____
Laura Davis Jones (Bar No. 2436)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

and

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David S. Rosner, Esquire
Andrew K. Glenn, Esquire
David J. Mark, Esquire
Daniel A. Fliman, Esquire
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Co-Counsel to the Official Committee of Unsecured Creditors