# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TRICO MARINE SERVICES, INC., *et al.*,[1] | ) Case No. 10-12653 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) (Relates to Dkt. No. 460) |
| | ) |

## ORDER GRANTING DEBTORS' MOTION FOR AN ORDER (A) APPROVING SALE PROCEDURES TO BE UTILIZED IN CONNECTION WITH THE SALE OF ASSETS, (B) APPROVING THE FORM OF NOTICE RELATED TO ACCEPTED OFFERS, (C) AUTHORIZING THE SALE OF ASSETS PURSUANT TO THE SALE PROCEDURES, (D) SETTING SALE HEARINGS, AND (E) GRANTING RELATED RELIEF

Upon consideration of the Debtors' *Motion for an Order (A) Approving Sale Procedures to be Utilized in Connection with the Sale of Assets, (B) Approving the Form of Notice Related to Accepted Offers, (C) Authorizing the Sale of Assets Pursuant to the Sale Procedures, (D) Setting Sale Hearings, and (E) Granting Related Relief* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); and notice of the Motion having been adequate and appropriate under the circumstances; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief requested therein and that such relief is in the best

---

[1] The Debtors are the following entities (followed by the last four digits of their tax identification numbers): Trico Marine Services, Inc. (2405); Trico Marine Assets, Inc. (2404); Trico Marine Operators, Inc. (6124); Trico Marine International, Inc. (3132); Trico Holdco, LLC (3870); Trico Marine Cayman, L.P. (5842). The mailing address for all of the Debtors for the purpose of these Cases is 10001 Woodloch Forest Drive, Suite 610, The Woodlands, TX 77380.

[2] Capitalized terms used but not defined herein shall have the meaning given to them in the Motion.

interests of the Debtors, their estates, their creditors, and other parties in interest; and upon the record in these proceedings; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1. The Motion is hereby GRANTED. All objections to such relief requested that have not been withdrawn, waived or settled as announced to the Bankruptcy Court at the hearing on the Motion or by stipulation filed with the Court are hereby overruled.

2. The Sale Procedures, as modified and set forth in this Order (the "Modified Sale Procedures"), are hereby approved. The Debtors are authorized to utilize the Modified Sale Procedures in connection with the sale of the Assets. The Court finds that the Debtors have articulated good and sufficient reasons for approving the Modified Sale Procedures, and that the Modified Sale Procedures are reasonable and appropriate and designed to maximize the value of the Assets.

3. Subject to prior regulatory approval by the United States Maritime Administration ("MARAD"), where applicable, the Debtors are authorized to sell each Asset free and clear of all liens, claims, and encumbrances upon approval by this Court at an applicable Sale Hearing (as defined below) pursuant to the Modified Sale Procedures. Such approval by MARAD, as provided for in this paragraph 3 shall not be granted for SPIRIT RIVER and HONDO RIVER (the "MARAD Vessels") unless the Sale Proceeds are sufficient to satisfy the lien of the first preferred mortgage MARAD holds relating to the MARAD Vessels (the "MARAD Mortgage"), which shall be satisfied at the Closing of the applicable sales.

4. On or before December 15, 2010, the Debtors will publish notice of the availability of the Assets in applicable trade and newspaper publications that, in the Debtors' business judgment, will put other potential buyers on notice of the availability of the Assets. Such publications will include, but are not limited to, Lloyd's List and Fairplay.

7

5.  Upon receipt of an offer for any or all Assets, the Debtors may, in their discretion, after consultation with the official committee of unsecured creditors (the "Committee"), Obsidian (as defined below), and and holders of the Debtors' 8.125% notes (the "8.125% Noteholders") represented by Bracewell & Giuliani LLP, and subject to the restrictions set forth in paragraph 3 above, accept an offer and execute an Asset Purchase Agreement (an "Agreement"), subject to Bankruptcy Court approval.

6.  After acceptance of an offer, the Debtors shall file with the Bankruptcy Court notice of the accepted offer (the "Notice of Accepted Offer"), which shall include the following (the items described in subparagraphs g, h, i and j of this paragraph 5 shall be determined by the Debtors, in their discretion, after consultation with the Committee and the 8.125% Noteholders):

   a.  identification of the potential purchaser;
   b.  identification of the Asset(s) to be purchased;
   c.  the proposed purchase price;
   d.  the deposit paid by the potential purchaser, if any;
   e.  any significant conditions of delivery;
   f.  the date by which the Asset(s) are expected to be delivered;
   g.  the date and time of the deadline for submission of any higher and better offers for the respective Asset(s) (the "Offer Deadline");
   h.  the date, time, and location of an Auction (as defined below) of the Asset(s), if an Auction is to be held;
   i.  the date, time and place of the Sale Hearing; and
   j.  the objection deadline for the Sale Hearing.

7.  The Debtors shall file each Notice of Accepted Offer on the Court's docket and send a copy to the following parties: (i) the United States Trustee; (ii) counsel to the applicable counterparty; (iii) counsel to the Committee; (iv) counsel to the 8.125% Noteholders; (v) counsel

8

to Obsidian, (v) all parties listed in the notice paragraph of the Motion; (vi) all parties (other than Debtors) to contracts or leases that affect, or are affected by, the proposed Sale and/or the applicable Asset(s); (vii) any person or entity known to have asserted a lien, claim, encumbrance, security interest, or other interest in or to the Assets (collectively the "Notice Parties"); and (viii) any person or entity known previously to have expressed to the Debtors an interest in the subject Asset(s).

8. If the Debtors receive more than one offer for a particular Asset(s) by the Offer Deadline, the Debtors shall conduct an auction (an "Auction") to procure the highest and best price for such Asset(s), unless the Debtors, the Committee, Obsidian and the 8.125% Noteholders each agree that an Auction is not necessary or appropriate. The date, time, and location of an Auction shall be set forth in the applicable Notice of Accepted Offer.

9. At or prior to an Auction, after consultation with the Committee, Obsidian and the 8.125% Noteholders, the Debtors may provide for any necessary procedures that, in the Debtors' business judgment, will facilitate the goal of procuring the highest and best offer for particular Asset(s), including, but not limited to, designation of a "stalking horse" bidder.

10. Each Auction shall be conducted openly, and (a) the Debtors, and their counsel, (b) the Committee, and its counsel, (c) the 8.125% Noteholders, and their counsel and (d) Obsidian and its counsel, may each attend and observe each Auction.

11. Bidding at each Auction shall be transcribed or videotaped.

12. Each bidder participating in an Auction must confirm that it has not engaged in any collusion with respect to the bidding of the sale.

13. Obsidian Agency Services, Inc., as DIP Agent[3] under the DIP Financing Agreement, and as Prepetition First Lien Agent under the Prepetition First Lien Loan Agreement (in such representative capacities, "Obsidian") is deemed a qualified bidder in every Auction involving Assets that constitute Prepetition Collateral for the Prepetition First Lien Debt or Collateral for the DIP Obligations and, subject to Paragraph 15 hereof, shall have the right to credit bid (x) up to the outstanding, allowed amount of the DIP Obligations in respect of an Auction of Assets that constitute Collateral for the DIP Obligations, (y) up to the aggregate, outstanding, allowed amount of (i) the Prepetition First Lien Debt and the (ii) DIP Obligations in respect of an Auction of Assets that constitute Prepetition Collateral and (z) subject to a determination by the Court, after notice and hearing, that the Prepetition First Lien Agent has a monetary claim (the "Adequate Protection Claim") for adequate protection of its interest in the Prepetition Collateral (as contemplated by the first sentence of Paragraph 12 of the DIP Financing Order), up to the outstanding amount of such Adequate Protection Claim in respect of an Auction of Assets that constitute Collateral for the First Lien Agent Adequate Protection Lien. Subject to that certain Intercreditor Agreement, dated as of May 14, 2009, as may be amended, the 8.125% Noteholders reserve all of their respective rights, if any, to credit bid for the Assets.

14. Additionally, if MARAD has paid the MARAD Notes pursuant to its guarantee, MARAD reserves all rights to credit bid for the MARAD Vessels up to the outstanding amount secured by the MARAD Mortgage.

---

[3] Capitalized terms used in this Paragraph 13 and in Paragraph 15 that are not otherwise defined herein shall have the respective meanings assigned to such terms in the amended interim debtor in possession financing order (the "**DIP Financing Order**") entered by the Court on September 7, 2010 [Docket No. 95].

15. The Debtors reserve all rights to determine, after consultation with the Committee, that any such credit bid of Obsidian or MARAD does not constitute the highest and best bid. Notwithstanding anything herein to the contrary, nothing contained in this Order is intended, or shall be construed, to allow, grant, acknowledge, deny or otherwise make any determination concerning (x) the entitlement of the Prepetition First Lien Agent to, or the amount of, any Adequate Protection Claim that the Prepetition First Lien Agent may assert or (y) the right of the Prepetition First Lien Agent to credit bid an Adequate Protection Claim (or any portion thereof) asserted by the Prepetition First Lien Agent at an Auction for particular Assets constituting Collateral for such Adequate Protection Claim (or for the First Lien Agent Adequate Protection Lien), and the Prepetition First Lien Agent, the Debtors and the Committee reserve all of their respective rights in connection therewith.

16. After completion of an Auction and selection of the highest and best offer as determined by the Debtors, after consultation with the Committee, Obsidian and the 8.125% Noteholders, or after acceptance of an offer if no Auction is to be held, this Court shall, upon request by the Debtors, conduct a hearing to approve the sale of the Asset(s) (a "Sale Hearing") on the next omnibus hearing date that is at least 10 days after the Notice of Accepted Offer is filed, unless the Debtors request, for cause shown and after consultation with the Committee, Obsidian and the 8.125% Noteholders, a different hearing date and/or shortened notice.

17. If no Auction is conducted, and if each of (i) Obsidian, (ii) the Committee, (iii) MARAD, (iv) the 8.125% Noteholders, (v) the Debtors and (vi) the United States Trustee consent to the proposed Sale, a sale order approving the Sale may be submitted to the Court for entry, with an appropriate certificate of conference. The Court may approve the Sale without further hearing, or otherwise order that a Sale Hearing be conducted.

18. To the extent there remain, at the close of business on January 16, 2011, any Assets for which a Notice of Accepted Offer has not yet been filed, January 17, 2011 at 12:00 p.m. (prevailing Central Time) (the "Final Offer Deadline") shall be the deadline for potential bidders to file any final offers.

19. On January 24, 2011 at 10:00 a.m. (prevailing Central Time), the Debtors are authorized and directed to hold an Auction (the "Final Auction") for the Sale of any remaining Assets not yet subject to an offer.

20. This Court shall hold a Sale Hearing to approve the sale of any Assets auctioned at the Final Auction, or of any other Assets subject of an offer for which a Sale has not yet approved by the Court on January 31, 2011, or as soon thereafter as is practical given the Court's schedule (the "Final Sale Hearing").

21. Upon the sale of any Asset, all liens, claims, encumbrances and interests shall attach to the proceeds of such Asset with the same validity, priority, force and effect that they now have against the Asset, and subject to any claims and defenses that the Debtors and their estates may possess with respect thereto.

22. For any Asset not subject to an acceptable offer as of the Final Offer Deadline, the Debtors, after consultation with the Committee, Obsidian and the 8.125% Noteholders, may seek to abandon such Asset according to Bankruptcy Code § 554 at the Final Sale Hearing.

23. The Debtors, in the exercise of their fiduciary duties, after consultation with the Committee, Obsidian and the 8.125% Noteholders, may extend the Final Offer Deadline.

24. MARAD shall have first claim on the Sale Proceeds relating to the MARAD Vessels, and, at the Closing of the Sale, the Debtors shall pay from the Sale Proceeds the

MARAD Notes relating to the MARAD Vessels prior to paying any other costs, fees or obligations, subject to the estates' rights, if any, pursuant to 11 U.S.C. § 506(c).

25. The Debtors are authorized to pay from the sales proceeds any reasonable and appropriate closing costs in connection with the transaction where necessary, including any broker fees and any fees related to Class and Flag documentation and transfer matters for any vessels to be sold without the need for further order by this Court.

26. Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order shall be effective and enforceable immediately upon entry of this Order.

27. To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

28. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: December 13, 2010
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE