# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re:

TRICO MARINE SERVICES, INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 10-12653 (BLS)

(Jointly Administered)

RE: D.I. 359, 574

**DEBTORS' OBJECTION TO MOTION OF ARROWGRASS MASTER FUND LTD. AND ARROWGRASS DISTRESSED OPPORTUNITIES FUND LIMITED FOR ORDER (I) DIRECTING DEBTOR TO PLACE SUBSIDIARIES IN CHAPTER 11 CASES OR, ALTERNATIVELY, (II) APPOINTING A CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. §§ 1104(a)(1) AND (a)(2)**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned attorneys, hereby file this objection (the "Objection") to the motion of Arrowgrass Master Fund Ltd. and Arrowgrass Distress Opportunities Fund Limited (together, "Arrowgrass") for an order (i) directing Debtor Trico Marine Services, Inc. ("TMS") to place certain subsidiaries (the "Opco Subsidiaries") in Chapter 11 cases or, alternatively, (ii) appointing a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(1) and (a)(2) [Dkt. 359] (the "Motion").[2] For the reasons set forth below, the Debtors respectfully submit that the Motion should be denied in its entirety.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each of the Debtors' tax identification number, are: Trico Marine Services, Inc. (2405); Trico Marine Assets, Inc. (2404); Trico Marine Operators, Inc. (6124); Trico Marine International, Inc. (3132); Trico Holdco, LLC (3870); Trico Marine Cayman, L.P. (5842). The mailing address for all of the Debtors for the purpose of these cases is 10001 Woodloch Forest Drive, Suite 610, The Woodlands, TX 77380.

[2] On December 6, 2010, Arrowgrass filed a (A) Supplement to Motion of Arrowgrass Master Fund Ltd. and Arrowgrass Distressed Opportunities Fund Limited for Appointment of a Chapter 11 Trustee and (B) Limited Objection to Motion of Creditors' Committee for Authority to Prosecute Causes of Action [Dkt No. 574] (the "Supplement").

**PROCEDURAL DEVELOPMENTS**

1. On December 6, 2010, the Debtors filed a Motion Pursuant to Bankruptcy Code Sections 105 and 363 and Bankruptcy Rule 9019 for an Order Authorizing the Debtors to Compromise Certain Intercompany Claims and Equity Interests [Dkt. No. 581] (the "9019 Motion"). As explained therein, the Debtors and certain of their nondebtor operating subsidiaries,[3] which include the Opco Subsidiaries at issue in Arrowgrass's Motion, entered into a Restructuring Support Agreement (the "RSA") that would settle certain intercompany claims and give the Debtors' estates for the benefit of Arrowgrass and other creditors an equity interest in the reorganized Opco Subsidiaries.

2. If granted, the 9019 Motion would moot the relief sought by Arrowgrass. If denied, the Debtors have committed in the RSA that they will place the Opco Subsidiaries in Chapter 11 proceedings, presumably providing Arrowgrass the relief it seeks. The Debtors thus respectfully submit that resolution of Arrowgrass's Motion is premature at the very least, and likely unnecessary, as the principal relief Arrowgrass seeks will either be rendered moot or likely accomplished through this Court's disposition of the 9019 Motion.

---

[3] These are known as the "Opco Subsidiaries" and include Trico Supply AS ("Trico Supply"), Trico Shipping AS ("Trico Shipping") and their subsidiaries DeepOcean AS, Trico Supply (UK) Limited, Albyn Marine Limited, Trico Subsea Holding AS, Trico Subsea AS, DeepOcean Shipping AS, DeepOcean Shipping II AS, DeepOcean Shipping III AS, DeepOcean Brasil Servicos Ltda., DeepOcean Maritime AS, DeepOcean Subsea Services Limited (UK), DeepOcean B.V., DeepOcean UK Ltd., Deep Ocean Management AS, DeepOcean de Mexico, S. de R.L. de C.V., Servicios Profesionales de Apoyo Especializado, S. de R.L. de C.V., Servicios de Soporte Profesional Administrativo, S. de R.L. de C.V., CTC Marine Projects Limited (UK), CTC Marine Norway AS, and CTC Marine Projects (Guernsey) Limited.

## PRELIMINARY STATEMENT

3. Arrowgrass in its Motion asks this Court for extraordinary and unprecedented relief that is not warranted. Indeed, Arrowgrass has not offered any evidence in support of the Motion and the Motion should be denied on that basis alone. Contrary to the conclusory assertions of "fact" in the Motion, the Debtors have consistently exercised their business judgment in determining which subsidiaries to place into Chapter 11 proceedings and when to do so, and which subsidiaries should operate outside of bankruptcy, at least for the time being. The Debtors have made reasoned and reasonable decisions in this regard consistent with their fiduciary duties to their estates and creditors generally. That Arrowgrass, with the myopic view of a single creditor, disagrees with the Debtors' business judgment does not, without substantially more, justify substituting its judgment for that of the Debtors' board of directors and management.

4. To the extent Arrowgrass tries to question this exercise of business judgment, it relies on conclusory allegations and irrelevant transactions. The bulk of Arrowgrass's statement of "facts" challenges, without any evidentiary support, financing arrangements made in 2007, 2008 and 2009, well before the commencement of these bankruptcy proceedings in August, 2010. (*See* Motion ¶¶ 5-17.) These arrangements, made under the watch of a different CEO and General Counsel than those currently heading Debtors, including TMS, and prior to the appointment of a CRO, cannot and do not implicate the current management's execution of its duties of care and loyalty to the Debtors' estates and their creditors.

5. Arrowgrass also challenges the Debtors' decision to enter into a debtor-in-possession credit facility (the "DIP financing") with Tennenbaum Capital Partners LLC and certain of its affiliates (collectively, "Tennenbaum"). That financing was, however, limited to

just $3.5 million that was borrowed under interim approval from the Court and has since been repaid.

6. Labeling these various financing arrangements as "fraudulent transfers," Arrowgrass first requests that this Court compel the management of TMS to place certain foreign subsidiaries into bankruptcy proceedings to be jointly administered with these cases, a request so unusual that Arrowgrass has not cited to a single decision by any court that has ordered comparable relief. Recognizing the extraordinary nature of its request, Arrowgrass requests in the alternative that the Court immediately appoint a Chapter 11 trustee to take over the Debtors, notwithstanding that this too is considered by the Court of Appeals for the Third Circuit to be "extraordinary" relief. Arrowgrass submits that "cause" exists under Section 1104(a) of the Bankruptcy Code because the Debtors' management has allegedly breached its duty of care to its creditors "by failing to maximize the value of the Debtors' estates" and has breached its duty of loyalty by "allowing Tennenbaum and other High Yield Noteholders to dictate their prepetition and post-petition actions." (Motion ¶ 30.) These assertions are wholly unsupported by any evidence, and do not rise to the level of "fraud, dishonesty, incompetence, or gross mismanagement" required by Section 1104(a), nor show that such an appointment would be "in the interest of creditors . . . and other interests of the estate."

## ARGUMENT

### I. The Debtors Should Not be Compelled to Place Their Foreign Subsidiaries into the Current Chapter 11 Proceedings

7. The Debtors have exercised sound business judgment in determining to try first to maximize the value of the Opco Subsidiaries to the Debtors' estates and, as an alternate plan, to place those foreign subsidiaries into a pre-arranged bankruptcy proceedings if necessary. It is obvious to all who have a *bona fide* and valuable interest in the Opco Subsidiaries that the Opco

Subsidiaries would be better off avoiding any bankruptcy proceeding, and certainly the type of "free-fall" proceeding Arrowgrass proposes. Arrowgrass's sole motive in making the Motion appears to be to gain inappropriate leverage for itself in the restructuring process rather than looking out for the best interests of the Debtors as a whole. As discussed below, the Debtors are well within their rights and obligations to make any determination as to if or when to commence bankruptcy proceedings for the Opco Subsidiaries.

8. Arrowgrass tries to skirt the business judgment presumption protecting these decisions by arguing that the Debtors' management has breached its fiduciary duties to creditors in certain pre- and post-petition financial arrangements; as well as alleging that the so-called failure to place the Opco Subsidiaries in bankruptcy is itself a breach of the fiduciary duty to maximize the value of their estates. Notwithstanding that Arrowgrass has failed to cite any authority for the proposition that the remedy it seeks (if available following the resolution of the 9019 Motion) would be warranted by a breach of fiduciary duty, Arrowgrass has also failed to show that the Debtors' management has breached any such duty.

**The Debtors Exercised Their Business Judgment**
**in Determining Which Entities to Place into**
**Chapter 11 Proceedings**

9. The Debtors exercised their business judgment in determining which entities to place into Chapter 11 proceedings and when to do so. The decision to seek first to restructure the Opco Subsidiaries out of court, and failing that to place them in pre-arranged Chapter 11 proceedings, was based on management's sound judgment assessing, *inter alia*, (1) the benefits afforded to the Debtors and their creditors from the proposed restructuring, as outlined in the 9019 Motion, (2) the impact a "free-fall" bankruptcy might have on the business and prospects of the Opco Subsidiaries, and (3) the costs associated with entering Chapter 11 proceedings,

including litigation costs and other professional services fees. Delaware law presumes that "'in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.'" *In re Walt Disney Co. Derivative Litigation*, 906 A.2d 27, 52 (Del. 2006) (quoting *Aronson* v. *Lewis*, 473 A.2d 805, 812 (Del.1984)). This business judgment presumption can be rebutted only if a movant shows that the directors and management of a debtor breached their fiduciary duties of care or loyalty or acted in bad faith. *Id*.

**Arrowgrass Has Failed to Show that the Debtors'
Management Breached the Duty of Loyalty**

10. Arrowgrass argues that because the Opco Subsidiaries are *not* part of the bankruptcy proceedings, the Debtors have a divided loyalty to their non-debtor subsidiaries and the creditors of those subsidiaries on the one hand, and the Debtors' creditors on the other hand. (Motion ¶¶ 10, 14.) Arrowgrass mis-characterizes the mere existence of competing interests as a breach of the duty of loyalty "as a matter of law." (*Id*.; Supplement ¶ 2.) Arrowgrass has not, however, pointed to any decisions made by management which were affected by the alleged conflict of interest. In the Supplement for the first time, Arrowgrass merely speculates that this "conflict" might manifest itself "if demand is made" to bring certain alleged claims against the Opco Subsidiaries, at which point it alleges the "Debtors will refuse to bring Subject Claims." (Supplement ¶ 3.) *Cf.*, *Bell Atlantic Corp*. v. *Twombly*, 550 U.S. 544, 570 (2007) (plaintiff must plead facts to state a claim to relief that is "plausible on its face" and not merely "conceivable"). This Court has already rejected the concept of a *per se* conflict of interest in these cases between the Debtors and non-debtors when that concept was raised in connection with the retention of certain of the Debtors' professionals. (Oct. 6, 2010 Hearing Transcript 33:22-36:12.)

11. Arrowgrass has not alleged any specific *actions or dealings* that the Debtors' management has taken that violate their duty of loyalty to their own creditors or to the estates. *See In re Fedders N. Am., Inc.*, 405 B.R. 527, 540 (Bankr. D. Del. 2009) ("[T]he duty of loyalty 'mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally.'") (citation omitted). Under Delaware law, "to allege a breach of the fiduciary duty of loyalty the 'plaintiffs must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs.'" *In re Broadstripe*, LLC, 2010 Bankr. LEXIS 3063, 122-123 (Bankr. D. Del. Sept. 2, 2010) (quoting *Joyce* v. *Cuccia*, 1997 Del. Ch. LEXIS 71, 1997 WL 257448, at *5 (Del. Ch. May 14, 1997)). The fact that there are "overlapping board members" and that the Debtors and their subsidiaries are "represented by the same professionals" (Supplement ¶ 3) are immaterial when Arrowgrass cannot point to any actual self-interested transactions. Arrowgrass's brief and conclusory allegations cannot demonstrate a breach of the duty of loyalty as a matter of law. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation and internal quotation marks omitted).

**Arrowgrass Has Failed to Show that the Debtors'**
**Management Breached the Duty of Care**

12. Arrowgrass additionally argues that the business judgment rule should be rebutted because the Debtors' directors and management have violated their fiduciary duty of care to maximize the value of the estates. Contrary to Arrowgrass's unsupported assertions, the Debtors have been keenly focused on how to maximize the value of the Opco Subsidiaries and to realize some of that value for the benefit of the Debtors' creditors since before these cases began. The

9019 Motion details the lengthy process of examination and negotiation that produced a resolution whereby the Debtors would have a share of the value of the Opco Subsidiaries in the face of strong arguments that the value of the Opco Subsidiaries is below the total amounts owed by the Opco Subsidiaries to their senior secured lenders.

13. In order to demonstrate that the Debtors' management breached their duty of care in this process, Arrowgrass must prove that they acted with "gross negligence." *In re Fedders N. Am., Inc.*, 405 B.R. 527, 539-540 (Bankr. D. Del. 2009); *Cargill, Inc.* v. *JWH Special Circumstance*, LLC, 959 A.2d 1096, 1113 (Del. Ch. 2008) ("[A] corporate director is only considered to have breached his duty of care in instances of gross negligence"). In recounting both pre- and post-petition conduct it claims breached the duty of care, however, Arrowgrass makes no assertion that the Debtors' management has acted with gross negligence. Significantly, Arrowgrass does not even allege, much less explain, how any of the transactions it discusses would have preserved or maximized the value of the estates if conducted differently. Arrowgrass thus has no basis for alleging that the Debtors' management has violated its duty of care to the Debtors' estates.

**A. Pre-petition Conduct.**

14. The majority of the transactions Arrowgrass challenges occurred pre-petition, including (1) intercompany loans from Trico to the Opco Subsidiaries in 2007 and 2008, for which Notes were received; (2) debt refinancings in 2009; (3) and the pre-petition rescue financing arrangements with Tennenbaum that provided Trico after the petition date with the cash critical to support continued operations and the marketing and disposition of assets. (Motion ¶¶ 5-17).

15. As Arrowgrass is aware, the Debtors and the Creditors' Committee are already separately evaluating the transactions from 2007 through 2009 in (1) and (2) above. The Creditor's Committee has separately moved for standing and authority to prosecute causes of action related to these transactions. (*See* Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Leave, Standing and Authority to Prosecute Causes of Action on Behalf of the Debtors' Estate [Dkt No. 534].) The Debtors oppose the relief sought by the Committee because they believe costly and long-term litigation is not in the best interest of their estates given the apparent lack of merit in the claims and that the proposed settlement is preferable to the "Hail Mary" pass the Committee proposes to make. Indeed, the 9019 Motion seeks to resolve many, if not all, of these claims and, if granted, would avoid additional costly litigation on these issues.

16. The propriety of the DIP financing arrangements has been before the Court on several occasions. Because certain requirements of the DIP loan agreement were not satisfied, only $3.5 million was advanced to the Debtors before the DIP agreement was terminated by Tennenbaum. Nothing has been presented concerning the DIP financing and the negotiation thereof that even suggests a breach of the duty of care and, in any event, the minimal DIP loan has been fully repaid. The limited DIP financing was approved by the Court as an appropriate exercise of the Debtors' business judgment before any borrowings occurred and the DIP financing cannot, therefore, form the basis for a breach of duty claim now.

**B. Post-Petition Conduct**

17. Arrowgrass's central (and circular) argument is that the Debtors' management breached the duty of care by "intentionally failing to file Chapter 11 petitions" for the Opco Subsidiaries. (Motion ¶ 24.) Arrowgrass submits that such a filing would have increased the

value of the estates (without specifying how or by how much) and offers its conclusion that the failure to file breached fiduciary duties owed to the estates. From this colloquy, Arrowgrass then makes a leap of logic and claims that the appropriate relief is a Court order directing the Debtors to place the subsidiaries into bankruptcy proceedings now. As discussed above, this argument is demonstrably meritless and unnecessary based on the 9019 Motion. If the corporate restructuring which would nullify Arrowgrass's Motion is not able to be effectuated as currently proposed, the Debtors themselves will likely cause the Opco Subsidiaries to file chapter 11 petitions and seek to have those proceedings jointly administered with these cases.

18. Besides this accusation of failure to file chapter 11 cases for the Opco Subsidiaries, Arrowgrass raises only generalized and unsupported objections to management's post-petition conduct, asserting: "it seems clear that the goal of Parent is to (i) place the interests of the Opco Subsidiaries creditors ahead of its own creditors, (ii) continue to divert value down to the Opco Subsidiaries" and that "value continues to erode as assets are being poorly marketed and proposed to be sold off at fire-sale values." (Motion ¶ 3.) Arrowgrass does not point to any instances where the Debtors' creditors were harmed by actions taken by the Debtors' management, or any instances where funds were diverted to Opco Subsidiaries postpetition. Contrary to Arrowgrass's accusation that assets sales are eroding value, the Court recently found that the proposed sale of two vessels "will provide the highest or otherwise best value for the TMA vessels and is in the best interests of the Debtors, their creditors and the estate." Dec. 1, 2010 Order [Dkt. No. 561].

19. In sum, Arrowgrass does not even allege gross negligence, does not allege that a different course of conduct would have resulted in greater value to the estates, and has not

shown, and will not be able to show, any conduct rising to the level of a breach of the duty of care.

## II. Arrowgrass Has Failed to Show that Appointment of a Chapter 11 Trustee is Warranted

20.     For the same reasons, the trustee arm of the Motion is equally meritless. It is well-settled within the Third Circuit that "appointment of a trustee should be the exception, rather than the rule." *In re Marvel Entertainment Group*, 140 F.3d 463, 471 (3d Cir. 1998) (citation omitted); *see also In re Insilco Techs., Inc.*, 480 F.3d 212, 215 n.3 (3d Cir. 2007) ("Unlike in Chapter 7 proceedings, an outside trustee is not typically appointed in Chapter 11 proceedings."). Indeed, the Court of Appeals for the Third Circuit has acknowledged this to be an "extraordinary remedy." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp.* v. *Chinery*, 330 F.3d 548, 560 (3d Cir. 2003) (quoting 7 Collier on Bankruptcy ¶ 1104.02[1] (15th rev. ed. 1998)).

21.     In light of this, the burden on the party moving for the appointment of a trustee is substantial. "'The party moving for appointment of a trustee must prove the need for a trustee . . . by clear and convincing evidence.'" *In re G-I Holdings, Inc.*, 385 F.3d 313, 317-318 (3d Cir. 2004) (quoting *Marvel*, 140 F.3d at 473). Arrowgrass instead offers only the most conclusory of allegations that fall far short of meeting this burden.

22.     Section 1104(a) of the Bankruptcy Code provides certain conditions under which a bankruptcy court must order the appointment of a Chapter 11 Trustee, including:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, . . . [or]
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate.

11 U.S.C. § 1104(a).

23. As set forth below, Arrowgrass has failed to show that either prong of Section 1104(a) has been satisfied.

**Arrowgrass Has Not Shown "Cause" Under Section 1104(a)(1)**

24. As set forth above, Arrowgrass has not shown that the Debtors have breached the duties of loyalty or care to their creditors, let alone shown the "clear and convincing evidence" required for the appointment of a trustee. *G-I Holdings,* 385 F.3d at 317-318. The sum of Arrowgrass's evidence consists of (1) intercompany loans made years before the bankruptcy proceedings for acquisitions that were part of a determined growth strategy of prior management, and for which corresponding notes were received; (2) a restructuring of certain debt in May 2009 which afforded additional protections to certain Trico creditors at that time; (3) a restructuring of Trico Supply's debt in October 2009, which permitted the new noteholders at the Opco Subsidiary level to obtain liens on the Debtors' assets, most of which were already subject to the liens of prior lenders; (4) the "information and belief" that the Debtors "funneled money down into its insolvent subsidiaries" in order to enable Trico Supply to stay current on these obligations; (5) the DIP financing arrangement with Tennenbaum, preliminarily approved by the Court, which provided the Debtors with the liquidity and use of cash collateral necessary to continue operations and effect the sale of assets; and (6) further "information and belief" that $10 million was provided to the Opco Subsidiaries presumably from the pre-petition portion of what became the DIP financing. (Motion ¶¶ 5-17.)[4] The sporadic intercompany loans and

---

[4] As noted above, a total of only $3.5 million was advanced to the Debtors under the post-petition portion of the financing.

refinancings, all of which occurred prepetition, do not rise to the level of "systemic siphoning" of assets necessitating the appointment of a trustee. *In re Sharon Steel Corp.*, 86 B.R. 455 (Bankr. W.D. Pa. 1988). Nor has Arrowgrass even alleged that there is any risk of future asset transfers to any subsidiary, particularly as the bulk of alleged misconduct occurred under the auspices of a different CEO and management team.

25. The very cases Arrowgrass cites demonstrate the disparity between the Debtors' conduct and the systemic conduct courts have previously found to merit the appointment of a trustee. (Motion ¶ 29.) *See In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518 (Bankr. E.D.N.Y. 1989) (appointment of trustee warranted where debtor "made affirmative efforts to misrepresent or conceal material and relevant information to the court and creditors"); *In re Sharon Steel Corp.*, 86 B.R. 455 (Bankr. W.D. Pa. 1988), *aff'd*, 871 F.2d 1217, 19 (3d Cir. 1989) (systematic siphoning of debtor's assets to other companies under shareholder's common control constituted cause for appointment of trustee); *Matter of Parker Grande Development, Inc.*, 64 B.R. 557 (Bankr. S.D. Ind. 1986) (principal lacked "skills, ability, training and experience in the area of land acquisition, development, and sale"; paid himself an inappropriately high salary; and there existed a lack of confidence and trust in principal by members of the business community which impaired his ability to market the company's assets, and thus a trustee was warranted under 1104(a)(2)); *In re Colby Const. Corp.*, 51 B.R. 113 (Bankr. S.D. N.Y. 1985) (majority shareholder's "deliberate and unabashed conversion of corporate assets to acquire another company in his own name indicates the scienter implicit in fraud as that term is used in § 1104(a)(1) or at least the dishonesty contemplated by that section").[5]

---

5     The remaining cases cited by Arrowgrass do not relate to the appointment of a trustee. *See In re*

Footnote continued on next page.

26. Courts within the Third Circuit recognize that while there is often some mismanagement in companies that have commenced bankruptcy proceedings, a trustee is warranted only where gross mismanagement by the current managers has been found. *See In re Clinton Centrifuge, Inc.*, 85 B.R. 980, 987 (Bankr. E.D. Pa. 1988) ("[W]hether cause exists to appoint a trustee is largely a matter of degree. In most bankruptcy cases there will be some display of mismanagement, some disregard or oversight of statutory provisions, and some legitimate concerns raised by creditors that creditor interests would be better served by replacing current management. The question becomes whether these concerns rise to a level justifying extraordinary relief.") Arrowgrass has not even *alleged* concerns rising to this level.

27. Similarly, Arrowgrass has not alleged, let alone shown, an irreconcilable conflict of interest that rises to the level comparable to those in the cases it cited. (Motion ¶¶ 29-30.) *See In re Taub*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) ("the record shows that nearly every aspect of the Debtor's management of the estate has been marked by conflict, acrimony, and animosity, and the absence of meaningful progress toward the proposal and confirmation of a plan of reorganization"); *In the Matter of Cajun Elec. Power Coop., Inc.*, 74 F.3d 599, 600 (5th

---

Footnote continued from previous page.

*Van Brunt*, 46 B.R. 29 (Bankr. W.D. Wis. 1984) (bankruptcy proceeding dismissed where the debtor offered no evidence to rebut the presumption that he did not intend to prosecute the proceeding); *In re Modern Office Supply, Inc.*, 28 B.R. 943 (Bankr. W.D. Okla. 1983) (proceedings converted to Chapter 7 proceedings where debtor was out of compliance with reporting requirements); *Matter of E. Paul Kovacs and Co., Inc.*, 16 B.R. 203 (Bankr. D. Conn. 1981) (proceedings converted to Chapter 7 where debtor admitted that he had never filed a plan and none was contemplated as he sought to sell assets).; *In re Granite Sheet Metal Works, Inc.*, 159 B.R. 840 (Bankr. S.D. Ill. 1993) (court denied payment to counsel which failed to disclose it was not qualified to represent the debtor due to simultaneous representation of interests adverse to the estate); *In re Gregory*, 214 B.R. 570 (S.D. Tex. 1997) (decision related to jurisdiction and attorney's fees).

Cir. 1996) (members of cooperative working at cross purposes, including failing to collect monies owed, justified appointment of trustee); *In re Colorado-Ute Electric Ass'n, Inc.*, 120 B.R. 164, 176 (Bankr. D. Col. 1990) (trustee appointed where, *inter alia*, several board members of debtor supported appointment of a trustee; chairman and vice-chairman had resigned; and current board and management team found to be incompetent to reorganize the debtor). As discussed above, Arrowgrass's claim that the duty of loyalty has been breached is entirely unfounded and, at best, rests on mere speculation.

**Arrowgrass Has Not Shown That Appointment of a**
**Trustee Would Be in the Interest of Creditors and Other**
**Interests of the Debtors' Estates Under Section 1104(a)(2)**

28. Courts generally read the second prong of Section 1104(a), whether "such appointment is in the interests of creditors any equity security holders, and other interests of the estate," to require a balancing of potential benefits of the appointment of a trustee with the costs of such an appointment. *See In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) ("the factors considered are: (i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence -- or lack thereof -- of the business community and of creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment") (internal citations omitted). Courts "must bear in mind that the appointment of a trustee 'may impose a substantial financial burden on a hard pressed debtor seeking relief under the Bankruptcy Code,' by incurring the expenditure of 'substantial administrative expenses' caused by further delay in the bankruptcy proceedings." *In re Bayou Group, LLC*, 564 F.3d 541, 546-547 (2d Cir. 2009) (citation omitted).

29.     Likely because of this high burden, courts have rarely held that appointment of a trustee is appropriate under Section 1104(a)(2) alone. *See* 7 Collier on Bankruptcy ¶ 1104.02. The sole example given in the legislative history is where "the current management of the debtor gambled away rental income before the filing of the petition." 124 Cong. Rec. H11,102 (Sept. 28, 1978). Section 1104(a)(2) has also been found to be satisfied where there were serious questions raised about management's ability to run the estate, due to high levels of acrimony or lack of experience in the disposition of assets. *See In re United States Mineral Prods. Co.*, 2004 U.S. Dist. LEXIS 673 (D. Del. Jan. 16, 2004) (trustee appointed where there was acrimony found, debtor's principal was himself a creditor and debtor belatedly disclosed additional creditors); *Marvel Entm't Group. Inc.*, 140 F.3d 463, 474 (3d Cir.1998) ("The level of acrimony found to exist in this case certainly makes the appointment of a trustee in the best interests of the parties and the estate."); *Matter of Parker Grande Development, Inc.*, 64 B.R. 557 (Bankr. S.D. Ind. 1986) (principal lacked "skills, ability, training and experience in the area of land acquisition, development, and sale" and there existed a lack of confidence and trust in principal by members of the business community which impaired his ability to market the company's assets).

30.     Arrowgrass does not raise such questions, but merely states without explanation that "[a]ppointment of a Chapter 11 trustee is in the best interest of Parent's creditors." (Motion ¶ 30.) Arrowgrass has not given any indication of how a trustee should act differently from the way management has been acting, would be able to effect asset sales for higher returns than current management, or how "leadership and judgment" are currently lacking. (Motion ¶ 3.) In fact, Arrowgrass's one specific critique of current management appears to be that it has not placed the Opco Subsidiaries "into Chapter 11 cases with this Court to allow for the meaningful

restructuring of the entire Trico enterprise." As explained above, this will be unnecessary if the 9019 Motion is granted, and otherwise the Debtors will likely themselves undertake to cause these subsidiaries to file chapter 11 cases. Arrowgrass also fails to balance these criticisms against the cost to the Debtors' estates (and the inherent delay and distraction) of bringing in new management at this point in time. Arrowgrass's generalized allegations do not suffice to serve as the "clear and convincing evidence" that a trustee's appointment is in the best interest of the estates.

**WHEREFORE**, the Debtors respectfully request that the Court deny the Motion in its entirety and grant such other and further relief as is just and proper under the circumstances.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: December 30, 2010
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Andrew R. Remming*
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
E-mail: rdehney@MNAT.com
E-mail: aremming@MNAT.com

VINSON & ELKINS LLP
John E. Mitchell
Steven M. Abramowitz
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 7520
Telephone: (214) 220-7700
Facsimile: (214) 999-7787
E-mail: jmitchell@velaw.com
E-mail: sabramowitz@velaw.com

- and -

CAHILL GORDON & REINDEL LLP
Joel H. Levitin
Kevin J. Burke
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
E-mail: jlevitin@cahill.com
E-mail: kburke@cahill.com

*Counsel and Special Counsel for the Debtors and Debtors-in-Possession*

*3988946.1*