# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRICO MARINE SERVICES, INC., *et al.*,[1] | ) | Case No. 10-12653 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION SECURED DEBTOR IN POSSESSION FINANCING AND USE CASH COLLATERAL AND (II) PROVIDING RELATED RELIEF

Upon consideration of, among other things: (1) *the Emergency Motion of Obsidian Agency Services, Inc., Tennenbaum DIP Opportunity Fund, LLC, Tennenbaum Opportunities Partners V, LP, and Special Value Continuation Partners, LP for an Order (A) Terminating or Modifying the Debtors' Use of Cash Collateral, (B) Scheduling Global Auction for Remaining Unsold Assets, (C) Lifting Agreed Injunction Against Exercising Remedies Against Non-Debtors, and (D) Granting Related Relief* (the "Emergency Motion")[2] filed by Obsidian Agency Services, Inc., Tennenbaum DIP Opportunity Fund, LLC, Tennenbaum Opportunities Partners V, LP, and Special Value Continuation Partners, LP (collectively, the "Secured Lenders"), (2) *the Debtors' (I) Response to the Emergency Motion of Obsidian Agency Services, Inc., Tennenbaum DIP Opportunity Fund, LLC, Tennenbaum Opportunities Partners V, LP, and Special Value Continuation Partners, LP for an Order (A) Terminating or Modifying the Debtors' Use of Cash*

---

[1] The Debtors are the following entities (followed by the last four digits of their tax identification numbers): Trico Marine Services, Inc. (2405); Trico Marine Assets, Inc. (2404); Trico Marine Operators, Inc. (6124); Trico Marine International, Inc. (3132); Trico Holdco, LLC (3870); Trico Marine Cayman, L.P. (5842). The mailing address for all of the Debtors for the purpose of these Cases is 10001 Woodloch Forest Drive, Suite 610, The Woodlands, TX 77380.

[2] Capitalized terms used herein but not otherwise defined shall be ascribed the meanings given to such terms in the Motion.

*Collateral, (B) Scheduling Global Auction for Remaining Unsold Assets, (C) Lifting Agreed Injunction Against Exercising Remedies Against Non-Debtors, and (D) Granting Related Relief and (II) Cross-Motion To Surcharge Secured Lenders' Collateral Pursuant To 11 U.S.C. § 506(c)* (the "Response") filed by the above-captioned Debtors (collectively, "Trico" or the "Debtors") in these chapter 11 cases (the "Cases"), (3) *Objection of Official Committee of Unsecured Creditors to Emergency Motion of Tennenbaum For an Order (A) Terminating or Modifying the Debtors' Use of Cash Collateral (B) Scheduling Global Auction for Remaining Assets, (C) Lifting Injunction against Exercising Remedies and (D) Granting Related Relief,* and (4) the statements and agreements made by counsel to, among others, the Debtors, the Committee and the Secured Lenders on the record (the "Record") at the hearing on Thursday, February 10, 2011; notice of the Emergency Motion and the Response having been good and adequate and provided in accordance with the applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure; and the Court having determined that the legal and factual bases set forth in the Record establish just and proper cause for the relief provided herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and upon the findings made by the Court on the record on the hearing on the Emergency Motion, incorporated herein by reference pursuant to Federal Bankruptcy Rule 7052, and upon the entire record in these proceedings; and after due deliberation thereon and good cause appearing therefore, **IT IS HEREBY ORDERED**:

A.  **AUTHORIZATION TO USE CASH COLLATERAL.**

1. The Debtors are authorized to use cash collateral of the Secured Lenders and holders of the 8.125% Second Lien Convertible Debentures (the "Second Lien Notes") issued pursuant to that Indenture, dated as of May 14, 2009 (the "Second Lien Indenture"), through and including May 17, 2011 in accordance with the budget attached hereto as **Exhibit A** (the "Budget"). Any further disputes with respect to the terms of or compliance with the Budget shall be adjudicated by the Bankruptcy Court upon further notice and a hearing.

2. Pursuant to a separate order of the Court entered on February 15, 2011, the Debtors have previously indefeasibly paid or shall immediately pay over to the Secured Lenders all net proceeds available to the Debtors of the sales of the Hondo River, Spirit River, James River and Pearl River in an amount equal to no less than $6,521,511.

3. Except as otherwise expressly provided herein, the Debtors have used (or will immediately use) additional funds they may hold (in addition to the amounts identified in paragraph 2 above) to indefeasibly pay to the Secured Lenders all outstanding obligations under the Second Amended and Restated Credit Agreement dated as of June 11, 2010, by and among Trico Marine, as borrower, the guarantors thereto and the lenders party thereto (such agreement may have been amended from time to time through the date hereof, the "Prepetition Credit Agreement") (including, without limitation, principal, interest and the exit fee under the Prepetition Credit Agreement, but excluding professional fees of the Secured Lenders (the "Professional Fees")) (collectively, the "Prepetition Obligations") not later than three business days after entry of this Order (and in no event later than February 18, 2011) in an amount not less than $7.4 million. Notwithstanding anything contained herein or the Interim DIP Order (defined

below in paragraph 4, below), the Professional Fees shall be included as part of the DIP Obligations (defined below in paragraph 4, below).

4. The Debtors and the Secured Lenders shall true-up the exact amount of the Prepetition Obligations in respect of interest charges only (the "True Up Amount"). To the extent the Debtors and the Secured Lenders cannot reach agreement on the True Up Amount, the Debtors shall pay the Secured Lenders all Prepetition Obligations that are not in dispute and the Court shall resolve any dispute with respect to the amount of interest owing to the Secured Lenders by telephonic hearing on an expedited basis. Notwithstanding the provisions of paragraph 3 herein or the foregoing of this paragraph, $100,000 of principal amount of the Prepetition Obligations will remain outstanding until such amounts are paid pursuant to the terms of a confirmed plan of reorganization or liquidation or the claims of the Secured Lenders are otherwise paid in full, refinanced or assigned (the "$100,000 Remainder"). The $100,000 Remainder shall continue to accrue interest in accordance with the terms of the Prepetition Credit Agreement and will be secured with perfected and duly enforceable liens and adequate protection liens, claims, priority and other rights set forth in paragraphs F, G(i) (except as expressly set forth in this Order), (G(ii) D), G(iii) and 12 of the *Amended Interim Order (I) Authorizing Debtors (A) To Obtain Postpetition Secured DIP Financing (B) To Use Cash Collateral (II) Granting Liens And Providing For Superpriority Administrative Expense Status; (III) Granting Adequate Protection To Prepetition Secured Parties (IV) Modifying Automatic Stay; And (V) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* [Docket No. 95] (the "Interim DIP Order") (including without limitation payment of attorneys fees, nature, extent and priority of security interests); provided however, that for avoidance of doubt, with respect to the $100,000 Remainder, the Secured Lenders shall not be granted an

adequate protection lien against the proceeds of the Rule 9019 settlement by and between the Debtors and certain of their non-Debtor "OpCo" affiliates (the "9019 Settlement") contemplated by that *Debtors' Motion Pursuant to Bankruptcy Code Sections 105 and 363 and Bankruptcy Rule 9019 for an Order Authorizing the Debtors to Compromise Certain Intercompany Claims and Equity Interests* [Docket No. 581], but shall be granted a superpriority administrative claim pursuant to Bankruptcy Code § 507(b) and payable from all assets of the Debtors' estates, including the proceeds of the 9019 Settlement.

5. All outstanding DIP Obligations (as defined in the Interim DIP Order), including without limitation principal, interest, indemnity, fees and the exit fee described in paragraph 6 of the Interim DIP Order, which in the aggregate equal approximately $2.7 million, shall be secured by first priority, perfected and duly enforceable security interests in all of the assets of the Debtors (unless otherwise previously subordinated to other existing liens as identified in the Interim DIP Order) (collectively, the "DIP Liens"). For the avoidance of doubt, the DIP Liens shall include first priority perfected and duly enforceable security interests in the 9019 Settlement, any claims or causes of action arising under chapter 5 of the Bankruptcy Code (the "Avoidance Actions"), if any, and each of the proceeds thereof, but the liens described in this sentence shall not be subordinated to any existing or future liens or interests. The provisions of paragraphs 11(b) – (e) of the Interim DIP Order are hereby incorporated by reference, and shall apply with full force and effect to the DIP Obligations and DIP Liens, but shall exclude any references to the Carve-Out contained therein as such Carve-Out has been fully funded as set forth in paragraph 9 hereof. No claim for interest on attorneys' fees shall be allowed to the Secured Lenders under the DIP Financing Agreement, the Interim DIP Order, this Order or otherwise. In addition, the Secured Lenders shall be granted Superpriority Claims for the DIP

Obligations as described in paragraph 10 of the Interim DIP Order. Notwithstanding anything to the contrary contained herein, for all purposes (a) this Order shall be deemed a final order, including without limitation, for purposes of the provisions of paragraph 10 of the Interim DIP Order, and (b) the provisions of the Interim DIP Order incorporated herein by reference shall exclude any reference to the Carve-Out otherwise contained in the Interim DIP Order.

6. As part of the DIP Obligations, the Secured Lenders are granted an allowed claim for all fees and expenses, including without limitation, legal, accounting, appraisal, investigation, audit, inspection, insurance, title insurance and other similar fees and costs (except for interest on attorney's fees) incurred through the date hereof, which claim shall not be subject to objection by any party on any grounds (including, without limitation, on the basis of reasonableness or pursuant to Bankruptcy Code § 506(a)). Subject to the notice and objection procedures set forth in paragraph 6(a) of the Interim DIP Order, the Debtors reserve the right to object to the fees and expenses of the Secured Lenders incurred after the date hereof to extent they are not reasonable. The Debtors waive any rights they may have to surcharge the Secured Lenders' collateral under Bankruptcy Code § 506(c) and all other parties in interest are precluded from asserting such rights on their own respective behalf. In addition, the investigation period provided to the Creditors' Committee pursuant to paragraph 14 of the Interim DIP Order has expired and is irrevocably waived and the Investigation Termination Date (as defined in paragraph 14 of the Interim DIP Order) has occurred and shall not be extended or revived for any reason. The Debtors do not waive any of their rights under § 506(c) of the Bankruptcy Code or other applicable law with respect to any other secured creditor, nor do the estates' professionals waive any rights they or the estates may have pursuant to Bankruptcy Code § 506(c) when asserted as a defense to disgorgement of fees under paragraph 16(b) herein.

7. All liens granted to the Secured Lenders herein shall be and hereby are deemed fully perfected liens and security interests, effective, binding and perfected upon the date of this Order without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements and other agreements or instruments, such that no additional steps need be taken by the Secured Lenders to perfect such interests. The provisions of paragraphs 8 (Authority to Execute and Deliver Necessary Documents), 9 (Amendments, Consents etc.), 17 (Additional Perfection Measures) and 19 (Access to Collateral) of the Interim DIP Order apply with full force and effect with respect to the foregoing liens and interests. The Secured Lenders shall not be required to file a proof of claim with respect to any of the claims identified herein, including any Secured Lender Obligations (defined in paragraph 11, below).

8. Each of the $100,000 Remainder and the outstanding DIP Obligations identified in paragraphs 4 and 5 above, respectively, shall be deemed to be allowed claims for all purposes in the Debtors' Cases. The $100,000 Remainder and the outstanding DIP Obligations shall continue to accrue interest at the applicable default rate until indefeasibly paid in full (except for any interest on attorneys' fees).

9. From and after the date hereof, payment of the Debtors' and the Creditors' Committee's professionals pursuant to the *Order Granting Debtors' Motion To Establish Procedure For Monthly and Interim Compensation and Reimbursement of Expenses For Case Professionals* (the "Interim Compensation Order") [Docket No. 187] shall be reinstated to permit payments to professionals to the extent of the pre-funded Carve-Out contemplated by paragraph 13(a) of the Interim DIP Order (the "Expired Carve-Out") and the carve-out contemplated by paragraph 13 hereof. This Court's order suspending the Interim Compensation Order dated

January 31, 2011 [Docket No. 831] is hereby vacated. The Debtors and the Creditors' Committee waive any right to claim additional amounts for fees and expenses under the Expired Carve-Out and agree that such Carve-Out has been fully funded by the Secured Lenders.

10. The Debtors will pay (a) 50% of the net proceeds of all ship sales, other than the Truckee River, (b) subject to the provisions of Paragraph 11 below, 100% of proceeds from distributions to the Debtors from the Debtors' joint venture Eastern Marine Services, Ltd. ("EMSL") and (c) 50% of all holdback returns, other than the MARAD make-whole hold back, when received by the Debtors in the following order of application: (i) first, indefeasibly to the Secured Lenders on account of any outstanding DIP Obligations until such DIP Obligations are paid indefeasibly in full, (b) second, indefeasibly to the Secured Lenders on account of any outstanding Prepetition Obligations until such Prepetition Obligations are paid indefeasibly in full, and (c) third, to the holders of the Second Lien Notes on account of such holders' outstanding prepetition secured claim until such secured claim is paid in full.

11. Trico Marine Services (Hong Kong) Limited ("Trico Hong Kong") holds the Debtors' equity interests in EMSL. The Debtors shall cause Trico Hong Kong to indefeasibly pay 100% of the net proceeds of any dividends, proceeds, capital reductions, repayments of loans or advances or investments received by Trico Hong Kong resulting from or funded with proceeds of sales of ships at EMSL to the Secured Lenders on account of any outstanding DIP Obligations until such DIP Obligations are satisfied in full, and then to the Secured Lenders on account of any outstanding Prepetition Obligations until such Prepetition Obligations are paid in full (the DIP Obligations and the Prepetition Obligations, including the $100,000 Remainder, collectively the "Secured Lender Obligations"). Any proceeds received from Trico Hong Kong after

indefeasible payment in full of the Secured Lender Obligations shall be retained by the Debtors' estates, subject to the liens, claims or encumbrances, if any, to such proceeds.

12. The net proceeds received from the sale of the Truckee River and any return of the MARAD make-whole premium shall be used only for operational expenses of the Debtors' estates identified in the Budget identified in paragraph 1 hereof.

13. The remaining 50% of net proceeds of ship sales and holdback returns contemplated by paragraph 10 hereof not paid to the Secured Lenders shall constitute a new carve-out of the Secured Lenders' collateral (the "New Carve-Out") and shall remain with the Debtors. Such proceeds shall be used for payment of any administrative expense of the Debtors' estates in the Debtors' sole discretion, but subject to the Budget identified in paragraph 1 hereof.

14. In the event the Court enters an order approving the sale of one or more of the Debtors' vessels, and the Debtors breach this Order by failing to pay over to the Secured Lenders 50% of the net proceeds in accordance with paragraph 10 hereof, the Secured Lenders are granted automatic relief from the automatic stay imposed by § 362 of the Bankruptcy Code and shall be entitled to exercise all rights and remedies available hereunder and to a secured creditor under applicable law with respect to all assets of the Debtors (including without limitation such vessel or vessels and the proceeds thereof and the proceeds of the 9019 Settlement) if such breach remains uncured after five days' written notice by the Secured Lenders.

15. If the Secured Lender Obligations are not indefeasibly paid in full by April 29, 2011, the Debtors shall schedule an auction of all of the Debtors' remaining assets (including without limitation the proceeds of the 9019 Settlement and any equity interests in non-Debtors) to be conducted by no later than May 16, 2011 (the "Global Asset Sale"). In connection with the Global Asset Sale, (a) the Secured Lenders shall have an express indefeasible right to credit bid

for any amounts owed for Secured Lender Obligations, (b) there will be no floor required for any such credit bid and (c) the Debtors will agree to any reasonable bid process or procedures requested by the Secured Lenders to govern the auction of the Debtors' assets, which shall be approved by the Court and, at a minimum, include the bidding procedures set forth on **Exhibit B** hereto. The Debtors shall file a motion for approval of such bidding procedures (in form and substance reasonable acceptable to the Secured Lenders) on or before March 31, 2011, for the earliest available non-emergency date available on this Court's docket. The Debtors shall conduct the Global Asset Sale pursuant to § 363 of the Bankruptcy Code, outside of a plan of liquidation or reorganization.

16. To the extent that the Secured Lender Obligations have not been indefeasibly paid in full on or prior to May 17, 2011 (whether in cash or through a credit bid by the Secured Lenders), the professionals of the Debtors and the Creditors' Committee shall disgorge the following fees: (a) for amounts paid pursuant to the Expired Carve-Out, any amounts that were not expressly permitted to be paid from the Expired Carve-Out under the terms of the Interim DIP Order; and (b) any amounts incurred after November 8, 2010 not otherwise covered by the Expired Carve-Out; provided however, that in the event of such disgorgement under this subsection (b), the estate professionals retain the right to assert as a defense that such fees were properly payable pursuant to or otherwise subject to Bankruptcy Code § 506(c). The obligation to disgorge as set forth herein shall continue until both of the following conditions are satisfied (i) indefeasible payment-in-full of all principal, interest, exit fees and costs (including, without limitation, fees and costs of the Secured Lenders' advisors and professionals but explicitly excluding the Indemnity Obligations defined in paragraph 18 below) of the Secured Lenders as set forth more fully above and (ii) entry of a final non-appealable order approving the Secured

Lender Release described in paragraph 27, below. The Bankruptcy Court reserves exclusive jurisdiction to hear any disputes with respect to disgorgement of fees as contemplated by this paragraph 16. No administrative expenses paid out of the estates other than professional fees as set forth in this paragraph 16 shall be subject to disgorgement.

17. The Secured Lenders shall only be permitted to exercise remedies against the Debtors or their affiliates pursuant to this Order (or under any other applicable documents or orders) either if the Debtors fail to pay over to the Secured Lenders amounts identified in this Order or if the Secured Lender Obligations are not indefeasibly paid in full on or prior to May 17, 2011. Notwithstanding the foregoing, if the Debtors fail to abide in all material respects with the payment of operational expenses set forth in the Budget, the Secured Lenders shall have the right to seek appropriate relief from this Court but cannot exercise other remedies without further order of the Court as a result of a failure by the Debtors to abide by the Budget.

18. The Secured Lenders agree to a refinancing or assignment of their claims upon full and indefeasible payment of all outstanding Secured Lender Obligations at any time, and if such a refinance or assignment occurs prior to the scheduled auction deadline of May 16, 2011, no auction will occur. The Secured Lenders' rights to indemnification (the "Indemnity Obligations") provided in the Prepetition Credit Agreement and that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement dated as of August 24, 2010 (as amended) (the "DIP Credit Agreement") shall (a) remain secured obligations of the Debtors with the perfection and priority accorded to and constitute a part of the Secured Lender Obligations, (b) shall survive any refinancing or assignment to the extent provided in such documents following payment of the Secured Lenders' claims under such documents, and (c) survive any dismissal or conversion to chapter 7 of any of the Debtors' Cases.

19. The Debtors agree to use their best efforts from now until May 16, 2011 to sell all of their vessels including using best efforts to cause those vessels held by EMSL to be sold.

20. If any of the Debtors' Cases are converted to cases under chapter 7, a chapter 11 trustee is appointed in any of the Debtors' Cases or the Secured Lenders are not indefeasibly paid in full by May 17, 2011, then (a) the Secured Lenders shall have automatic relief from the automatic stay imposed by § 362 of the Bankruptcy Code to exercise any and all available remedies with respect to all of the Debtors' assets and (b) the existing injunction preventing the Secured Lenders from enforcing remedies against Trico Hong Kong or any other parties shall be automatically dissolved. Upon relief from stay, if assets are remaining in the estates after the occurrence of the Global Asset Sale or if the Global Asset Sale has not yet occurred, the Secured Lenders shall have the right to foreclose by private sale on any and all assets of the Debtors (including without limitation the proceeds of the 9019 Settlement, the Intercompany Notes (if still in existence), and the capital stock of the Debtors' subsidiaries) upon ten business days' notice to the Debtors, the Committee, counsel to the indenture trustee under the Second Lien Indenture and Bracewell & Giuliani LLP (as counsel to certain holders of the Second Lien Notes), and any reasonable list of accredited investors provided in writing to the Secured Lenders by the Debtors on or before May 10, 2011 (such list shall be limited in number and type to ensure that the contemplated private sale does not contravene applicable securities laws with respect to private placements or otherwise preclude or interfere with the effectiveness of a private sale). No other notice shall be required in order for the foregoing private sale to be deemed commercially reasonable under applicable law. In the exercise of any credit bid or other remedies, the Secured Lenders (and their respective agents) shall not be subject in any way

whatsoever to the equitable doctrine of "marshalling" or any similar doctrine with respect to any assets of the Debtors.

21. Any plan of reorganization or liquidation in any of the Debtors' Cases shall provide for the indefeasible payment in cash of the Secured Lenders Obligations in full on the effective date, shall not be confirmable if such plan seeks to "cram down" any portion of the Secured Lenders Obligations or pay any Secured Lender Obligations other than indefeasibly in cash, and shall incorporate the Secured Lender Release described in paragraph 27, below.

22. Notwithstanding anything to the contrary in this Order, all of the Secured Lenders' rights are reserved with respect to their respective claims and rights (a) as creditors of the Debtors' non-debtor direct and indirect subsidiaries and affiliates including without limitation Trico Supply, AS, Trico Shipping AS and their respective non-Debtor direct and indirect subsidiaries and affiliates (collectively, the "Non-Debtor Entities"), and each of the Non-Debtor Entities' respective assets, officers, directors, agents, employees, representatives, and (b) arising under or in connection with that certain Amended and Restated Credit Agreement among Trico Supply AS, as borrower, and various guarantors and lenders, as originally dated as of October 30, 2009, and as subsequently amended from time to time, including by that certain First Amendment and Waiver to Credit Agreement, dated as of March 15, 2010, that certain Second Amendment to Credit Agreement and Forbearance Agreement, dated as of June 17, 2010, and that certain Third Amendment to Credit Agreement and Forbearance Agreement, dated as of June 29, 2010.

23. Notwithstanding anything to the contrary in this Order, all of the rights of Nordea Bank Finland PLC, New York Branch, individually, as administrative agent, and any of the lenders referred to in clause (b) below (collectively, "Nordea") are reserved with respect to all of

their respective claims and rights (a) as creditors of the Non-Debtor Entities, and in respect of or against each of the Non-Debtor Entities' respective assets, officers, directors, agents, employees and representatives, and (b) arising under or in connection with that certain Amended Credit Agreement, dated as of October 30, 2009 (as amended, supplemented or otherwise modified from time to time), by and among Trico Supply AS and certain of its affiliates, as borrowers and credit parties, Nordea Bank Finland PLC, New York Branch, as administrative agent, and the lenders party thereto from time to time, and the other documents, agreements and instruments related thereto.

24. This Order constitutes a security agreement enforceable under the laws of New York.

25. Notwithstanding anything else to the contrary contained herein or in any other prior Order of this Court (other than any provisions of such prior Orders that may have granted adequate protection liens or claims to the holders of secured claims other than the Secured Lenders), the payments made to the Secured Lenders pursuant to the terms hereof and otherwise, including with the proceeds of any unencumbered assets, have not and shall not improve/enhance or diminish/impair the rights of any other parties (other than the Secured Lenders) with secured claims that are allowable pursuant to Bankruptcy Code § 506(a) as they may have existed on the Petition Date. For the avoidance of doubt, this provision recognizes that the secured claim of an undersecured creditor with a junior lien on collateral is measured as of the Petition Date and the source of payment to a creditor who has a senior lien on the same collateral does not increase or decrease the allowed secured claim of the junior creditor.

26. This Court expressly retains exclusive jurisdiction to enter such other and further orders, and fashion any equitable remedies as may be necessary against and with respect to all

other parties in interest (other than the Secured Lenders) to include the Debtors, the holders of the Second Lien Notes, and all other creditors of these estates, to include reallocation and subrogation.

27. Any objections raised to the relief granted herein in writing or on the record at the hearing on this matter are hereby overruled on the merits.

28. The Secured Lenders (together with their respective officers, directors, shareholders, members, agents, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, and affiliates) shall be, upon entry hereof, released by all stakeholders in these chapter 11 cases, including, without limitation, the Debtors, the Official Committee of Unsecured Creditors, and each present and former holder of a claim against or interest in the Debtors, and all such parties will be deemed to release forever, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, set-offs, offsets, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the date hereof in any way relating to the Debtors or these chapter 11 cases (the "Secured Lender Release"); provided, however, that notwithstanding the foregoing, Nordea shall not release any claims it may hold against the Secured Lenders. For the avoidance of doubt, nothing in this Order shall release any direct claim or liability of the Secured Lenders to any non-debtor party arising exclusively after the entry of this Order under any contract or transaction entered into after the entry of this Order.

29. Upon satisfaction of the both of the following conditions: (i) indefeasible satisfaction of all Secured Lender Obligations by the Debtors and their estates and (ii) entry of a

final non-appealable order approving the Secured Lender Release, the Secured Lenders shall release and discharge their claims in and against the Debtors, their estates and their assets in connection with the Prepetition Credit Agreement and the DIP Credit Agreement, but shall not release the Indemnity Obligations.

**B.     MISCELLANEOUS PROVISIONS.**

30.     <u>Entry of Order; Effect</u>.  This Order shall take effect immediately upon entry hereof *nunc pro tunc* to February 10, 2011, notwithstanding the possible application of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Order on the Court's docket in the Cases.

31.     <u>Retention of Exclusive Jurisdiction</u>.  This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Order.

32.     <u>Binding Effect of Order</u>.  The terms of this Order shall be binding on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code or other fiduciary or other estate representative hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors.

33.     <u>Indefeasable Payment.</u>  When payment in cash is received by the Secured Lenders, that payment shall be considered indefeasibly made.

34.     <u>Second Lien Reservation of Rights</u>.  Except as expressly provided for herein (including, without limitation, the terms of the Secured Lender Release), nothing in this Order impairs or alters the rights or claims of the trustee for, and the holders of, the Second Lien Notes under the instruments relating to the issuance of the Second Lien Notes, prior orders of this Court (including the Interim DIP Order) and under applicable state, federal, and bankruptcy law

(including rights to adequate protection and to seek further adequate protection), all of which rights and claims are hereby reserved.

35. <u>Nordea Reservation of Rights</u>. Except as expressly provided for herein, nothing in this Order impairs or alters the rights or claims of Nordea or Nordea Bank Norge ASA, Cayman Islands Branch, under prior orders of this Court (including the Interim DIP Order and any related orders) and under applicable state, federal, and bankruptcy law, all of which rights and claims are hereby reserved; provided however, that the Debtors reserve the right to object to any professional fees incurred by Nordea from and after November 30, 2010.

Dated: February 18, 2011

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE